UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PHILIP G. GROVES, | ) | |
| | ) | |
| Plaintiff, | ) | 16 C 2485 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Philip Groves brought this suit against the United States, seeking a determination that he is not liable for a civil penalty the IRS assessed against him under 26 U.S.C. § 6700 for promoting abusive tax shelters. Doc. 1. The United States has moved under Federal Rule of Civil Procedure 12(f) to strike the complaint's allegation that the penalty is barred on limitations and laches grounds. Doc. 17. The motion is granted.

**Background**

Rule 12(f) provides that a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Defenses or other matter may be stricken "only when they are insufficient on the face of the pleadings." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). In resolving a motion to strike, the court assumes the truth of the complaint's well-pleaded factual allegations, though not its legal conclusions. *See United States v. 416.81 Acres of Land*, 514 F.2d 627, 631 (7th Cir. 1975).

Groves is in the business of purchasing and selling Chinese investments. Doc. 1 at ¶ 6. In May 2015, having determined that Groves unlawfully promoted or failed to register certain

1

transactions as tax shelters during the tax years 2002, 2004, and 2005, the IRS assessed a $2.3 million penalty under 26 U.S.C. § 6700. *Id*. at ¶ 7. On October 5, 2015, the IRS sent Groves a notice and demand for payment, with a due date of October 15. *Id*. at ¶ 10.

Following the appropriate procedures, Groves paid 15% of the penalty and filed a refund claim with the IRS. *Id*. at ¶¶ 12-14. The IRS denied the refund, *id*. at ¶ 15, and Groves filed this suit to recover the funds, as permitted by 26 U.S.C. § 7422.

## Discussion

### I. Statute of Limitations

Groves contends that the § 6700 penalty is barred by the three-year statute of limitations under 26 U.S.C. § 6501(a) for assessing and collecting taxes or, in the alternative, by the catch-all five-year statute of limitations under 28 U.S.C. § 2462. Doc. 1 at ¶ 18b. If either statute applies, Groves will prevail in his challenge to the § 6700 penalty, which the IRS imposed a decade after his alleged tax shelter violations.

#### A. 26 U.S.C. § 6501(a)

"In order to establish a violation of 26 U.S.C. § 6700, the Government must prove (1) that the defendant was involved in an abusive tax shelter, and (2) that the defendant made statements about the tax benefits investors would receive if they participated in the shelter which the defendant knew or had reason to know were false or fraudulent." *United States v. Raymond*, 228 F.3d 804, 811 (7th Cir. 2000) (internal quotation marks omitted), *rev'd on other grounds*, *Hill v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013). Section 6671 provides that § 6700 penalties "shall be paid upon notice and demand by the Secretary, and shall be assessed and collected in the same manner as taxes." 26 U.S.C. § 6671(a). Section 6501(a) provides: "Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed …. For purposes of this chapter, the term

'return' means the return required to be filed by the taxpayer …." According to Groves, because a tax assessment has a three-year statute of limitations under § 6501(a), and because § 6671(a) says that § 6700 penalties are to be "assessed and collected in the same manner as taxes," § 6700 penalties are subject to § 6501(a)'s three-year limitations period. Doc. 21 at 12-16.

Courts to have confronted this issue have unanimously held that § 6501(a) does not apply to § 6700 penalties. *See Sage v. United States*, 908 F.2d 18, 24-25 (5th Cir. 1990); *Emanuel v. United States*, 705 F. Supp. 434, 436 (N.D. Ill. 1989); *Agbanc, Ltd. v. United States*, 707 F. Supp. 423, 426-27 (D. Ariz. 1988); *cf. Kuchan v. United States*, 679 F. Supp. 764, 768 (N.D. Ill. 1988) (holding that penalties assessed under § 6701, a provision analogous to § 6700, are not subject to the § 6501(a) limitations period). The consensus is sound. As the Fifth Circuit correctly explained, while "Section 6501(a) depends on the filing of a tax return to begin the running of the limitations period," "Section 6700 assessments do not depend on the filing of a tax return," but rather "occur … after the IRS becomes aware that an individual's activities are prohibited by Section 6700." *Sage*, 908 F.2d at 25 (quoting *Agbanc*, 707 F. Supp. at 426). The mismatch between the triggering event under § 6501(a)—the taxpayer's filing a return—and the basis for liability under § 6700—being involved in a tax shelter and making false statements about its benefits—makes the § 6501(a) limitations period an inappropriate fit for the assessment of § 6700 penalties.

