**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PHILIP G. GROVES, | ) | |
| | ) | |
| Plaintiff, | ) | No. 16-cv-02485 |
| | ) | |
| v. | ) | The Honorable John F. Kness |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF**
**PHILIP G. GROVES' MOTION FOR SUMMARY JUDGMENT**


Gabriel K. Gillett (IL 6328233)
Jenner & Block LLP
353 North Clark Street
Chicago, Illinois 60654
Tel: 312-840-7220
Fax: 312-527-0484
ggillett@jenner.com

Guinevere M. Moore (IL 6297231)
Ajay Gupta (CA 190101)
Moore Tax Law Group LLC
2205 W. Armitage Ave., Suite 1
Chicago, Illinois 60647
Tel: 312-549-9993
Fax: 312-549-9991
guinevere.moore@mooretaxlawgroup.com

David E. Lieberman (IL 6211538)
Levin Schreder & Carey Ltd.
120 North LaSalle Street, 38th Floor
Chicago, Illinois 60602
Tel: 312-332-6300
Fax: 312-332-6393
david@lsclaw.com

*Attorneys for Plaintiff, Philip G. Groves*

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

BACKGROUND ..... 3

I. The Penalty Assessment ..... 3

II. IRS Abates The Penalty After Mr. Groves Exercises His CDP Rights. ..... 4

III. Proceedings In This Court ..... 5

LEGAL STANDARD ..... 5

ARGUMENT ..... 6

I. The Government Lacked Authority To Reverse The Abatement, Which Should Be Restored. ..... 6

A. Reversal Of The Abatement Is Not Authorized By 26 U.S.C. § 7122 Or Executive Order 6166. ..... 6

B. The Non-Binding IRS Chief Counsel Notice And Related Cases Do Not Authorize Reversal Of The Abatement. ..... 9

C. The Ministerial Exception Does Not Apply Here. ..... 13

II. Even If Reversal Of The Abatement Were Valid, The Penalty Is Improper Because The IRS Failed To Comply With § 6751. ..... 16

A. The IRS Did Not Comply With § 6751(b). ..... 17

B. The IRS Did Not Comply With § 6751(a). ..... 19

CONCLUSION ..... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Becker*,
407 F.3d 89 (2d Cir. 2005) .................................................. 14

*Bittner v. United States*,
143 S. Ct. 713 (2023) .................................................. 18

*Bugge v. United States (In re Bugge)*,
99 F.3d 740 (5th Cir. 1996) .................................................. 14

*Chai v. Comm'r*,
851 F.3d 190 (2nd Cir. 2017) .................................................. 17, 18, 20

*City of Chicago v. Sessions*,
321 F. Supp. 3d 855 (N.D. Ill. 2018) .................................................. 5

*Clay v. Comm'r*,
152 T.C. 223 (2019) .................................................. 17

*Colliot v. United States*,
2021 WL 2709676 (W.D. Tex. Mar. 24, 2021) .................................................. 20

*Comm'r v. Acker*,
361 U.S. 87 (1959) .................................................. 18

*Crompton-Richmond Co. v. United States*,
311 F. Supp. 1184 (S.D.N.Y. 1970) .................................................. 1, 6, 14

*Dalton v. Comm'r*,
682 F.3d 149 (1st Cir. 2012) .................................................. 15, 16

*Durda v. Comm'r*,
113 T.C.M. (CCH) 1420 (2017) .................................................. 10

*George v. McDonough*,
142 S. Ct. 1953 (2022) .................................................. 16

*Int'l Harvester Co. v. Occupational Safety & Health Rev. Comm'n*,
628 F.2d 982 (7th Cir. 1980) .................................................. 6

*Isley v. Commissioner*,
141 T.C. 349 (2013) .................................................. 11, 12

*Keller Tank Servs. II, Inc. v. Comm'r*,
854 F.3d 1178 (10th Cir. 2017) .......... 15

*Kroner v. Comm'r*,
48 F.4th 1272 (11th Cir. 2022) .......... 19

*Laidlaws's Harley Davidson Sales, Inc. v. Comm'r*,
29 F.4th 1066 (9th Cir. 2022) .......... 17, 18, 19

*Marietta Mem'l Hosp. Emp. Health Benefit Plan v. DaVita Inc.*,
142 S. Ct. 1968 (2022) .......... 8, 9

*Minemyer v. Comm'r*,
2023 WL 314832 (10th Cir. Jan. 19, 2023) .......... 19

*Moreno v. Napolitano*,
213 F. Supp. 3d 999 (N.D. Ill. 2016) .......... 5

*Nielen-Thomas v. Concorde Inv. Servs., Inc.*,
914 F.3d 524 (7th Cir. 2019) .......... 18

*Orum v. Commissioner*,
123 T.C. 1 (2004) .......... 15

*S. Miami Holdings, LLC v. F.D.I.C.*,
533 F. App'x 898 (11th Cir. 2013) .......... 16

*United States v. Jackson*,
2012 WL 1108558 (E.D. Pa. Apr. 2, 2012) .......... 13

*United States v. Pound*,
2010 WL 2803918 (E.D. Okla. Feb. 2, 2010) .......... 11

*Waltner v. United States*,
2020 WL 2991611 (D. Ariz. June 4, 2020) .......... 12

