UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| PHILIP G. GROVES, | ) | |
| | ) | |
| Plaintiff and counter-defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No: 1:16-cv-02485 |
| UNITED STATES OF AMERICA, | ) | The Hon. John F. Kness |
| | ) | |
| Defendant and counter-claimant. | ) | |
| | ) | |

**UNITED STATES' MEMORANDUM OF LAW IN OPPOSITION TO SUMMARY JUDGMENT**

## TABLE OF CONTENTS


**TABLE OF AUTHORITIES**……………………………………………………………….….…...3

**STATEMENT OF FACTS**………………………………………………………..……………..7

**ARGUMENT**……………………………………………………………………………………..7

I. THE IRS PROPERLY REINSTATED THE TAX SHELTER PROMOTER PENALTY ASSESSMENT AGAINST GROVES…………………………………………………..………..7

A. Unauthorized abatements made after referral to the Department of Justice may be reversed………………………………………………………………………………...….8

B. Once a tax liability has been referred to the Department of Justice for prosecution or defense, § 7122(a) trumps § 6330(c)……………………………………………...…11

C. Groves' cramped reading of "compromise" is undermined by Executive Order No. 6166…………………………………………………………………………..………..12

II. THE IRS SATISFIED § 6751(b)…………………………………………………….………..14

A. While the Government bears the burden of production in a "court proceeding," the scope of that proceeding, in refund cases, is limited to issues raised in the administrative claim for refund submitted to the IRS………………………………………………………..14

B. The United States has met its burden of production with respect to § 6751(b)……..…16

C. For assessable penalties, § 6751(b) requires only that supervisory approval precede "assessment."...........................................................…..…………..............................17

D. Material issues of fact preclude summary judgment…………………………..………20

III. THE IRS SATISFIED § 6751(a)…………………………………………………….……….22

**CONCLUSION**…...……………………………………………………………………........25

## TABLE OF AUTHORITIES

**Cases**

*Bittner v. United States*, 143 S. Ct. 713 (2023)........ 9
*Brubaker v. United States*, 342 F.2d 655 (7th Cir. 1965)........ 6
*Carter v. Comm'r*, 2022 WL 4232170 (11th Cir. 2022)........ 18
*Cencast Services, L.P. v. United States*, 94 Fed. Cl. 425 (2010), *aff'd*, 729 F.3d 1352 (Fed. Cir. 2013)........ 12
*Chai v. Comm'r*, 851 F.3d 190 (2d Cir. 2017)........ 19, 23
*Clay v. Comm'r*, 152 T.C. 223 (2019)........ 19
*Colliot v. United States*, 2021 WL 2709676 (W.D. Tex. 2021)........ 23
*Computervision Corp. v. United States*, 445 F.3d 1355 (Fed. Cir. 2006)........ 12
*Decker v. United States*, 2009 WL 1455327 (W.D. Wash. 2009)........ 17
*Deyo v. United States*, 296 F. App'x 157 (2d Cir. 2008)........ 20, 21
*Duggan v. United States*, 2017 WL 3469273 (E.D. Wash. 2017), *aff'd*, 757 F. App'x 533 (9th Cir. 2018)........ 16
*Ginsburg v. United States*, 17 F.4th 78 (11th Cir. 2021)........ 15, 16
*Graev v. Comm'r*, 147 T.C. 460 (2016)........ 23, 24
*Greenwich Collieries v. Dir., Office of Workers' Comp. Programs*, 990 F.2d 730 (3d Cir.1993)16
*Hibbs v. Winn*, 542 U.S. 88 (2004)........ 17
*Isley v. Comm'r*, 141 T.C. 349 (2013)........ 10, 11
*Kroner v. Comm'r*, 48 F.4th 1272 (11th Cir. 2022)........ 18
*Laidlaw's Harley Davidson Sales, Inc. v. Comm'r*, 29 F.4th 1066 (9th Cir. 2022)........ 17, 18, 19
*Minemyer v. Comm'r*, 2023 WL 314832 (10th Cir. 2023)........ 18
*Morales v. Commissioner*, 633 F. App'x 884 (9th Cir. 2015)........ 14
*Partita Partners LLC v. United States*, 266 F.Supp.3d 683 (S.D.N.Y. 2017)........ 20, 21
*PBBM-Rose Hill, Ltd. v. Comm'r*, 900 F.3d 193 (5th Cir. 2018)........ 20
*Rische v. United States*, 2021 WL 2856598 (W.D. Wash. 2021)........ 16
*Robinson v. United States*, 920 F.2d 1157 (3d Cir. 1990)........ 17
*United States v. Jackson*, 511 Fed. App'x 200 (3d Cir. 2013)........ 7
*United States v. James Daniel Good Real Prop.*, 510 U.S. 43 (1993)........ 24
*United States v. Pound*, 2010 WL 2803918 (E.D. Okla. Feb. 2, 2010)........ 8
*Waltner v. United States*, 2020 WL 2991611 (D. Ariz. June 4, 2020), *aff'd*, No. 20-16475, 2021 WL 4310800 (9th Cir. Sept. 22, 2021)........ 8, 9
*Waltner v. United States*, 2021 WL 4310800 (9th Cir. 2021)........ 7, 9

**Statutes**

5 U.S.C. § 901........ 12
26 U.S.C. § 6212........ 17
26 U.S.C. § 6213........ 17
26 U.S.C. § 6703(c)(1)........ 12

26 U.S.C. § 6751(a) .................................................................................................... 21
26 U.S.C. § 6751(b) .................................................................................................... 17
26 U.S.C. § 7491(c) .................................................................................................... 14
28 U.S.C. §§ 515-519 .................................................................................................. 6