Groves retorts that there is a return available from which to commence the § 6501(a) limitations period: the return on which his clients (the ones who used his tax shelter) allegedly understated their tax liability. Doc. 21 at 13. That argument is unpersuasive. The conduct prohibited by § 6700 is not the taxpayer's filing of an inaccurate return, but a tax shelter proponent's making a statement that falsely touts the shelter's tax benefits. *See Raymond*, 228

F.3d at 811. In fact, a tax shelter promoter can violate § 6700 even if the taxpayer files no return. *See United States v. Benson*, 561 F.3d 718, 721-24 (7th Cir. 2009) (holding that the IRS properly applied § 6700 to a person who promoted a tax avoidance scheme that, "[i]nstead of [encouraging taxpayers to] fil[e] false tax returns, … encouraged customers not to file a tax return at all"). And because § 6700 liability does not hinge on a taxpayer's filing a return, the IRS's pursuit of relief under § 6700 cannot possibly be subject to a limitations period, like that in § 6501(a), that commences upon the filing of a return.

**B.     28 U.S.C. § 2462**

Section 2462 states: "Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued …." 28 U.S.C. § 2462. Contrary to Groves's submission, § 2462 does not apply to § 6700 penalties.

By its terms, § 2462 governs only an "action, suit or proceeding for the enforcement of" a fine or penalty. The court will assume that *administrative* actions, suits, and proceedings, and not just actions, suits, and proceedings *in court*, are potentially subject to § 2462. *See Interamericas Invs., Ltd. v. Bd. of Governors of the Fed. Reserve Sys.*, 111 F.3d 376, 382 (5th Cir. 1997); *Arch Mineral Corp. v. Babbitt*, 104 F.3d 660, 670 (4th Cir. 1997); *3M Co. v. Browner*, 17 F.3d 1453, 1457 (D.C. Cir. 1994). The question then becomes whether the IRS's assessment of § 6700 penalties arises from "an action, suit or proceeding." As the circuits to have considered this issue have unanimously held, the answer to that question is no. *See Capozzi v. United States*, 980 F.2d 872, 874-75 (2d Cir. 1992); *Lamb v. United States*, 977 F.2d 1296, 1297 (8th Cir. 1992); *Mullikin v. United States*, 952 F.2d 920, 928 (6th Cir. 1991).

4

As the Second Circuit explained in *Capozzi*, the terms "action," "suit," and "proceeding" "implicate some adversarial adjudication, be it administrative or judicial." 980 F.2d at 874. An IRS assessment under § 6700, by contrast, arises from "an *ex parte* act. It is merely the determination of the amount of the penalty and the official recording of the liability. Indeed, the taxpayer is not even entitled to a pre-assessment hearing." *Ibid*. (citations omitted). The *ex parte* nature of a § 6700 assessment, the Second Circuit concluded, means that it is not an "action, suit or proceeding," which in turn means that § 2462's five-year statute of limitations does not apply to § 6700 assessments. *Ibid*. Groves contends that *Capozzi* was incorrectly decided, but his arguments fail to persuade.

First, Groves argues that because § 2462's predecessors include three limitations provisions, enacted in the late eighteenth and early nineteenth centuries, that applied to the imposition of tax penalties, § 2462 should be construed to do so as well. Doc. 21 at 31 (citing 14 Op. Att'y Gen 81 (1872)). The first statute stated that no person shall "be *prosecuted, tried or punished* for any offence, not capital, nor for any fine or forfeiture under any penal statute, unless *the indictment or information* for the same shall be found or instituted within two years from the time of committing the offence, or incurring the fine or forfeiture." 1 Stat. 119 (emphasis added). The second statute, applicable to the collection of duties on imports and tonnage, stated that "no *action or prosecution* shall be maintained *in any case* under this act, unless the same shall have been commenced within three years next after the penalty or forfeiture was incurred." 1 Stat. 696 (emphasis added). The third statute stated that "any person or persons guilty of any crime arising under the revenue laws of the United States, or incurring any fine or forfeiture by breaches of the said laws, may be *prosecuted, tried and punished*, provided the *indictment or information* be found at any time within five years after committing

5

the offence or incurring the forfeiture." 2 Stat. 290-91 (emphasis added). As the emphasized text makes clear, all three statutes set limitations periods for adversary proceedings, not *ex parte* proceedings. The fact that the statutes might have been predecessors to § 2462 therefore does not undermine *Capozzi*'s holding that § 2462 applies only to adversarial actions, suits, and proceedings, not to *ex parte* actions like § 6700 assessments. *See 3M Co.*, 17 F.3d at 1459 n.11 (citing with approval *Capozzi*'s distinction between *ex parte* proceedings and adversarial adjudications).