*Watt v. Alaska*,
451 U.S. 259 (1981) .......... 8, 9

*Welsh v. R.W. Bradford Transp.*,
231 F.R.D. 297 (N.D. Ill. 2005) .......... 18

*Youngstown Sheet & Tube Co. v. Sawyer*,
343 U.S. 579 (1952) .......... 9

**Statutes and Rules**

5 U.S.C. § 551(1) .................... 16

5 U.S.C. § 551(2) .................... 16

5 U.S.C. § 702.................... 16

5 U.S.C. § 901.................... 2, 8

26 U.S.C. § 6320.................... 6, 8

26 U.S.C. § 6330.................... 8

26 U.S.C. § 6330(b)(2) .................... 15

26 U.S.C. § 6330(c).................... 2

26 U.S.C. § 6330(c)(1) .................... 7, 12,13

26 U.S.C. § 6330(c)(2) .................... 7

26 U.S.C. § 6700(a) .................... 4, 20

26 U.S.C. § 6700(a)(2).................... 20

26 U.S.C. § 6703(a) .................... 17

26 U.S.C. § 6703(c).................... 20

26 U.S.C. § 6751(a) .................... 3, 19-20

26 U.S.C. § 6751(b) .................... 2, 4, 17, 18

26 U.S.C. § 7122.................... 2, 6-8

26 U.S.C. § 7122(d)(1).................... 8

26 U.S.C. § 7401.................... 5

26 U.S.C. § 7482(a)(1).................... 19

26 U.S.C. § 7491(c).................... 17

Fed. R. Civ. P. 56(a) .................... 5

Fed. R. Civ. P. 60(b) .................... 16

**Other Authorities**

CC-2019-006, Policy Statement on the Tax Regulatory Process (Sept. 17, 2019) ........ 10

Exec. Order No. 6166, § 5 (June 10, 1933), *reprinted in* 5 U.S.C. § 901 (2000) ........ 2, 8, 9

IRS Chief Counsel Notice CC-2011-020, 2011 WL 4402105 (Sept. 15, 2011) ........ 9, 10

S. Rep. No. 105-174 (1998) ........ 19

## INTRODUCTION

Plaintiff Philip G. Groves is entitled to summary judgment on his claim for a refund of $357,052 paid to partly satisfy a tax penalty, and on the Government's counterclaim for the remainder of the penalty. The Internal Revenue Service ("IRS") properly issued a considered determination abating the legally invalid penalty as part of a multi-year statutory Collections Due Process ("CDP") proceeding, and the IRS had no authority to subsequently reverse that determination.

Relief for Mr. Groves is long overdue. He filed this action nearly seven years ago, arguing (among other things) that the IRS had assessed the penalty without complying with the statutory requirements of 26 U.S.C. § 6751. In June 2022, the IRS itself agreed. It concluded, after a statutorily required CDP hearing, that the agency had "failed to meet the current legal standard under IRC 6751(b)" when assessing the penalty at issue. The IRS then abated the penalty against Mr. Groves in full. (Statement of Facts ("SOF") ¶ 32.)

The IRS's admission of error should have ended this case. The Government has conceded that, "[i]n general, when the IRS abates an assessment, the abatement cannot be reversed if the IRS later determines that the abatement was incorrect." (Doc. 165 at 7 (citing *Crompton-Richmond Co. v. United States*, 311 F. Supp. 1184, 1186 (S.D.N.Y. 1970)).) But rather than accept the deliberate and considered conclusion correctly reached by the agency, the Department of Justice ("DOJ") prevailed upon the IRS to reverse the abatement.

With the reversal now effectuated, summary judgment should be granted for Mr. Groves for two distinct reasons.

First, the Government lacked authority to reverse the abatement. The IRS was obligated as part of the statutory CDP process to verify that "the requirements of any applicable law or administrative procedure have been met," including related to § 6751, as to the penalties imposed on Mr. Groves. 26 U.S.C. § 6330(c). The IRS determined § 6751 had not, in fact, been followed when imposing the penalty at issue on Mr. Groves, and accordingly abated the 2006 section 6700 penalty.

The Government concedes that final agency determination cannot be undone except in three narrow circumstances, none of which is present here. 26 U.S.C. § 7122, which applies to a "compromise" of tax liability, is inapplicable because no such compromise occurred. 5 U.S.C. § 901, which reprints Executive Order 6166, is similarly inapplicable because the abatement did not arise from a "case referred to [DOJ]" and was not a decision about whether and how to prosecute. And there is no basis whatsoever to conclude that the considered and well-documented abatement was a ministerial error. To the contrary, the abatement was the product of a six-year process that included a hearing, approval by the Appeals officer and her manager, separate approval by IRS Counsel, and a considered decision reflecting the agency's evaluation of Mr. Groves' arguments to the relevant facts. The Court should thus invalidate the reversal of the abatement and grant judgment to Mr. Groves.

Second, even if the reversal were authorized, the abatement decision was correct on the merits and Mr. Groves is entitled to summary judgment on his claim and the Government's counterclaims for the same reasons. The underlying penalty is invalid under 26 U.S.C. § 6751(b) because the agency failed to obtain written

supervisory approval for the penalty before the initial determination. The IRS's mea culpa was correct. This Court should reach the same conclusion. Moreover, the penalty is invalid for the independent reason that the Government failed to comply with 26 U.S.C. § 6751(a), which requires the IRS to include a "computation of the penalty" with each notice of penalty.[1] But it did not here, so the penalty cannot stand.