**Other Authorities**

H.R. Rep. No. 105-599 (1998) (Conf. Rep.)................................................................ 15
Internal Revenue Manual § 25.6.1.10.2.1.1, Reversal of Erroneous Abatement, 2007 WL 9847602 (revised 10-01-2021).................................................................................. 7
Internal Revenue Manual § 25.6.1.10.2.1.1.2, Unauthorized Abatements Made After Referral to the Department of Justice, 2007 WL 9847604 (revised 11-18-2011) ....................................... 7
Internal Revenue Manual § 8.22.8.10.3, IRC 6700/6701 Penalties (revised 09-23-2014)........... 13
Internal Revenue Service Chief Counsel Notice CC–2011–020, 2011 WL 4402105 (Sept. 15, 2011) ......................................................................................................................... 8, 9

**Regulations**

Rules for Supervisory Approval of Penalties, 88 Fed. Reg. 21564 (proposed April 11, 2023) ... 19

The IRS assessed a tax shelter penalty against Philip G. Groves because he implemented, executed, and promoted an abusive tax avoidance scheme known as the Distressed Asset Debt ("DAD") tax shelter. The DAD scheme promoted by Groves purports to shift supposed built-in losses from the foreign owners of distressed debt to participants in the scheme who do not otherwise incur an economic loss in connection with the transaction, with the goal of the participants improperly deducting those losses and reducing their taxable income in violation of U.S. law. In October 2004, Congress enacted the American Jobs Creation Act of 2004, which effectively shut down the entire class of DAD tax shelters by amending 26 U.S.C. §§ 704, 734 and 743.[1] Groves contests his liability for promoting the DAD scheme. He filed this refund suit to invalidate the tax shelter penalty the IRS assessed against him. The IRS then referred the matter to the Department of Justice for defense of its position in this Court.

As soon as a civil (or criminal) tax case is referred to the Department of Justice, however, the decision whether to prosecute, or to defend, or to compromise, or to appeal, or to concede the matter altogether is vested in the Attorney General (or an appropriate delegate). As a result, the IRS cannot compromise or concede matters it refers to the Department of Justice without the approval of the Department of Justice. Nevertheless, on occasion, the IRS abates (erroneously) assessments in matters that have been referred to DOJ for litigation. When this occurs, the IRS corrects that mistake by reversing the erroneous abatement and reinstating the assessment. This is precisely what happened in this case.

While Groves suggests DOJ "prevailed upon the IRS to reverse the abatement," (ECF No. 192 at 7) that dramatic gloss bears no resemblance to truth. Upon notification of the error,

---

[1] All statutory references in the text refer to the Internal Revenue Code (26 U.S.C.), unless otherwise noted.

the IRS simply implemented its internal process for reversal of the abatement. Indeed, there is no dispute that the abatement of Groves' tax shelter promoter penalty occurred ***after*** this case had been referred to DOJ. And there is no dispute that the abatement was done ***without*** the approval of DOJ. The abatement was, therefore, erroneous and unauthorized.

Even though the abatement was *ultra vires*, Groves contends the IRS had no authority to correct its own mistake. The relevant statutes and cases, as well as the IRS's own internal guidance and procedures, say otherwise. Any other rule would be illogical and unworkable. In matters referred to DOJ, decision-making authority must be retained by the Attorney General. If not, the IRS and DOJ would exercise concurrent authority over tax liabilities that have been referred to DOJ. In fact, if Groves were correct, IRS officials could incorrectly concede matters being litigated by DOJ, without DOJ's knowledge or approval, and there would be no corrective action available to either agency. That cannot possibly be what Congress intended. Because there was no authority to abate, there must be authority to reinstate. Groves' motion should be denied.

Groves also seeks summary judgment on an altogether different issue – an issue he never raised with the IRS. He seeks to invalidate a tax shelter promoter penalty because the IRS purportedly failed to obtain timely written supervisory approval for the penalty. But the basis for a refund suit is limited to the grounds in an administrative refund claim. Groves did not present his supervisory approval argument to the IRS, and he is precluded from presenting it here. Even if the Court considers Groves' argument, it fails. The IRS obtained the required supervisory approval – Groves admits as much. He complains, instead, that the approval was not obtained soon enough. But, for the penalty at issue, the statute requires only that supervisory approval occur prior to assessment. In any event, disputed issues of material fact still preclude summary judgment in Groves' favor.

Finally, Groves seeks summary judgment on grounds that the IRS did not provide him with a calculation of the penalty amount at the proper time, and the calculation he did receive did not have the desired detail. This argument fails for several reasons – chief among them, even if the IRS failed to provide the penalty calculation Groves contends he was entitled to, that failure would not invalidate the tax shelter promoter penalty assessment against Groves. For all these reasons, as explained in more detail below, Groves' motion should be denied.

## STATEMENT OF FACTS

Pursuant to Fed. R. Civ. P. 56(c) & N.D. Ill. Civ. R. 56.1(b), the United States has concurrently filed a separate statement of disputed facts and additional facts in opposition to plaintiff's motion for summary judgment.

## ARGUMENT

### I. THE IRS PROPERLY REINSTATED THE TAX SHELTER PROMOTER PENALTY ASSESSMENT AGAINST GROVES.

The conduct and control of all federal tax litigation, except in the Tax Court, is vested in the Department of Justice. *See* 28 U.S.C. §§ 515-519. To that end, after the IRS refers a federal tax case to the Department of Justice, only the Attorney General can authorize a compromise of an underlying tax liability. *Cf. Brubaker v. United States*, 342 F.2d 655, 662 (7th Cir. 1965) (citing § 7122(a) and explaining that, before referral of tax liability to the Department of Justice, the Treasury Secretary or his delegate alone can compromise such liabilities). As a result, abatements made after a matter is referred to the Department of Justice are void where they are made without authorization from the Department of Justice. *E.g.*, *United States v. Jackson*, 511 Fed. App'x 200, 203 (3d Cir. 2013). Because such abatements are void, the IRS may properly reinstate them. *Id.* Groves makes several arguments in support of his position that the IRS has no

authority to correct an erroneous abatement but, as explained below, all those arguments should be rejected.