Second, Groves cites *Bowers v. New York & Albany Lighterage Co.*, 273 U.S. 346 (1927), in which the taxpayer sued to recover sums that the IRS had collected by distraint. "Distraint," also known as "distress," was a tax collection method in which the collector would seize and sell the debtor's personal property to satisfy a tax debt. *See Black's Law Dictionary* 542 (9th ed. 2009). The taxpayer in *Bowers* argued that the distraint, which occurred more than five years after he filed his return, was barred by the statute of limitations set forth in § 250(d) of the Revenue Act of 1921, which provided that "[n]o suit or proceeding for the collection of any such taxes … shall be begun, after the expiration of five years after the date when such return was filed." 273 U.S. at 348-49. The Supreme Court held that the term "proceeding" referred not only to a *judicial* suit to compel payment of a tax liability, but also to distraint, an *executive* action to compel payment. *Id.* at 349. According to Groves, because both distraint and § 6700 penalties are *ex parte* actions, and because *Bowers* held that the term "proceeding" in § 250(d) covered distraint, the term "proceeding" in § 2462 must be understood to cover § 6700 penalties.

The analogy to *Bowers* does not hold. In ruling that § 250(d) covered distraint, *Bowers* explained: "The purpose of the enactment was to fix a time beyond which steps to enforce *collection* might not be initiated. … The mischiefs to be remedied by setting a time limit against

6

distraint are the same as those eliminated by bar against suit." *Ibid*. (emphasis added). The Court added: "There has been suggested no principle of public policy or other consideration that furnishes any reasonable support for setting of a limitation against only one of the two authorized methods of enforcing *collection*." *Id*. at 350 (emphasis added). As the emphasized text makes clear, *Bowers* concerned a *collection* proceeding, not an *assessment* proceeding; the IRS assessed the amount owed by the taxpayer before it took executive action to distrain the taxpayer's property to satisfy the debt. *Id*. at 347 ("Shortly before the expiration of five years after the return the [IRS] assessed and the collector demanded payment of additional income and excess profits taxes. [The taxpayer] refused to pay. More than five years after the return the collector distrained and sold personal property of the [taxpayer] to pay the amount claimed."). *Bowers* therefore says nothing about whether a limitations statute referring to "proceedings" should apply when the proceeding involves the assessment of tax liability, as opposed to the collection of amounts that the IRS has already assessed. *Cf. United States v. Trilling*, 328 F.2d 699, 702 (7th Cir. 1964) (distinguishing tax assessments from tax collections for limitations purposes).

Moreover, as the above-quoted passages from *Bowers* show, the Supreme Court was concerned that if judicial proceedings were covered by § 250(d)'s limitations period but distraint was not, the IRS could evade § 250(d) by pursuing distraint to the exclusion of judicial proceedings. 273 U.S. at 349 ("The repose intended would not be attained if suits only were barred, leaving the collector free at any time to proceed by distraint. In fact distraint is much more frequently resorted to than is suit for the collection of taxes."). There is no such concern here, as only one mechanism is available to establish liability under § 6700: an *ex parte* assessment of a penalty. Thus, holding that § 2462 does not apply to the *ex parte* assessment of

7

§ 6700 penalties does not make those assessments any more or less appealing to the IRS than they already are, as there is no other, more time-restricted way of assessing them.

It also bears mention that the Supreme Court in *Bowers* pointed to compelling textual support in other contemporaneously enacted statutes to support its conclusion that Congress wished to treat judicial collection proceedings and distraint equally for limitations and other purposes. *Id*. at 351-52. Groves cites no such textual support, and the court is aware of none, suggesting that Congress intended § 6700 penalty assessments to be placed on the same footing as adversarial proceedings for purposes of § 2462.

Third, Groves cites *Bull v. United States*, 295 U.S. 247, 260 (1935), for the proposition that an IRS assessment "has the force of … a judgment." That is true, but irrelevant. Section 2462 speaks not of a judgment, but of "an action, suit or proceeding." That a § 6700 assessment has the force of a judgment is irrelevant to whether it is one of those three things.