## BACKGROUND

### I. The Penalty Assessment

Mr. Groves buys, sells, and services distressed Chinese debt for a living. (SOF ¶ 1.) On May 20, 2015, Revenue Agent Tamyra P. Hughes ("RA Hughes") issued a Notice of Proposed Adjustment ("NOPA"), stating the IRS had "determined" multiple penalties as to Mr. Groves, including a section 6700 penalty in the amount of $2,380,346. (*Id.* ¶¶ 8, 10, Ex. A.[2]) The NOPA advised Mr. Groves that he had a right to request a conference with IRS Appeals by submitting a protest within 30 days. (SOF ¶ 9.) Mr. Groves filed a protest outlining the many inaccurate, internally inconsistent, and provably false factual assumptions made when the IRS "determined" he was liable for the section 6700 penalty and requesting additional information. (*Id.* ¶ 12, Ex. C.)

On August 19, 2015, RA Hughes' supervisor, Michael A. Halpert, electronically signed Form 8278, Assessment and Abatement of Miscellaneous Civil Penalties,

---

[1] Pursuant to the Court's order approving the parties' summary judgment briefing schedule (Doc. 187), Mr. Groves submits this memorandum of twenty pages.

[2] Although the NOPA refers to 2005 and the section 6700 penalty ultimately assessed was for 2006, the United States maintains that the 2005 NOPA represents the IRS's determination for the section 6700 penalty at issue here. (SOF ¶ 11.)

approving a section 6700 penalty of $2,380,346 for tax year 2006. (*Id.* ¶ 15, Ex. D.) The Government maintains that this form represents the "initial determination" of the penalty and that Halpert's signature on this form constitutes the requisite supervisory approval under 26 U.S.C. § 6751(b). (*See* Doc. 147 ¶ 27.)

On October 5, 2015, Mr. Groves received a "Notice of Penalty Charge," imposing the § 6700 penalty of $2,380,346 for the 2006 tax year. (SOF ¶ 16, Ex. E.) The assessment notice contained no explanation or computation of the penalty. (SOF ¶ 17.) On October 13, 2015, Mr. Groves paid 15 percent of the penalty, $357,052, and thereafter filed an administrative claim for refund. (*Id.* ¶¶ 18–19, Ex. F, Ex. G.) The claim for refund set forth several grounds for abatement and a refund, including that "the elements of 26 U.S.C. § 6700(a) are not satisfied." (*Id.* ¶ 20, Ex. G.) The IRS subsequently filed a lien against Mr. Groves for the 2006 penalty. (SOF ¶ 27.)

## II. IRS Abates The Penalty After Mr. Groves Exercises His CDP Rights.

On March 7, 2016, Mr. Groves received a Final Notice of Intent to Levy for, among other things, the 2006 penalty. (*Id.* ¶ 26, Ex. L.) Mr. Groves exercised his statutory right to request a CDP hearing with IRS Appeals, and filed requests for a CDP hearing on March 17, 2016 and April 25, 2016. (*Id.* ¶ 29, Ex. N, Ex. O.) His request covered penalties issued for tax years 2001, 2002, 2004, and 2006. (SOF ¶ 29.)

The IRS finally held its CDP hearing four years later, on April 23, 2020. (*Id.* ¶ 31.) Another two years later, on April 6, 2022, the IRS issued its determination—finding it "failed to meet the current legal standard under IRC 6751(b)" as to the 2006 penalty at issue and the penalties for 2002 and 2004. (*Id.* ¶ 32, Ex. R.) The result was a full abatement of all three penalties. (SOF ¶ 32.) The IRS also released the lien that

was the subject of the hearing. (*Id.* ¶ 35, Ex. S.) In a separate determination also dated April 6, 2022, the IRS declined to abate the 2001 penalty. (SOF ¶ 33.)

### III. Proceedings In This Court

Mr. Groves filed this action on February 22, 2016, seeking a determination that he is not liable for the penalty imposed for 2006, and a refund of his statutorily required deposit of 15% ($357,052). (Doc. 1.) The Government counterclaimed for the unpaid 85% of the penalty, pursuant to 26 U.S.C. § 7401. (Doc. 131, at 11–12.)

When the IRS abated the 2006 penalty in April 2022, the parties were in the midst of briefing cross-motions for summary judgment. (*See* Docs. 139, 143.) Groves then moved this Court to dismiss this action as moot, but the DOJ objected and asserted that the penalty would be reversed. (Docs. 165-1, 177, 177-1, 181, 182.) The IRS then reversed the abatement and restored the 2006 penalty. (*Id.*; SOF ¶ 39.)

Mr. Groves now seeks summary judgment on his refund claim and the Government's related counterclaim, based on: (1) the Government's improper reversal of the IRS's proper abatement of the penalty; or (2) the IRS's failure to follow the requirements of 26 U.S.C. § 6751 in imposing the penalty in the first place.

## LEGAL STANDARD

Summary judgment must be granted where the movant shows there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). That burden is met when the movant shows the government acted beyond its statutory authority. *See, e.g.*, *City of Chicago v. Sessions*, 321 F. Supp. 3d 855, 874 (N.D. Ill. 2018), *aff'd, City of Chicago v. Barr*, 961 F.3d 882 (7th Cir. 2020); *Moreno v. Napolitano*, 213 F. Supp. 3d 999, 1004 (N.D. Ill. 2016).