### A. Unauthorized abatements made after referral to the Department of Justice may be reversed.

The IRS may reverse erroneous abatements in three circumstances: (1) clerical errors; (2) abatements due to bankruptcy discharges; and, as relevant here, (3) unauthorized abatements made after referral to the Department of Justice. *See* Internal Revenue Manual (IRM) § 25.6.1.10.2.1.1, Reversal of Erroneous Abatement, 2007 WL 9847602 (revised 10-01-2021). "Because an unauthorized post-referral abatement is void, it can be reversed and the original assessment remains valid." IRM § 25.6.1.10.2.1.1.2, Unauthorized Abatements Made After Referral to the Department of Justice, 2007 WL 9847604, *1 (revised 11-18-2011). Indeed, as the Third Circuit and Ninth Circuit have acknowledged, relying on § 7122(a) and internal IRS guidance, in a situation like this, "the original assessments remain[] valid because the abatements made by the IRS were void." *United States v. Jackson*, 511 Fed. App'x 200, 203 (3d Cir. 2013). *See also Waltner v. United States*, 2021 WL 4310800, at *2 (9th Cir. 2021).

In *Jackson*, the taxpayer argued that the IRS had abated his tax liabilities and, as a result, the district court should compel the United States to satisfy the money judgment that stemmed from those same liabilities. In affirming the district court's refusal to do so, the Third Circuit concluded that the "IRS lost its authority to compromise Jackson's tax liabilities in April 2009 when it referred Jackson's case to the DOJ for prosecution." *Jackson*, 511 Fed. App'x at 203. Relying on IRS Chief Counsel Notice CC–2011–020, the court held that the abatements were "void because they were made without authorization from the DOJ." *Id.* (citing IRS Chief Counsel Notice CC–2011–020, 2011 WL 4402105 (Sept. 15, 2011) ("Abatement of tax for a tax period referred to [the DOJ] that is made without the approval of [the DOJ] is invalid and may be

reversed, because the Service lacks the authority to take such action on the taxpayer's account without Justice approval."")).[2]

In *Waltner*, the taxpayers, following an adverse Tax Court determination on liability for frivolous return filing penalties, noticed an appeal to the Ninth Circuit. 2020 WL 2991611, at *13 (D. Ariz. 2020). While that appeal was pending, each paid $500 to the IRS and requested administrative abatement of the penalties. *Id.* The IRS employees who processed taxpayers' administrative request erroneously approved it. *Id.* The district court concluded the "IRS had no authority to compromise the penalties after they had been referred to the DOJ for litigation." *Id.* at *14. The Ninth Circuit affirmed that decision, stating that the penalties at issue "were erroneously abated and later reimposed." *Waltner v. United States*, 2021 WL 4310800, at *2 (9th Cir. 2021). Citing § 7122(a) and the IRS Chief Counsel Notice, the appellate court approved of "what the IRS did here—it reinstated the erroneously abated § 6702 penalties." *Id.*[3]

---

[2] Groves relies on *United States v. Pound*, 2010 WL 2803918 (E.D. Okla. Feb. 2, 2010) (ECF No. 192 at 17), the only known decision where any court has granted a taxpayer's motion to vacate a judgment because the tax assessments were abated in error. But the Third Circuit – in *Jackson* – refused to follow *Pound*, observing that "in 2011, after *Pound* was decided, the IRS specifically disagreed with *Pound* and determined that a 'post-referral abatement made without approval by Justice is void and the abatement should be reversed and the Service's transcript records corrected.'" *Jackson*, 511 F. App'x at 203 (citing IRS Chief Counsel Notice CC-2011 020, 2011 WL 4402105). According to the court in *Jackson*, the district court "correctly did not follow *Pound*." *Id.* This Court should likewise refuse to follow *Pound*.

[3] Groves argues that IRS Chief Counsel Notice CC–2011–020 is "non-binding" (ECF No. 192 at 15-16). "Doubtless, the government's guidance documents do not control [the Court's] analysis and cannot displace [its] independent obligation to interpret the law." *Bittner v. United States*, 143 S. Ct. 713, 722 (2023). But the Supreme Court "has long said that courts may consider the consistency of an agency's views when we weigh the persuasiveness of any interpretation it proffers in court." *Id.* (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). Here, the IRS and DOJ have consistently stated that, in matters referred to the DOJ, abatements of tax by the IRS that are made without the approval of DOJ are invalid and may be reversed, because the IRS lacks the authority to take such action without DOJ approval. Indeed, the appellate courts in *Jackson* and *Waltner* both cited and relied on the Chief Counsel Notice in (continued...)

In contravention of these authorities, Groves argues that § 7122(a) "is inapplicable here" (ECF No. 192 at 13), but that argument requires an incredibly narrow – and unjustified – reading of the word "compromise." The word "compromise" in § 7122(a) encompasses the authority of the Department of Justice to settle, concede, or litigate any matter referred by the IRS. *See Jackson*, 511 F. App'x at 203 (collecting cases); *Waltner v. United States*, 2020 WL 2991611, at *13 (D. Ariz. 2020). Indeed, the taxpayers in *Waltner* made the very same argument Groves makes here: that "the IRS's abatements should not be considered a 'compromise' for purposes of § 7122(a)." *Id.* at *14. The district court rejected the argument. "[T]he abatement clearly had the effect of reducing Plaintiffs' penalties from thousands of dollars to $500, a clear compromise of IRS tax enforcement actions that had been upheld by the Tax Court." *Id.*

The same is true here. What IRS Appeals did – abating the penalty – clearly had the effect of reducing Groves' penalty to zero which impermissibly impeded the exclusive authority of the Department of Justice to settle, concede, or litigate the case referred by the IRS. While Groves did not actually submit an offer in compromise for consideration, IRS Appeals could not have accepted such an offer, and the abatement of the penalty had the same effect in practice. IRS Appeals did not have the authority to accept an offer in compromise agreeing to relief from

---

reaching the conclusion that the IRS had the authority to reinstate assessments that had been erroneously abated in the first place.