Fourth, Groves argues that even if a § 6700 assessment is not itself "an action, suit or proceeding" due to its not being an adversarial proceeding, it is, at the very least, the "first step" of such a proceeding and necessarily falls within the statute's scope. It is open to question whether something's being the "first step" of an adversarial proceeding places that thing within the scope of § 2462. Even granting that premise, a § 6700 assessment does not invariably trigger an adversarial proceeding and therefore is not the first step of such a proceeding. The tax shelter promoter may elect to simply pay the assessed § 6700 penalty; if so, an adversarial proceeding will not occur. Or, if the promoter pays 15% of the assessment and then asks the IRS for a refund, *see* 26 U.S.C. § 6703(c), and if either the IRS issues a refund or the IRS denies a refund and the promoter gives up, no adversarial proceeding will arise. Thus, unlike a situation where

the agency, to assess liability, must at some point file a complaint or commence some other adversary proceeding, the IRS need do no such thing to assess a § 6700 penalty.

Fifth, Groves cites *Bahen & Wright v. Commissioner*, 176 F.2d 538, 539-40 (4th Cir. 1949), which held that the issuance of a "notice of deficiency" commenced a "proceeding." *Bahen & Wright* reasoned that the notice of deficiency was the first step in a proceeding because the step immediately following the notice of deficiency was the taxpayer's filing for review in the Tax Court, a plainly adversarial proceeding. *Ibid*. Although federal tax law has changed somewhat, the procedure remains essentially the same under 26 U.S.C. § 6213, which provides that Tax Court proceedings immediately follow a notice of deficiency. The same is not true, however, for § 6700 penalties; after the penalty is assessed, the next step is for an IRS employee to review a refund request. *See* 26 U.S.C. § 7422(a) (precluding suits prior to the filing of a claim for a refund or credit). That distinction is subtle but important. In the provisions at issue in *Bahen & Wright*, the notice of deficiency necessarily triggered adversarial proceedings; here, the assessment of a penalty does not.

Sixth, Groves cites *Arch Mineral Corp. v. Babbitt*, *supra*, which held that an Office of Surface Mining ("OSM") decision to list the plaintiff corporation in a database that would block it from receiving certain permits was a penalty within the meaning of § 2462. *Id*. at 669. *Arch Mineral* is distinguishable as well. The act of placing the corporation in the database was not completed *ex parte*, but occurred only after the corporation received notice of OSM's belief that it qualified and was given two opportunities to respond. 104 F.3d at 663. That is, the company was not placed in the database until after adversarial activity had occurred. By contrast, under § 6700, liability is determined prior to any adversarial proceeding and, as noted above, it is possible that no such proceeding will ever take place.

Finally, Groves cites *Gabelli v. SEC*, 133 S. Ct. 1216 (2013), for the proposition that § 2462 is a "general statute of limitations for civil penalty actions," *id*. at 1219, and argues that, as a result, a penalty imposed under § 6700 must be imposed within five years of the penalized conduct. Doc. 21 at 17-20. Groves's general proposition—that § 2462 is a catch-all—is correct, but that by itself does not suggest, let alone show, that § 6700 penalties here are governed by § 2462. Moreover, *Gabelli* focuses on whether the discovery rule applies to trigger the § 2462 statute of limitations, but says nothing about what constitutes an "action, suit or proceeding" in the first place.

In sum, because § 6700 penalties are assessed prior to any adversarial proceeding, the § 2462 limitations period does not apply. Groves's complaint that this result is harsh or unwise as a policy matter is an issue for Congress, not the court.

## II.     Laches

Groves also alleges that laches prevents the Government from assessing the § 6700 tax shelter penalties at issue here. Doc. 1 at ¶ 18b. The Government argues that laches cannot, as a matter of law, bar the assessment. Doc. 19 at 5-7. The Government is correct.

Groves cites only one case, *Sage*, stating that laches is a defense to a § 6700 penalty. Doc. 21 at 42. As noted above, the Fifth Circuit in *Sage* considered whether the § 6501(a) statute of limitations applies to § 6700 penalties. In holding that it did not, the court remarked that "the doctrine of laches … remain[s] … the only curb on IRS penalty-assessment power under [§] 6700." *Sage*, 908 F.2d at 25. Because the plaintiff in *Sage* had not offered laches as a defense in the district court, *id*. at 19, the Fifth Circuit's reference to laches was dicta. Likely because the issue was not presented, the Fifth Circuit did not analyze whether laches in fact is

10

available to defend against a § 6700 assessment. *Sage*'s persuasive authority on that point is accordingly nil.