## ARGUMENT

### I. The Government Lacked Authority To Reverse The Abatement, Which Should Be Restored.

There is no dispute that, following its statutory mandate under 26 U.S.C. §§ 6320 and 6330, the IRS held a CDP hearing and thereafter abated the penalty at issue after finding that the agency's assessment "failed to meet the current legal standard under IRC 6751(b)." (*See* SOF ¶ 32.) There is also no dispute that the abatement has now been reversed at the DOJ's behest. (*Id.* ¶ 38.)

The Government has acknowledged that, "subject to three specific exceptions," an abatement by the IRS "cannot be reversed if the IRS later determines that the abatement was incorrect." (Doc. 165 at 7 (citing *Crompton-Richmond*, 311 F. Supp. at 1186)); *accord Int'l Harvester Co. v. Occupational Safety & Health Rev. Comm'n*, 628 F.2d 982, 984 (7th Cir. 1980) ("When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose."). None of those exceptions apply here. The reversal of the abatement is invalid and Mr. Groves is entitled to summary judgment.

#### A. Reversal Of The Abatement Is Not Authorized By 26 U.S.C. § 7122 Or Executive Order 6166.

To attempt to justify reversal of the abatement, the Government has argued 26 U.S.C. § 7122 foreclosed IRS authority to abate. (*See, e.g.*, Doc. 165.) That statute provides that the IRS "may compromise any civil or criminal case arising under the internal revenue laws prior to reference to the [DOJ] for prosecution or defense; and

the Attorney General or his delegate may compromise any such case after reference to the [DOJ] for prosecution or defense."

On its face, § 7122 is inapplicable here. The IRS's abatement of the penalty at issue was not the result of a "compromise"—it reflected the IRS unilaterally confessing error and entirely undoing the penalty after correctly recognizing that the penalty is unlawful under § 6751. (SOF ¶ 32.) Nor did the abatement arise as part of a "civil or criminal case." Rather, it was the product of the statutory CDP process that was triggered when the Commissioner chose to proceed with enforced collection (SOF ¶¶ 28–33), and which required the IRS to verify that "the requirements of any applicable law or administrative procedure have been met" as to the penalty, 26 U.S.C. § 6330(c)(1) (mandating that "[t]he appeals officer shall at the hearing obtain verification" regarding compliance); *see also id.* § 6330(c)(2) (stating that taxpayer "may raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy"). Indeed, the Court recognized the plain meaning of § 7122 when hearing Mr. Groves' motion to dismiss:

> [T]he word "compromise," there are - - it's kind of an odd word if what Congress really intended by that statute was that once a case goes from the IRS administrative process to a court of law and when DOJ is involved by way of a referral, then concluding the litigation . . . can only be done with the consent of DOJ. There are other words I could think of that might be more facially encompassing than compromise. I mean: end, conclude litigation. You could say the litigation cannot be concluded by way of stipulation or otherwise without the consent of the DOJ.

(Doc. 176 at 37:25–38:11.)

Context further confirms that the abatement did not result from the IRS accepting a compromise. Mr. Groves did not file Form 656 (SOF ¶ 38), which is used

"when applying for an Offer in Compromise (OIC), which is an agreement between you and the IRS that settles your tax liabilities for less than the full amount that you owe." *See* https://www.irs.gov/forms-pubs/about-form-656. Nor did the IRS accept Mr. Groves' § 7430(g) qualified offer, which was made on April 28, 2016 and unrelated to CDP, to settle his liability for $1. (SOF ¶ 30.) Rather, the IRS confessed error in its CDP determination and abated the penalty in full in April 2022. (*Id.* ¶ 32.)

Section 7122 also cannot be read to authorize reversal of a valid abatement issued pursuant to the exercise of a taxpayer's separate CDP rights. Congress enacted §§ 6320 and 6330 granting taxpayers CDP rights as part of the Internal Revenue Service Restructuring and Reform Act of 1998, which also amended § 7122 to direct the Treasury to "prescribe guidelines for officers and employees of the Internal Revenue Service to determine whether an offer-in-compromise is adequate and should be accepted to resolve a dispute," 26 U.S.C. § 7122(d)(1). But Congress did not amend § 7122 to suggest that it trumped §§ 6320 and 6330, so § 7122 cannot be so read. *See, e.g.*, *Marietta Mem'l Hosp. Emp. Health Benefit Plan v. DaVita Inc.*, 142 S. Ct. 1968, 1974 (2022) ("Congress knew how to write such a law. It did not do so in this statute."); *Watt v. Alaska*, 451 U.S. 259, 267 (1981) (directing courts to read multiple statutes bearing on a case "to give effect to each . . . while preserving their sense and purpose").

In opposing Mr. Groves' motion to dismiss and attempting to justify reversal of the abatement, the Government also referenced Executive Order ("EO") 6166, § 5 (June 10, 1933), *reprinted in* 5 U.S.C. § 901 (2000). (Doc. 165 at 4; Doc. 176 at 29:20–30:24.) Adopted in 1933 to effectuate a reorganization of the executive branch, EO

6166 states: "As to any case referred to the [DOJ] for prosecution or defense in the courts, the function of decision whether and in what manner to prosecute, or to defend, or to compromise, or to appeal, or to abandon prosecution or defense, now exercised by any agency or officer, is transferred to the [DOJ]." As with § 7122, however, EO 6166 does not authorize reversal of the abatement of the 2006 penalty.