Groves also argues that the Chief Counsel Notice is inapplicable because it refers to "abatements under 26 U.S.C. § 6404(a), also known as audit reconsideration." (ECF No. 192 at 16.) While § 6404(a) provides for the IRS's general abatement authority, the Chief Counsel Notice provides "guidance on correcting assessment records when taxes are abated in error by the Internal Revenue Service following referral to the Department of Justice," 2011 WL 4402105, and is not limited to "audit reconsideration" situations. Moreover, the Chief Counsel Notice provides guidance with respect to abatements "not made pursuant to section 6404(a)." 2011 WL 4402105.

the penalty, nor did it have the authority to abate the penalty, because of the referral to the Department of Justice.

### B. Once a tax liability has been referred to the Department of Justice for prosecution or defense, § 7122(a) trumps § 6330(c).

In addition to the Third Circuit and Ninth Circuit decisions discussed above, the Tax Court, on similar facts, has explicitly rejected Groves' argument that "section 7122(a) is inapplicable to this case." *Isley v. Comm'r*, 141 T.C. 349, 362 (2013). In *Isley*, after the taxpayer's nonpayment of tax was referred to the Department for prosecution, the IRS issued "two notices of intent to levy (each including a notice of petitioner's right to a hearing) covering the assessed liabilities for the years in issue." *Id.* at 355-56. Thereafter, the taxpayer "timely filed Forms 12153, Request for a Collection Due Process or Equivalent Hearing, with respect to all of the tax years covered" by the levy notices. *Id.* at 356. The taxpayer participated in three separate "face-to-face" CDP hearings. *Id.* "The face-to-face meetings, telephone conversations, and correspondence" "eventually resulted in" "submission of a Form 656, Offer in Compromise." *Id.* at 357. Ultimately, the IRS rejected the taxpayer's offer, because the IRS lacked the authority to compromise liabilities that had been referred to the Department. *Id.* at 358.

Despite the taxpayer having properly invoked CDP rights, the court nevertheless concluded that "once a case has been referred to DOJ for prosecution or defense, section 7122(a) ***trumps*** section 6330(c)." *Id.* at 363 (emphasis added). According to the court, "it makes perfect sense from a policy standpoint" that the Department would retain exclusive authority to compromise liabilities referred to it "until the terms of the court's judgment (or of any settlement authorized by the Attorney General or his delegate) have been satisfied." *Id.* at 364. Moreover, "treating section 6330(c) as carving out an exception to the application of section 7122(a) would be to violate an established rule of statutory construction that amendments by implication are not

to be favored." *Id.* (*citing Est. of Morgens v. Comm'r*, 133 T.C. 402, 421 (2009) (*citing United States v. Welden*, 377 U.S. 95, 103 n.12 (1964)), *aff'd*, 678 F.3d 769 (9th Cir.2012)).

Groves' effort to distinguish *Isley* is unpersuasive. According to Groves, he "never proposed an offer-in-compromise" (ECF No. 192 at 18 n.3); thus, *Isley* is inapplicable. However, both Groves and the taxpayer in *Isley*: (1) had tax liabilities referred from the IRS to the Department; (2) received notices of intent to levy; (3) properly invoked CDP rights under §§ 6330 and 6331; (4) submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing; and (5) participated in a CDP hearing. The mere fact that the taxpayer in *Isley* "eventually" submitted "Form 656, Offer in Compromise," *Isley*, 141 T.C. at 357, is beside the point. The critical similarity is that both Groves and the taxpayer in *Isley* timely invoked CDP rights, and then argued that the protections afforded by §§ 6330 and 6331 permitted the IRS to compromise liabilities already referred to the Department. In other words, both cases "tee up" purported tension between §§ 6330 and 6331, on the one hand, and § 7122(a), on the other. The Tax Court concluded that, in a situation like this, "section 7122(a) ***trumps*** section 6330(c)." *Id.* at 363 (emphasis added). This Court should do the same.

**C. Groves' cramped reading of "compromise" is undermined by Executive Order No. 6166.**

Executive Order No. 6166, § 5 (June 10, 1933), reprinted in 5 U.S.C. § 901, provides that, with respect to any case "referred to the Department of Justice for prosecution or defense in the courts, the function of decision whether and in what manner to prosecute, or to defend, or to compromise, or to appeal, or to abandon prosecution or defense, now exercised by any agency or officer, is transferred to the Department of Justice." Courts have relied on this language to conclude that, once the IRS sends a matter to the Department, the jurisdiction of the IRS is terminated. *See Computervision Corp. v. United States*, 445 F.3d 1355, 1372 (Fed. Cir. 2006);

*Cencast Services, L.P. v. United States*, 94 Fed. Cl. 425, 450 n. 27 (2010), *aff'd*, 729 F.3d 1352 (Fed. Cir. 2013).

The court in *Computervision Corp.* avoided the narrow reading of the word "compromise" that Groves advances. Instead, it broadly interpreted the authority handed off from the IRS to DOJ. As the court stated, in such situations, the "IRS no longer has the authority to resolve the claim, and therefore is without power to 'allow' or 'disallow' it." *Computervision Corp.*, 445 F.3d at 1372. Similarly, in *Cencast Services, L.P. v. United States*, 94 Fed. Cl. 425, 450 n. 27 (2010), *aff'd*, 729 F.3d 1352 (Fed. Cir. 2013), the Court read § 7122(a) and Executive Order No. 6166 in tandem to conclude that "the IRS was without authority to allow or disallow any claims for refund regarding the original tax assessments because all authority transferred to the DOJ when plaintiffs' complaints were filed in this court in 2002."