As Groves correctly notes, the Seventh Circuit has not decided, one way or the other, whether laches is available as a defense against a government suit. In *United States v. Administrative Enterprises, Inc.*, 46 F.3d 670 (7th Cir. 1995), the Seventh Circuit noted in dicta three circumstances where laches *might* be available against the Government:

> One possibility … is that only the most egregious instances of laches can be used to abate a government suit. Another [possibility] would be to confine the doctrine to suits against the government in which, as in this case, there is no statute of limitations. … Still another possibility—supported by *Clearfield Trust Co. v. United States*, 318 U.S. 363, 369 (1943), which held that laches was a defense to the government as a holder of commercial paper—is to draw a line between government suits in which the government is seeking to enforce either on its own behalf or that of private parties what are in the nature of private rights, and government suits to enforce sovereign rights, and to allow laches as a defense in the former class of cases but not the latter.

*Id*. at 673 (citation omitted). More recently, however, the Seventh Circuit stated that "the government probably isn't barred by its own laches in suits to collect taxes, though that is an open question in this court." *Lantz v. Commissioner*, 607 F.3d 479, 483 (7th Cir. 2010) (citations omitted). *Lantz* refers to "suits," which a § 6700 assessment is not, but it must be remembered that laches applies not only to suits, but also to other means of "pressing a claim." *See Jones v. Markiewicz-Qualkinbush*, 842 F.3d 1053, 1060 (7th Cir. 2016) ("Laches arises when an unwarranted delay in bringing a suit or *otherwise pressing a claim* produces prejudice.") (emphasis added).

Taken together, *Lantz* and *Administrative Enterprises* suggest that (1) laches *probably* is not a defense against the Government, particularly in the tax area, and (2) even laches is available, it is cabined to three narrow circumstances. Those circumstances are not present here.

The first, "egregious" delay, does not apply. In *Cayuga Indian Nation of New York v. Pataki*, 413 F.3d 266 (2d Cir. 2005), the Second Circuit considered a situation where the United States intervened in an ejectment action filed by a Native American tribe (with whom the United States had a trust relationship, *id*. at 279) against the State of New York. The tribe presented claims based on a treaty between it and New York from 1795, which purported to sell certain lands to the State for an annual payment. *Id*. at 269. The suit was not filed until 1980, and the United States did not intervene until 1992. *Id*. at 269-71. The court held that the Government's claims were barred, reasoning that "a suit based on events that occurred two hundred years ago is about as egregious an instance of laches on the part of the United States as can be imagined …." *Id*. at 279. This case, by contrast, involves a delay of just over ten years. Although ten years is not an instant, the difference between a ten-year delay and a 200-year delay is one in kind, not of degree. The delay here was not "egregious."

The second circumstance in which laches might apply, where the Government enforces private rights rather than sovereign rights, is inappropriate here as well. This case concerns an attempt to enforce a tax penalty, and few areas of government activity are more canonically sovereign than taxation. *See Administrative Enterprises, Inc.*, 46 F.3d at 673 ("There is no better illustration of the enforcement of a sovereign right than the use of compulsory process to determine liability for unpaid taxes.").

The third circumstance in which laches might apply, where no statute of limitations exists, appears promising for Groves at first blush, as there is no statute of limitations for assessing § 6700 penalties. Yet this third circumstance should not be read too broadly, lest it conflict with the second. The principle that laches is unavailable as a defense where sovereign rights are at stake rests on the notion that the sovereign should not be limited in its ability "to

enforce a public right or protect the public interest." *Cayuga Indian Nation of N.Y.*, 413 F.3d at 279 n.8. Given this, one would expect that many, if not most, laws aimed at allowing the sovereign to vindicate public rights or interests will lack a statute of limitations. Yet if the mere lack of a statute of limitations were enough to make the laches defense available, the sovereign would often, if not always, be faced with some time bar on its actions. It therefore makes sense, and best honors the idea behind the second circumstance, to construe the third circumstance as not applying where the Government seeks to enforce a sovereign right, as it does here.

Thus, even assuming that the three circumstances set forth in *Administrative Enterprises* represent actual exceptions to the general rule that laches is not available against the Government, and even assuming further that those exceptions apply in tax context, which they "probably" do not, *Lantz*, 607 F.3d at 483, this case does not fall into any of them.

## Conclusion

The United States's motion to strike Groves's limitations and laches defenses is granted. The United States shall answer the surviving portions of the complaint by May 19, 2017.

May 5, 2017

United States District Judge