First, as a textual matter, EO 6166 is inapplicable: the IRS's decision to abate the penalty as part of CDP did not arise from a "case referred to" the DOJ and was not a "decision whether and in what manner to prosecute, or to defend, or to compromise, or to appeal, or to abandon prosecution or defense." Second, nothing in the text, structure, history, or purpose of EO 6166—or in the CDP statutes Congress created 65 years later—suggests it should be read to constrain CDP rights. *See Marietta Mem'l*, 142 S. Ct. at 1974; *Watt*, 451 U.S. at 267. Nor could an executive order be read to supersede a taxpayer's statutory right to CDP before the Government takes his property. *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585–86 (1952) (President cannot seize property via executive order when Congress limited such seizure). Third, the Government has not cited, and Mr. Groves is not aware of, any case where a court interpreted EO 6166 as barring the IRS from abating a penalty as part of the statutory CDP process because a separate refund lawsuit was pending.

### B. The Non-Binding IRS Chief Counsel Notice And Related Cases Do Not Authorize Reversal Of The Abatement.

In attempting to justify reversal of the abatement, the Government has relied on IRS Chief Counsel Notice CC-2011-020, 2011 WL 4402105 (Sept. 15, 2011), and a

handful of cases. (*See* Doc. 165 at 3-7.) However, those non-binding authorities do not support allowing the Government to reverse the valid abatement here.

The non-binding IRS Chief Counsel Notice CC-2011-020 provides that "[a]batement of tax for a tax period referred to [the DOJ] that is made without the approval of [the DOJ] is invalid and may be reversed, because the Service lacks the authority to take such action on the taxpayer's account without Justice approval." The Government has conceded that the Notice is afforded no deference, so the Court can disregard it entirely. (*See* Doc. 176 at 38:21–39:5); CC-2019-006, Policy Statement on the Tax Regulatory Process (Sept. 17, 2019) ("Chief Counsel attorneys representing the IRS before the U.S. Tax Court will not argue for deference under *Auer* or *Chevron* to positions taken only in subregulatory guidance").

Even so, the Notice is inapplicable here. It specifically refers to abatements under 26 U.S.C. § 6404(a), also known as audit reconsideration. *See* 2011 WL 4402105. Audit "reconsideration is discretionary and any audit is conducted outside the CDP process." *Durda v. Comm'r*, 113 T.C.M. (CCH) 1420, at *3 n.3 (2017). But the abatement here arose from the CDP process and there was no audit reconsideration. (SOF ¶¶ 37, 38.) Moreover, the Notice relies on § 7122 and EO 6166 as authority for the assertion that the "conduct and control of all federal tax litigation … is vested in the [DOJ]." 2011 WL 4402105. But as discussed above, neither § 7122 nor EO 6166 apply to the IRS's determination here. That provides further reason to find the Notice is inapplicable.

*United States v. Pound*, 2010 WL 2803918 (E.D. Okla. Feb. 2, 2010), which spurred the Chief Counsel's office to issue the Notice, reinforces why reversal is improper here. There, the court granted a taxpayer's motion to vacate a final judgment because the IRS had fully abated tax liabilities that were assessed and reduced to judgment. *Id.* at *1. The court rejected the DOJ's view that § 7122 prohibited abatement after the case was referred to the DOJ for collection because the "statute is addressing offers in compromise" and "the abatement ... was a conscious determination" by the agency. *Id.* at *3 & n.8. The same is true here, so the same result should abide.

The additional cases the Government has cited do not support reversal. In *Isley v. Commissioner*, 141 T.C. 349 (2013), the taxpayer owed taxes, interest, and penalties. *Id.* at 356. The Commissioner issued a final notice of intent to levy, and Isley exercised his CDP rights and proposed an offer-in-compromise as a "collection alternative." *Id.* at 356–58. After IRS Appeals rejected the proposed offer-in-compromise, Isley petitioned the Tax Court. *Id.* at 358. The Commissioner argued that § 7122 barred the IRS Appeals officer from accepting Isley's offer-in-compromise because his criminal case had been referred to the DOJ. *Id.* at 361. The Tax Court agreed, noting that "7122(a) barred Appeals from unilaterally accepting petitioner's amended OIC" without approval from the Attorney General. *Id.* at 366.

This case is very different. Mr. Groves tendered no offer-in-compromise and did not ask the IRS to resolve the refund claim while this suit was pending. Instead, he sought an abatement as part of exercising his independent statutory right to CDP.

That right was triggered by the IRS's election to subject him to enforced collection, and entitled him to have an IRS Appeals officer "obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met" as to the penalty. 26 U.S.C. § 6330(c)(1). After concluding that such requirements had not been met and consulting with IRS counsel, the IRS Appeals officer—who was aware of this pending case—abated the penalty notwithstanding § 7122. (SOF ¶¶ 32, 33–34.[3])

The two other cases the DOJ principally has relied upon are also inapposite. In *Waltner v. United States*, 2020 WL 2991611 (D. Ariz. June 4, 2020), *aff'd*, 2021 WL 4310800 (9th Cir. Sept. 22, 2021), after two taxpayers offered a compromise where each would pay $500 if the IRS would reduce their outstanding unpaid tax penalties, the IRS agreed and abated the penalties. *Id.* at *13. The district court reversed the penalties and found that abatement was improper under § 7122. The court noted that "the abatement clearly had the effect of reducing Plaintiffs' penalties from thousands of dollars to $500, a clear compromise of IRS tax enforcement actions," which meant that § 7122 controlled. *See id.* at *14. But here there was no such compromise: Mr. Groves never made an offer-in-compromise to pay some of the penalty in exchange for an abatement and the IRS abated in full after accepting that the penalty was invalid.