Finally, Groves' argument that § 7122(a) and Executive Order No. 6166 must not be read to "constrain CDP rights" is a red herring. The special rules applicable to penalties under §§ 6700, 6701, and 6702 ***require*** an automatic stay on collection activity. *See* 26 U.S.C. § 6703(c)(1). That means, for example, notices of intent to levy will not issue after a refund suit is filed, preventing the IRS collection action that would "trigger" Groves' CDP rights. Indeed, as § 6703(c)(1) makes clear, "no levy or proceeding in court for the collection of the remainder of [any penalty under section 6700] shall be made, begun, or prosecuted until the final resolution of" any refund litigation. Upon the filing of a refund suit, the IRS is required to "[p]lace the case in suspense pending the outcome of the litigation." IRM § 8.22.8.10.3, IRC 6700/6701 Penalties (revised 09-23-2014). In other words, the filing of the refund suit transferred authority over the § 6700 liability to the Department of Justice ***and*** suspended all IRS collection activity.

*****

Final authority to defend, or to compromise, or to appeal, or to concede this matter was vested in the Attorney General (or an appropriate delegate) from the moment Groves filed the instant suit. Groves "filed this action nearly seven years ago," yet he argues the "IRS's admission of error should have ended this case." (ECF No. 192 at 7.) But there is no scenario where the IRS's so-called "admission of error" could end this case – unless the IRS had sought and obtained DOJ approval – because the IRS had no authority to compromise the penalty unilaterally. Because there was no authority to abate, the IRS was within its authority to reinstate. Groves' motion should be denied.

## II. THE IRS SATISFIED § 6751(b).

Groves also seeks summary judgment on the purported failure of the IRS to satisfy the supervisory approval requirement in § 6751(b). That argument fails for the following reasons: (1) the variance doctrine prevents this Court from considering Groves' argument that the IRS failed to comply with § 6751(b); (2) the United States has met its burden of production; (3) for assessable penalties, the statute requires only that supervisory approval occur prior to assessment; and (4) disputed issues of material fact still preclude summary judgment.

### A. While the Government bears the burden of production in a "court proceeding," the scope of that proceeding, in refund cases, is limited to issues raised in the administrative claim for refund submitted to the IRS.

Although Groves never raised compliance with § 6751(b) in his administrative claim, he argues that the United States is obligated to present evidence of § 6751(b) compliance here.[4] In

[4] As set forth in the United States Motion for Partial Summary Judgment (ECF Nos. 188, 191), Groves filed a claim for refund with the IRS, setting forth in detail six distinct reasons why the § 6700 penalty was assessed without authority. Nowhere, however, did Groves assert that the IRS failed to comply with the supervisory approval provision of § 6751(b). Consequently, his § 6751(b) claim impermissibly varies from or augments his administrative claim for refund, and the Court is precluded from considering it.

other words, Groves suggests the variance doctrine – the well-settled rule that the grounds for relief set forth in the taxpayer's refund suit cannot vary substantially from those grounds argued before the IRS – does not apply to his argument that the IRS failed to comply with § 6751(b). Groves points to § 7491(c), which provides that "[n]otwithstanding any other provision of this title, the Secretary shall have the burden of production in any court proceeding with respect to the liability of any individual for any penalty" imposed by the Internal Revenue Code.

While § 7491(c) may place the burden of production on the Government in a "court proceeding," the scope of that proceeding, in refund cases, is still determined by reference to § 7422(a) and the claim for refund itself. Groves' refund claim, of course, failed to put the IRS on notice of his § 6751(b) argument. Thus, a subsequent refund suit cannot challenge IRS compliance with that provision. *See Morales v. Commissioner*, 633 F. App'x 884, 886 (9th Cir. 2015) ("[T]he IRS is obligated to meet a burden of production on a penalty *only* if the taxpayer first alleges that the IRS erred in its penalty determination."). Having not challenged compliance with § 6751(b) in his administrative refund claim, Groves cannot obligate the United States to prove compliance in a subsequent refund suit.

Groves' argument fails because he does not bother to grapple with § 7422(a) – the "other provision" that requires him to file an administrative claim for refund as a prerequisite to any refund suit in district court. Groves does not argue – much less persuade – that § 7491(c) was intended to eliminate the requirements of § 7422(a) under these circumstances. There is no indication that Congress intended § 7491(c) to obviate the requirement of a refund claim in penalty cases, or to eliminate the requirement that a refund claim set forth every basis for granting a refund. *E.g.*, H.R. Rep. No. 105-599, at 241 (1998) (Conf. Rep.). And, although § 7491(c) has been around for more than two decades, Groves has not identified any case in

which § 7491(c) was interpreted to obligate the United States to defend against arguments not raised in a refund claim.

On the contrary, the Eleventh Circuit recently addressed this very issue – and rejected the argument Groves makes here. *Ginsburg v. United States*, 17 F.4th 78 (11th Cir. 2021). *Ginsburg* involved a partner-level refund claim for a 40% penalty arising from Ginsburg's participation in an abusive tax shelter. Ginsburg challenged the penalty on the ground that the IRS purportedly failed to obtain the supervisory approval required by § 6751(b). The Eleventh Circuit held that the district court correctly refused to consider Ginsburg's § 6751(b) argument because he did not raise the argument in his refund claim. In so doing, the Eleventh Circuit rejected an argument nearly identical to the one Groves makes here: that the variance doctrine (*i.e.*, that the basis for a refund suit may not vary substantially from the grounds set forth in the taxpayer's administrative claim for refund presented to the IRS) does not apply to § 6751 challenges where the IRS bears the burden of proof and production. Contrary to Groves' argument, the Eleventh Circuit decided that whether the IRS bears the burden of production or proof does not affect the "exhaustion" requirement; rather, the issue of burden "applies to the limited litigation issues that have been exhausted and are now in court." *Ginsburg*, 17 F.4th at 85; *see also Rische v. United States*, 2021 WL 2856598 at *7-8 (W.D. Wash. 2021) (holding that the variance doctrine requires taxpayers to raise section 6751(b) as an issue at the administrative stage and that failure to do so means a court cannot hear the argument). In short, *Ginsburg* provides Circuit-level authority for the proposition – as argued in the United States' motion for partial summary judgment – that Groves was required to raise his § 6751(b) argument in his administrative refund claim.