[3] *Isley* stated that "once a case has been referred to DOJ for prosecution or defense, [§] 7122(a) trumps [§] 6330(c)" insofar as it "prevents Appeals from unilaterally approving the OIC." 141 T.C. at 363. But that statement does not support reading § 7122 to bar an abatement pursuant to an exercise of statutory CDP rights when, as here, the taxpayer never proposed an offer-in-compromise.

In *United States v. Jackson*, 2012 WL 1108558, at *1 (E.D. Pa. Apr. 2, 2012), *aff'd*, 511 F. App'x 200 (3d Cir. 2013), the taxpayer asserted that paying $41,729.76 toward three years of tax liabilities constituted full payment of $403,572.32 owed because the IRS had erroneously abated his liability after he filed tax returns for those years. The district court disagreed with the taxpayer and the Third Circuit affirmed, noting that the abatement was improper under § 7122 because the IRS lacked authority to accept the compromise after it had referred collection to the DOJ. *Id.* But here, unlike in *Jackson*, there was no compromise, and the abatement resulted from the IRS concluding through the statutory CDP process that the penalty was invalid.

**C. The Ministerial Exception Does Not Apply Here.**

The Government has invoked the so-called "ministerial exception," which some courts have used to invalidate abatements that were mistakenly issued as a result of an inadvertent error. (Docs. 165 at 7 n.4, 182 at 4.) That doctrine is inapplicable here.

First, the exception does not apply because the undisputed record reflects that IRS's abatement was not the result of an inadvertent error. The abatement reflected the agency's considered and conscious determination that "the requirements of any applicable law or administrative procedure" had not been met as to the penalty. 26 U.S.C. § 6330(c)(1). The entire CDP procedure at IRS Appeals spanned six years.[4] It involved multiple communications with the IRS, an in-depth hearing, and a separate review by IRS counsel. (SOF ¶¶ 29–33.) The determination was considered: the IRS

[4] Counsel for the Government was on notice as of 2018 that Mr. Groves was exercising his CDP rights and IRS Appeals was reviewing the 2006 penalty while this suit was pending. (SOF ¶ 36.)

agreed with Mr. Groves' arguments regarding § 6751(b) so it did not reach an alternative argument, and as a result abated penalties for three tax years but not for a fourth. (SOF ¶¶ 32–33.) Far from inadvertent, the entire proceeding arose because of the Commissioner's willful actions in choosing to proceed with enforced collection.

These undisputed facts clearly distinguish this case from the ministerial error cases the Government has cited. (*See* Doc. 182 at 4.) For example, in *Crompton-Richmond Co. v. United States*, the erroneous abatement involved a "plain ordinary clerical or bookkeeping error." 311 F. Supp. 1184, 1185–86 (S.D.N.Y. 1970). *Bugge v. United States (In re Bugge)* similarly involved an erroneous abatement due to a clerical error resulting from an inconsistency between the IRS's hard-copy documentation and computer system. 99 F.3d 740, 742–43 (5th Cir. 1996). And in *In re Becker*, the erroneous abatement resulted from a Revenue Officer failing to completely fill out a form reflecting an adjustment to the amount of the investment. 407 F.3d 89, 91–92 (2d Cir. 2005). None of these cases involve anything like the carefully considered determination issued here.

Second, the ministerial exception is inapplicable here because courts have been clear that the judge-made exception only applies when it does not prejudice the taxpayer. *See, e.g.*, *Bugge*, 99 F.3d at 746 n.7 (noting opinion adopting the exception should "[i]n no way … be interpreted as granting the IRS a special shield from responsibility for its errors, inadvertent or otherwise, that prejudice the taxpayer."); *Crompton-Richmond*, 311 F. Supp. at 1187 ("Whenever an abatement is issued

because of a mistake of fact or bookkeeping error, the assessment can be reinstated, at least so long as this does not prejudice the taxpayer.").

There is no genuine dispute that reversal has prejudiced Mr. Groves. The reversal permanently deprives Mr. Groves of the CDP rights that Congress has provided to taxpayers prior to enforced collection. Under the CDP statute Mr. Groves is "entitled to only one hearing," 26 U.S.C. § 6330(b)(2), even if the Commissioner "issue[s] more than one notice of intent to levy." *Orum v. Comm'r*, 123 T.C. 1, 10 (2004), *aff'd*, 412 F.3d 819 (7th Cir. 2005). Allowing the reversal would thus leave Mr. Groves without *any* pre-collection procedural protection or avenue for administrative or judicial review to "challenge the propriety of a pending lien or levy, verify that collection is appropriate, and offer alternatives to collection." *Keller Tank Servs. II, Inc. v. Comm'r*, 854 F.3d 1178, 1188 (10th Cir. 2017). That alone is prejudice, and leaves Mr. Groves without recourse if the IRS levies his bank accounts for the full amount due without any prior notice or opportunity for a hearing. *See Dalton v. Comm'r*, 682 F.3d 149, 155 (1st Cir. 2012) (Congress' "goal in establishing the CDP process was to safeguard taxpayers by affording them a pre-deprivation opportunity to ward off harassment and to avoid groundless attachments.").