**B. The United States has met its burden of production with respect to § 6751(b).**

In any event, the United States has, in fact, met its burden of production with respect to § 6751(b). The burden of production is not a heavy one – it requires merely that a party come

forward with some evidence to support its position. *Greenwich Collieries v. Dir., Office of Workers' Comp. Programs*, 990 F.2d 730, 735 (3d Cir.1993) ("[T]he burden of production requires a party to *produce* evidence regarding a fact.").

Here, the United States has submitted Form 8278 (Assessment and Abatement of Miscellaneous Civil Penalties) which was executed by the relevant supervisor (ECF No. 193-4 (reflecting the relevant supervisory approval in box 11a)) on August 19, 2015 – or 47 days ***before*** the IRS assessed the § 6700 penalty against Groves on October 5, 2015. (ECF No. 181.) Though Groves failed to raise the issue in his administrative claim, the United States has met its burden of production with respect to § 6751(b).[5] For this reason, too, Groves' motion should be denied.

### C. For assessable penalties, § 6751(b) requires only that supervisory approval precede "assessment."

Even if the Court were to conclude that Groves' § 6751(b) argument is not barred by the variance doctrine, the IRS satisfied § 6751(b). Under § 6751(b), "[n]o penalty . . . shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate." For assessable penalties, the statute requires only that supervisory approval occur prior to assessment. *Laidlaw's Harley Davidson Sales, Inc. v.*

[5] Moreover, courts have concluded that Certified Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, also submitted by the United States (*see* ECF No. 181), satisfies the United States' burden of production with respect to compliance with § 6751(b). In *Duggan v. United States*, 2017 WL 3469273, at *4 (E.D. Wash. 2017), *aff'd*, 757 F. App'x 533 (9th Cir. 2018), the taxpayer challenged whether the IRS complied with § 6751(b). Relying on the Forms 4340, the district court concluded that "the United States has established that the penalties" "were presumptively valid." *Id.* Likewise, in *Decker v. United States*, 2009 WL 1455327, at *4 (W.D. Wash. 2009), the district court dismissed a claim for failure to comply with the procedural requirements of § 6751(b) because the submitted Form 4340 was *prima facie* evidence that the assessments at issue there were made correctly.

*Comm'r*, 29 F.4th 1066 (9th Cir. 2022). The IRS thus satisfies § 6751(b) whenever it obtains appropriate written supervisory approval of the initial determination to assess a penalty, like the one at issue in this case, prior to making an assessment, *i.e.*, prior to making "the official recording of liability that triggers levy and collection efforts." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004).

In *Laidlaw's Harley Davidson Sales, Inc.*, the IRS had assessed a penalty for failure to disclose participation in a "listed" tax avoidance transaction, pursuant to § 6707A. That penalty, like the tax shelter promoter penalty assessed against Groves, is a so-called "assessable" penalty.[6] The Ninth Circuit reversed the Tax Court's ruling that had disallowed the penalty on the ground that supervisory approval of the penalty was untimely under § 6751(b)(1). The Ninth Circuit held that "§ 6751(b)(1) requires written supervisory approval before the assessment of the penalty or, if earlier, before the relevant supervisor loses discretion whether to approve the penalty assessment." *Laidlaw's Harley Davidson Sales, Inc.*, 29 F.4th at 1074. For assessable penalties – such as the tax shelter promoter penalty at issue here – the supervisor retains that discretion until the penalty is assessed. *Id.* at 1071. *See also Kroner v. Comm'r*, 48 F.4th 1272, 1276 (11th Cir. 2022) ("We conclude that the IRS satisfies Section 6751(b) so long as a supervisor approves an initial determination of a penalty assessment before it assesses those penalties."); *Carter v. Comm'r*, 2022 WL 4232170, at *2 (11th Cir. 2022) (following *Kroner*);

---

6 Penalties that are not calculated based on a tax amount – including § 6700 penalties – are called "assessable penalties" because the IRS may assess them without regard to deficiency procedures. *See Laidlaw's Harley Davidson Sales, Inc.*, 29 F.4th at 1071 n.4 The IRS can assess such penalties at any time – and without prior communication with the affected taxpayer. By contrast, deficiency procedures, *see*, *e.g.*, 26 U.S.C §§ 6212 & 6213, call for the IRS to send taxpayers a "notice of deficiency" which has also been called the "ticket to the Tax Court" to litigate the merits of a deficiency determination. *Robinson v. United States*, 920 F.2d 1157, 1158 (3d Cir. 1990).

*Minemyer v. Comm'r*, 2023 WL 314832, at *4 (10th Cir. 2023) ("We agree with [*Kroner* and *Laidlaw*'s] assessments of § 6751(b)(1) and hold that its plain language does not require approval before proposed penalties are communicated to a taxpayer.").