In addition, unlike the beneficiary who knew an inadvertent abatement was improper, Mr. Groves paid substantial legal fees in a six-year CDP process to secure the abatement. The DOJ never objected to that proceeding until now, and Mr. Groves had every reason to believe a favorable determination in CDP would absolve him of needing to continue litigating this long-running case. Reversal also revives his risk of

liability for $2.3 million in penalties, and requires him to continue paying legal fees to vindicate his rights in this forum.

At bottom, the Government's reversal of its own abatement is an improper attempt to alter the outcome of a considered final agency determination. The Government did not (and could not) attempt to directly appeal its own agency action. *Cf.* 5 U.S.C. § 702 (providing appeal right to a "person suffering legal wrong because of agency action"); *id.* § 551(1), (2) (defining "person" to exclude the Government and its agencies). And a "collateral challenge to a final agency action is impermissible." *S. Miami Holdings, LLC v. F.D.I.C.*, 533 F. App'x 898, 903 n.2 (11th Cir. 2013). That holds true even if the law changes after the agency action is final: a "new interpretation of a statute" and "[n]ew legal principles, even when applied retroactively, do not apply to cases already closed." *George v. McDonough*, 142 S. Ct. 1953, 1962 (2022) (citations omitted); *see Dalton*, 682 F.3d at 154 ("[A] court's role in the CDP process is simply to confirm that the IRS did not abuse its wide discretion[.]"). And the Government has no other valid ground for undoing the agency's final judgment. *Cf.* Fed. R. Civ. P. 60(b) (permitting relief from "a final judgment, order, or proceeding" only in limited circumstances not present here). This Court should reject the reversal of the abatement and enter judgment for Mr. Groves.

## II. Even If Reversal Of The Abatement Were Valid, The Penalty Is Improper Because The IRS Failed To Comply With § 6751.

Even if the abatement were validly reversed (it was not), Mr. Groves is entitled to summary judgment because, as the IRS correctly determined in the CDP proceeding, the penalty was imposed in violation of 26 U.S.C. § 6751.

The IRS bears the "burden of proof with respect to" each element of a § 6700 penalty, 26 U.S.C. § 6703(a), and "the burden of production in any court proceeding with respect to the liability of any individual for any penalty," *id.* § 7491(c). Compliance with § 6751 is an essential element of any IRS penalty case, so the IRS must affirmatively provide evidence that a penalty is appropriate. *See Chai v. Comm'r,* 851 F.3d 190, 220 (2d Cir. 2017). It has not met that burden here.

**A. The IRS Did Not Comply With § 6751(b).**

Section 6751(b) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination." Although the statute is silent on when exactly written approval must be obtained, it "would make little sense if it permitted written approval of the 'initial determination' up until and even contemporaneously with the IRS's final determination." *Chai,* 851 F.3d at 221. Moreover, if Congress had intended written approval to be required at the time of the assessment, it would not have tied written supervisory approval to "the *initial* determination of such assessment." *Id.* at 220–21 (quoting § 6751(b)).

Accordingly, § 6751(b) must be read to require written supervisory approval "*before* an initial determination can be communicated to the taxpayer." *Laidlaws's Harley Davidson Sales, Inc. v. Comm'r*, 29 F.4th 1066, 1075 (9th Cir. 2022) (Berzon, J., dissenting); *Chai*, 851 F.3d at 220 ("It is not enough that approval be given before the Tax Court proceeding ends, however … the approval must be issued before the Tax Court proceeding is even initiated."); *Clay v. Comm'r*, 152 T.C. 223, 249–50 (2019), *aff'd on other grounds,* 990 F.3d 1296 (11th Cir. 2021).

That reading squares with important canons of construction. *See Welsh v. R.W. Bradford Transp.*, 231 F.R.D. 297, 301 (N.D. Ill. 2005) (avoid absurd results); *see Nielen-Thomas v. Concorde Inv. Servs., Inc.*, 914 F.3d 524, 528 (7th Cir. 2019) (avoid reading words into the text or making words surplusage). It also comports with the rule of lenity, which requires that "statutes imposing penalties are to be 'construed strictly' against the government and in favor of individuals." *Bittner v. United States*, 143 S. Ct. 713, 724 (2023) (quoting *Comm'r v. Acker*, 361 U.S. 87, 91 (1959)). Any doubt about how to read § 6751(b) thus supports granting judgment for Mr. Groves.

The legislative history further confirms that § 6751(b) should be read to require written supervisory approval before a penalty is communicated to the taxpayer. As the Second Circuit explained, the relevant Senate Report "on § 6751(b) states clearly the purpose of the provision and thus Congress's intent: 'The Committee believes that penalties should only be imposed where appropriate and not as a bargaining chip.'" *Chai*, 851 F.3d at 219 (citation omitted). Therefore, the court concluded, the "statute was meant to prevent IRS agents from threatening unjustified penalties to encourage taxpayers to settle," and should be interpreted consistent with this intent. *Id.; see also Laidlaws's*, 29 F.4th at 1076 (Berzon, J., dissenting).