Here, the IRS assessed the § 6700 penalty against Groves on October 5, 2015. (ECF No. 181.) That assessment did not occur until after the completion of Form 8278 (Assessment and Abatement of Miscellaneous Civil Penalties) on August 19, 2015, which was approved by the relevant supervisor. (ECF No. 193-4 (reflecting the relevant supervisory approval in box 11a).) Because the relevant supervisor – Michael A. Halpert – approved the initial determination of the penalty made by the relevant revenue agent – Tamyra Hughes – prior to any assessment (*see* Statement of Disputed Facts & Additional Facts ("SMF") ¶¶ 41-44, 53.), the IRS has satisfied the requirements of § 6751(b). *Laidlaw's Harley Davidson Sales, Inc.*, 29 F.4th at 1074.[7]

Groves cites to *Chai v. Comm'r*, 851 F.3d 190 (2d Cir. 2017) but that case is inapposite. The upshot of *Chai*, a case appealed directly from the Tax Court, is that the supervisory approval contemplated by § 6751(b) must be obtained prior to issuance of a notice of deficiency, and that a § 6751(b) challenge may therefore be brought, before assessment, during a Tax Court deficiency case. *Id.* at 221. The Ninth Circuit distinguished *Chai* on this basis. *See Laidlaw's Harley Davidson Sales, Inc.*, 29 F.4th at 1071 n.5 (quoting *Chai*, 851 F.3d at 221) ("Because the

---

[7] Notably, the IRS very recently issued proposed regulations that would essentially codify, with respect to assessable penalties, the timing rule for obtaining supervisory approval under section 6751(b) described in this brief. As explained in the proposed regulations, "[u]nlike penalties subject to deficiency procedures before assessment, there is no Tax Court or potential Tax Court decision that would make approval of an immediately assessable penalty by an IRS supervisor meaningless. Instead, consistent with the language of section 6751(b), supervisory approval can be made at any time before assessment without causing any tension in the statutory scheme for assessing penalties." *See* Rules for Supervisory Approval of Penalties, 88 Fed. Reg. 21564 (proposed April 11, 2023) (to be codified at 26 C.F.R. pt. 301) (*available at* federalregister.gov/d/2023-07232).

penalty at issue in *Chai* was subject to the Code's deficiency regime," "'the truly consequential moment of approval is the IRS's issuance of the notice of deficiency (or the filing of an answer or amended answer asserting penalties).'"). The instant case, again, is not a deficiency case, but an action for refund of an assessable penalty. The relevant IRS supervisor ***retains discretion*** to rescind the assessable penalty after a 30-day letter is issued – indeed, that discretion remains up to any time prior to assessment. (SMF ¶ 52.)[8]

Finally, *Chai*'s invocation of the legislative history is particularly inapt on the facts of this case. *Id.* at 218-19. Here, the relevant IRS supervisor was indisputably involved in the preparation of the May 20, 2015 communication and all other aspects of the penalty investigation – contemporaneous emails disprove any notion that the revenue agent was acting inappropriately or without supervision. (SMF ¶¶ 45-51.) In short, Groves has no argument that the IRS has attempted to use inappropriate penalties as a "bargaining chip," and his reliance on *Chai* is misplaced for this reason as well.

**D. Material issues of fact preclude summary judgment.**

Even if the Court concludes the variance doctrine does not apply, and even if the Court determines § 6751(b) required supervisory approval to precede some action other than assessment of the penalty, disputed issues of material fact still preclude summary judgment. *Deyo v. United States*, 296 F. App'x 157, 159 (2d Cir. 2008); *Partita Partners LLC v. United States*, 266 F.Supp.3d 683, 690-91 (S.D.N.Y. 2017).

In *Deyo*, the Second Circuit concluded § 6751(b) "requires only personal approval in writing, not any particular form of signature or even any signature at all." 296 F. App'x at 159.

---

[8] The other Tax Court case cited by Groves is inapplicable for the same reason – it arose in the context of penalty assessments subject to deficiency procedures, not assessable penalties. *See Clay v. Comm'r*, 152 T.C. 223 (2019) (ECF No. 192 at 23) (accuracy-related penalties under § 6662).

In reaching that conclusion, the court reviewed the IRS submissions regarding supervisory approval and stated that "it is clear that the IRS examiner who made the initial determination to impose each of the three challenged penalties received the personal written approval of a group manager prior to that penalty's assessment." *Id.* The court noted that with respect to each penalty, there was a written document – "all bearing indications of personal consideration and approval by various superior officers." *Id.* That "is all that Section 6751 requires." *Id. See also PBBM-Rose Hill, Ltd. v. Comm'r*, 900 F.3d 193, 213 (5th Cir. 2018) (the "plain language of § 6751(b) mandates only that the approval of the penalty assessment be 'in writing' and by a manager").

In *Partita Partners LLC*, the district court denied summary judgment under similar circumstances. There, the *Chai* decision was issued while the case was *sub judice*. *Partita Partners LLC*, 266 F.Supp.3d at 690. Taking *Chai* into account, the district court reasoned that "to the extent that plaintiffs argue that written approval was required in advance of the so-called '60 Day Letter' of May 20, 2013," the Government pointed to certain documents as "some evidence that a supervisor personally approved the penalties in writing before the 60 Day Letter was issued." *Id.* at 691. The court denied the summary judgment motion because the "effect of these purported approvals will be decided at trial." *Id.*

Here, contemporaneous emails demonstrate that Halpert repeatedly discussed the May 20, 2015 communication with Hughes, including providing his edits and comments to the draft transmittal letter, and requesting a discussion with Hughes after she "had a chance to review" the draft. (SMF ¶¶ 45-51.) The email communications between Halpert and Hughes occurred on May 18, May 19, and the morning of May 20, 2015, prior to the issuance of the May 20, 2015 communication to Groves. (SMF ¶¶ 46-51.) Because the required approval need not take

"any particular form," *Deyo*, 296 F. App'x at 159, Groves cannot demonstrate – as a matter of law – that there is "no evidence" of written supervisory approval from Halpert prior to issuance of the May 20, 2015 communication. Accordingly, summary judgment would be inappropriate, as a trial is necessary to resolve the parties' genuine disputes of material fact. *Partita Partners LLC*, 266 F.Supp.3d at 690-91.