Here, as IRS Appeals concluded after a hearing and review by IRS counsel, the penalty imposed on Mr. Groves is invalid because the IRS "failed to meet the current legal standard under IRC 6751(b)." (SOF ¶ 32.) The initial determination of the penalty occurred no later than May 20, 2015, when the Government issued the NOPA that: (1) formally notified Mr. Groves that the IRS "determined" a $2,380,246 penalty

under § 6700; (2) attached exhibits "explaining the reasons for the determination[]"; (3) informed Mr. Groves of his right to appeal; and (4) notified Mr. Groves that the IRS would assess the penalty and begin collection procedures if he did not do so within 30 days. (SOF ¶¶ 8–10, Ex. A; *accord Laidlaws's*, 29 F.4th at 1075 (Berzon, J., dissenting) (treating the "letter sent to the taxpayer" as the "initial determination").) Yet, as the Government concedes, supervisory approval was not given in writing until August 19, 2015. (SOF ¶ 22, Exs. I, J.) Written supervisory approval thus came after the initial determination, in violation of § 6751(b), and the penalty cannot stand.[5]

**B. The IRS Did Not Comply With § 6751(a).**

The penalty at issue is also invalid because the Government did not comply with § 6751(a), which provides that: "The Secretary shall include with each notice of penalty under this title … a computation of the penalty."

Here, the IRS cannot meet its burden. There is no dispute that the October 5, 2015 assessment notice contains no computation or explanation of the 2006 § 6700 penalty. (SOF ¶¶ 17, 25.) The IRS simply assessed Mr. Groves the full amount of the penalty—$2,380,346—without further explanation and without the "computation" that Congress required the Secretary to include with "each notice." (*Id.*); 26 U.S.C. § 6751(a); S. Rep. No. 105-174, at 65 (1998). The assessment notice directed Groves to "refer to the penalty calculation worksheet provided to you at the conclusion of the

[5] Contrary to the Second Circuit in *Chai*, the dissent in *Laidlaw's*, and multiple Tax Court decisions (which are persuasive authority, *see* 26 U.S.C. § 7482(a)(1)), other courts have interpreted § 6751(b) to permit supervisory approval any time before assessment. *Laidlaw's*, 29 F.4th at 1074; *Kroner v. Comm'r*, 48 F.4th 1272, 1278 (11th Cir. 2022); *Minemyer v. Comm'r*, 2023 WL 314832, at *1 (10th Cir. Jan. 19, 2023) (unpublished). The Seventh Circuit has not addressed the meaning of § 6751(b).

penalty investigation," but without more detail, Groves could not be certain to which worksheet the IRS referred. (SOF ¶ 17, Ex. E at 2.)

That violated § 6751(a) and is grounds to invalidate the penalty in its entirety. *Cf. Chai*, 851 F.3d at 221 & n.25 (endorsing Tax Court's conclusion that penalty computation should be provided before assessment); *see also Colliot v. United States*, 2021 WL 2709676, at *8 (W.D. Tex. Mar. 24, 2021) (granting refund because the government conceded it failed to comply with § 6751(a)).

And even if compliance with section 6751(a) were not an element of a penalty case which the IRS must prove, Mr. Groves was prejudiced by the IRS's failure to include a computation of the penalty. Section 6700 penalties are based on highly complex calculations involving transactions entered into by *other taxpayers*. *See* 26 U.S.C. § 6700(a)(2). By failing to provide a computation showing these calculations and how the IRS arrived at them, Mr. Groves has no basis for determining how his liability was calculated, or even the identity of the purported taxpayers who are included in the liability. Moreover, because a § 6700 penalty is an assessable penalty that requires the taxpayer to pay 15% of the penalty simply to obtain judicial review, 26 U.S.C. § 6703(c), the IRS's failure to provide the required computation may have exaggerated the amount assessed, the amount Mr. Groves had to pay to obtain judicial review, and the lien on Mr. Groves' assets. (SOF ¶¶ 17, 25.)

## **CONCLUSION**

For the reasons stated herein, this Court should grant summary judgment in favor of Plaintiff on Plaintiff's refund claim and the Government's counterclaim.

March 24, 2023

/s/ Guinevere M. Moore

Gabriel K. Gillett (IL 6328233)
Jenner & Block LLP
353 North Clark Street
Chicago, Illinois 60654
Tel: 312-840-7220
Fax: 312-527-0484
ggillett@jenner.com

Guinevere M. Moore (IL 6297231)
Ajay Gupta (CA 190101)
Moore Tax Law Group LLC
2205 W. Armitage Ave., Suite 1
Chicago, Illinois 60647
Tel: 312-549-9993
Fax: 312-549-9991
guinevere.moore@mooretaxlawgroup.com

David E. Lieberman (IL 6211538)
Levin Schreder & Carey Ltd.
120 North LaSalle Street, 38th Floor
Chicago, Illinois 60602
Tel: 312-332-6300
Fax: 312-332-6393
david@lsclaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on March 24, 2023, a copy of the foregoing was served upon all counsel of record via ECF.

*/s/ Guinevere M. Moore*
Guinevere M. Moore (IL 6297231)
Moore Tax Law Group LLC
2205 W. Armitage Ave., Suite 1
Chicago, Illinois 60647
Tel: 312-549-9993
Fax: 312-549-9991
guinevere.moore@mooretaxlawgroup.com