## III. THE IRS SATISFIED § 6751(a).

Pursuant to § 6751(a), the IRS "shall include with each notice of penalty under this title . . . a computation of the penalty." Groves argues the IRS did not satisfy this requirement. (ECF No. 192 at 25-26.) This argument fails for three reasons: (1) Groves did not raise this issue in his administrative claim for refund and is therefore precluded from doing so now; (2) Groves did, in fact, receive a detailed calculation of the penalty on or about May 20, 2015; and (3) even if the IRS is found to have violated § 6751(a), that failure would not invalidate the tax shelter promoter penalty assessment against Groves.

***First***, the variance doctrine applies equally to Groves' claim that the IRS failed to comply with § 6751(a). Groves filed a claim for refund with the IRS, setting forth in detail six distinct reasons why the § 6700 penalty was assessed without authority. Nowhere, however, did Groves assert that the IRS failed to comply with § 6751(a). Consequently, this claim impermissibly varies from or augments his administrative claim for refund, and the Court is precluded from considering it. Not only did Groves fail to raise this issue in his administrative claim for refund, he argued affirmatively that the IRS ***miscomputed*** the penalty.

***Second***, the notion that Groves was not provided with the penalty computation required by § 6751(a) is disingenuous at best. Groves received a detailed calculation of the penalty on or about May 20, 2015. Indeed, the IRS communication dated May 20, 2015 included, among other things, a transmittal letter, Form 5071 (Notice of Proposed Adjustment), Form 886A

(Explanation of Items), and additional exhibits in the form of "Penalty Computation Schedules." (*See* ECF No. 145-1; *see also* SMF ¶ 40.) That communication included a "Promoter Penalty Examination" report and outlines the fees and payments that Groves received for promoting the distressed asset debt tax shelter. (*See* ECF No. 145-1 at 96-97.) It also very clearly breaks down the funds received by Groves for purposes of calculating the penalty (ECF No. 145-1 at 97) and included an exhibit that provided further detail on the penalty computation. (*See* ECF No. 145-1 at 105 (referencing penalty computation exhibit at footnote 24).) Ultimately, Groves admits – as he must – that he was "directed" to the required penalty calculation, but he still needed "more detail." (ECF No. 192 at 25-26.) Of course, § 6751(a) requires only that the IRS provide "a computation of the penalty" and nothing more. At best, Groves' complaint regarding the lack of specificity of the computation that he received creates a dispute of fact that precludes summary judgment.

In addition, Groves' own administrative claim for refund asserted that he was entitled to a refund because the "***IRS miscomputed the penalty***." (ECF No. 130-5 at 5 (emphasis added).) Groves elaborated saying, among other things, that the "IRS erroneously included in its computation of gross income amounts of income that were not 'derived (or to be derived)' from the relevant activity" and that the "IRS erroneously included in 'gross income' gross amounts that Mr. Groves (or purportedly entities) received for dealings in property rather than 'gains derived from dealings in property.'" (ECF No. 130-5 at 5.) Put simply, Groves' own submission to the IRS removes all doubt that the IRS discharged its obligations under § 6751(a). For this reason alone, Groves' motion with respect to § 6751(a) should be denied.

***Third***, Groves' argument that the IRS failed to comply with § 6751(a) is of no moment because § 6751(a) does not provide a consequence for noncompliance. Groves' § 6751(a)

argument boils down to this: he was entitled to receive a copy of the penalty calculation (already in his possession) when he received the Notice of Penalty Charge on or about October 5, 2015. Having not received a copy of that penalty calculation, by operation of § 6751(a), the tax shelter promoter penalty at issue is "invalid." Groves cites no law to support that bold proposition. Because none exists.[9]

On the contrary, even if the IRS had not complied with § 6751(a), there is no remedy available to Groves. *See Graev v. Comm'r*, 147 T.C. 460, 474 (2016) ("Moreover, even if petitioners were correct that the IRS failed to include a computation of a penalty as required by section 6751(a), such a failure would not invalidate a notice of deficiency."), *supplemented and overruled in part on other grounds by Graev v. Comm'r*, 149 T.C. 485 (2017). The reason is simple: § 6751(a) "does not provide a 'consequence for noncompliance' if the IRS fails to include a computation of the penalty in the notice." *Id.* at 475. And Groves can hardly claim he was prejudiced by not receiving a penalty computation in the October 5, 2015 notice where – as here – there is no dispute that he received that computation nearly five months earlier. *Id.*

In sum, even if the IRS is found to have violated § 6751(a), there would be no remedy. And the Court should not encroach upon the United States' sovereign immunity to find and/or imply one. *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 63 (1993) ("if a statute does not specify a consequence for noncompliance" "the federal courts will not in the ordinary course impose their own coercive sanction").

---

[9] To be sure, neither of the cases cited by Groves – *Chai v. Comm'r*, 851 F.3d 190, 221 n.25 (2nd Cir. 2017) & *Colliot v. United States*, 2021 WL 2709676, at *8 (W.D. Tex. 2021) (ECF No. 192 at 26) – stand for the proposition that failure to satisfy § 6751(a) would invalidate the § 6700 penalty assessment.

## CONCLUSION

For all the foregoing reasons, Groves' motion for summary judgment should be denied.

Dated: April 26, 2023

Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General

/s/ Richard G. Rose
KARI M. LARSON
Senior Litigation Counsel
RICHARD G. ROSE
Trial Attorney
U.S. Department of Justice
Tax Division
P.O. Box 7238
Ben Franklin Station
Washington, D.C. 20044
(202) 514-2901

*Attorneys for the United States of America*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 26, 2023, a copy of the foregoing was served upon all Counsel of Record via ECF.

/s/ Richard G. Rose
RICHARD G. ROSE
Trial Attorney
U.S. Department of Justice