**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PHILIP G. GROVES, | ) | |
| | ) | |
| Plaintiff, | ) | No. 16-cv-02485 |
| | ) | |
| v. | ) | The Honorable John F. Kness |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM IN OPPOSITION TO UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT

Gabriel K. Gillett (IL 6328233)
Katherine Funderburg (IL 6329702)
Jenner & Block LLP
353 North Clark Street
Chicago, Illinois 60654
Tel: 312-840-7220
Fax: 312-527-0484
ggillett@jenner.com

Guinevere M. Moore (IL 6297231)
Ajay Gupta (CA 190101)
Moore Tax Law Group LLC
2205 West Armitage Avenue, Suite 1
Chicago, Illinois 60647
Tel: 312-549-9993
Fax: 312-549-9991
guinevere.moore@mooretaxlawgroup.com

David E. Lieberman (IL 6211538)
Levin Schreder & Carey Ltd.
120 North LaSalle Street, 38th Floor
Chicago, Illinois 60602
Tel: 312-332-6300
Fax: 312-332-6393
david@lsclaw.com

*Attorneys for Plaintiff, Philip G. Groves*

## TABLE OF CONTENTS

INTRODUCTION ... 1

FACTUAL BACKGROUND ... 3

I. The Penalty Assessment ... 3

II. IRS Abates The Penalty After Mr. Groves Exercises His CDP Rights. ... 5

LEGAL STANDARD ... 5

ARGUMENT ... 6

I. Section 6751 Is Fairly Encompassed In Mr. Groves' Refund Claim. ... 6

II. Variance Is Inapplicable Because The Government Bears The Burden Of Proving Compliance With § 6751. ... 9

III. An Equitable Exception To The Variance Doctrine Applies And Allows Mr. Groves To Raise § 6751(b) Now. ... 14

IV. Variance Does Not Apply To The Counterclaim. ... 17

CONCLUSION ... 20

## TABLE OF AUTHORITIES

**Cases`** **Page(s)**

*AHG Invs., LLC v. Comm'r*,
140 T.C. 73 (2013) .......... 11

*Am. Nat'l Bank & Tr. Co. v. United States*,
594 F.2d 1141 (7th Cir. 1979) .......... 6, 7, 8

*Boynton v. United States*,
566 F.2d 50 (9th Cir. 1977) .......... 19

*Brown v. United States*,
427 F.2d 57 (9th Cir. 1970) .......... 16, 17

*Cencast Servs., L.P. v. United States*,
94 Fed. Cl. 425 (2010) .......... 18, 19, 20

*Chai v. Comm'r*,
851 F.3d 190 (2d Cir. 2017) .......... passim

*Charter Co. v. United States*,
971 F.2d 1576 (11th Cir. 1992) .......... 17

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
467 U.S. 837 (1984) .......... 12

*Clay v. Comm'r*,
152 T.C. 223 (2019) .......... 9, 16

*DAC Management, LLC v. United States*,
275 F. Supp. 3d 928 (N.D. Ill. 2017) .......... 19

*Diversified Group Inc. v. United States*,
841 F.3d 975 (Fed. Cir. 2016) .......... 19

*Dynamo Holdings LP v. Comm'r*,
150 T.C. 224 (May 7, 2018) .......... 11

*El Paso CGP Co. v. United States*,
748 F.3d 225 (5th Cir. 2014) .......... 3, 15

*Estate of Liftin v. United States*,
111 Fed. Cl. 13 (2013) .......... 6

*Ginsburg v. United States*,
17 F.4th 78 (11th Cir. 2021) ........................................ 11

*Ginsburg v. United States*,
2019 WL 1576017 (M.D. Fla. Mar. 11, 2019) .......................... 11, 12

*Hernandez v. Ill. Inst. of Tech.*,
63 F.4th 661 (7th Cir. 2023) ........................................ 8

*Herrera v. Collins*,
506 U.S. 390 (1993) ........................................ 14

*In re Tax Refund Litig.*,
766 F. Supp. 1248 (E.D.N.Y. 1991) ........................................ 8

*Island Creek Coal Co. v. Bryan*,
937 F.3d 738 (6th Cir. 2019) ........................................ 12

*Jennings v. Emry*,
910 F.2d 1434 (7th Cir. 1990) ........................................ 14

*Keefer v. United States*,
2022 WL 2473369 (N.D. Tex. July 6, 2022) ........................................ 15

*La. Pub. Serv. Comm'n v. F.C.C.*,
476 U.S. 355 (1986) ........................................ 12, 13

*MOK Partners v. United States*,
673 F. Supp. 918 (N.D. Ill. 1987) ........................................ 10, 11

*Nat'l Forge & Ordnance Co. v. United States*,
151 F. Supp. 937 (Ct. Cl. 1957) ........................................ 7

*Parma v. United States*,
45 Fed. Cl. 124 (1999) ........................................ 7, 16

*Peppers v. United States*,
485 F. App'x 85 (6th Cir. 2012) ........................................ 19

*Rodgers v. United States*,
2015 WL 5637576 (S.D. Tex. Aug. 27, 2015) ........................................ 15

*Schulz v. United States*,
2018 WL 3405240 (N.D.N.Y. July 12, 2018) ........................................ 16

*Shore v. United States*,
26 Cl. Ct. 826 (1992)........................................................................ 17, 18

*Sims v. Apfel*,
530 U.S. 103 (2000) ........................................................................... 12

*Skiba v. Ill. Cent. R.R. Co.*,
884 F.3d 708 (7th Cir. 2018) ............................................................... 6

*Union Pac. R.R. Co. v. United States*,
389 F.2d 437 (Ct. Cl. 1968) ................................................................ 17

*University of Chicago v. United States*,
547 F.3d 773 (7th Cir. 2008) ............................................................. 19

*White v. City of Chi.*,
829 F.3d 837 (7th Cir. 2016) ............................................................... 6

**Statutes**

26 U.S.C. § 6330(c)(1) ........................................................................... 5

26 U.S.C. § 6700 ............................................................................ passim

26 U.S.C. § 6700(a) ........................................................................ passim

26 U.S.C. § 6751 ............................................................................ passim

26 U.S.C. § 6751(a) ........................................................................ 2, 9, 12

26 U.S.C. § 6751(b) ........................................................................ passim

26 U.S.C. § 6703 ............................................................................ passim

26 U.S.C. § 6703(a) ........................................................................ 10, 18

26 U.S.C. § 6703(c)(1) ....................................................................... 8, 10

26 U.S.C. § 6702 ................................................................................ 17

26 U.S.C. § 7422(a) ........................................................... 10, 12, 13, 17

26 U.S.C. § 7491 ........ 3, 9, 10, 18

26 U.S.C. § 7491(c) ........ 9, 10

29 U.S.C. § 160(e) ........ 12

IRS Restructuring & Reform Act of 1998, 105th Cong. §§ 3001, 3306, 112 Stat. 685, 726–27, 744 (1998) ........ 9, 13

Tax Equity & Fiscal Responsibility Act of 1982, 97th Cong. § 322, 96 Stat. 324, 612–13 (1982) ........ 13

**Other Authorities**

26 C.F.R. § 301.6402-2 ........ 10, 12, 13, 17

Internal Revenue Manual § 21.5.3.4.6 (2014) ........ 8

S. Rep. No. 105-174, at 46 (1998) ........ 9

*Section 6751(b) Compliance Issues for Penalties in Litig.*, 2018 WL 2971640 (June 6, 2018) ........ 14

**Rules**

Fed. R. Civ. P. 56(a) ........ 5

N.D. Ill. L.R. 56.1 ........ 2

## INTRODUCTION

This Court need not rule on the Government's motion for partial summary judgment. It only purports to apply to two of Plaintiff Philip G. Groves' grounds for summary judgment, relating to 26 U.S.C. § 6751, and the third ground, relating to the IRS's abatement of the penalty at issue, is sufficient for Groves to prevail in this case. (*See* Dkt. 192 ("Groves Br.").) However, if this Court determines that ruling on this motion is necessary, the motion should be denied. The Government's attempt to use the variance doctrine, an inapplicable and discretionary exhaustion rule derived from regulations and judicial gloss, is merely an effort to avoid the consequences of its clear failure to comply with duly enacted statutes that protect taxpayer rights.

In 2015, nearly ten years after it began its examination, the Internal Revenue Service ("IRS") issued a Notice of Proposed Adjustment ("NOPA") to Mr. Groves, notifying him that the IRS had determined he was liable for over $2 million in penalties for alleged violations of 26 U.S.C. § 6700. Mr. Groves paid 15 percent of the penalty ($357,052), filed an administrative claim for refund, then brought this suit seeking a refund and a declaration that the penalty is invalid.

As detailed in Mr. Groves' opening brief in support of summary judgment, the penalty is invalid and he is entitled to summary judgment for three independent reasons. First, the IRS issued a considered determination abating the legally invalid penalty as part of a multi-year statutory Collections Due Process ("CDP") proceeding, and the IRS had no authority to subsequently reverse that determination. Second, as the IRS itself concluded when abating the penalty, the IRS "failed to meet the current legal standard" under 26 U.S.C. § 6751(b) when imposing the penalty because the

agency failed to obtain written supervisory approval before the initial determination. Third, the IRS failed to satisfy 26 U.S.C. § 6751(a) because—as it admits—it did not include the required "computation of the penalty" with each notice sent to Mr. Groves.

In its opening brief seeking partial summary judgment (Dkt. 191 ("Gov. Br.")), the Government's sole argument is that its violation of § 6751 should be excused based on the variance doctrine. But this Court need not consider variance. Because the Government lacked authority to reverse the abatement, Mr. Groves is entitled to summary judgment irrespective of whether variance applies to his arguments on § 6751. In any event, variance does not apply for three reasons.

First, variance does not apply here as a matter of fact. The Government concedes that variance is inapplicable if § 6751 is "fairly contained within [Mr. Groves'] administrative refund claim." (Gov. Br. 3.) It is. Mr. Groves stated there that the penalty is invalid because the "elements of 26 U.S.C. § 6700(a) are not satisfied" (Response to Government's Statement of Facts and Statement of Additional Facts ("SAF") ¶ 5, Ex. G),[1] and "the written-approval requirement of § 6751(b)(1) is appropriately viewed as an element of a penalty claim," *Chai v. Comm'r*, 851 F.3d 190, 222 (2d Cir. 2017). Mr. Groves also stated that the penalty was "untimely" under statutes "limiting the time that the IRS had to assess the penalty" (SAF ¶ 5, Ex. G), which § 6751 does. That is sufficient to put the IRS on notice of Mr. Groves' arguments, which is all that is required to render the variance doctrine inapplicable.

[1] Mr. Groves has concurrently filed this response. *See* N.D. Ill. L.R. 56.1.

Second, even had Mr. Groves not raised § 6751 in his refund claim, variance would not apply as a matter of law. Under 26 U.S.C. §§ 6703 and 7491, the Government bears the burdens of proof and production to show compliance with § 6751 for penalties imposed under § 6700. The Government ignores these clear requirements. Instead, it cites cases applying variance outside the § 6700 context where, unlike here, § 6703 does not apply. The Government also cites a generally applicable Treasury regulation, but an agency rule issued decades before §§ 6703 and 7491 were enacted cannot override those unambiguous statutes. The Government simply cannot use variance to shift its burden and evade the clear statutory consequences for violating § 6751.

Third, even if variance applied (which it does not), it would not bar Mr. Groves from raising § 6751 now. The non-jurisdictional doctrine is subject to equitable exceptions, including when the Government is in exclusive possession of the relevant facts. *See El Paso CGP Co. v. United States*, 748 F.3d 225, 229 (5th Cir. 2014). That is the situation here. When Mr. Groves filed his refund claim, the Government alone knew the facts about the IRS's non-compliance with § 6751(b), and Mr. Groves only learned those facts after he obtained information through discovery to support his defense to the Government's counterclaims. Basic notions of fairness bar the Government from getting a win by hiding the ball until the clock runs out.

## FACTUAL BACKGROUND

### I. The Penalty Assessment

The IRS initially determined a penalty pursuant to § 6700 no later than May 20, 2015, when it issued Mr. Groves a NOPA stating it had "determined" a penalty of

$2,380,346, attached exhibits "explaining the reasons for the determination[]," and informed Mr. Groves that he had 30 days to protest. (SAF ¶¶ 9–13.) As the Government conceded in discovery, written supervisory approval of the penalty was not obtained until three months later, on August 19, 2015. (*Id.* ¶¶ 14–16, 24–25.)

On October 5, 2015, Mr. Groves received a "Notice of Penalty Charge," which imposed a § 6700 penalty of $2,380,346. That notice failed to include a computation of the penalty. (*Id.* ¶¶ 17–18.) Mr. Groves paid 15%, or $357,052, and timely filed an administrative claim for refund. (*Id.* ¶¶ 2–3, Ex. G.)

The administrative refund claim listed several grounds for relief, including that the "elements of 26 U.S.C. § 6700(a) are not satisfied," and that the penalty was "untimely" under any "applicable statute of limitations or common law doctrine limiting the time that the IRS had to assess the penalty." (*Id.* ¶ 5, Ex. G.) The IRS then granted Mr. Groves' request that the refund claim "be immediately rejected and a notice of disallowance be immediately issued," so that he could proceed immediately to court on the refund claim. (*Id.* ¶ 20, Exs. G, H.)

Mr. Groves filed this action seeking a refund on February 22, 2016, and the Government filed an answer and counterclaim on May 26, 2017. (SAF ¶¶ 21–22.) Mr. Groves timely answered the counterclaim and raised § 6751 as a defense. (*Id.* ¶ 23.) Thereafter, Mr. Groves pressed the Government for information about compliance with § 6751. (*Id.* ¶ 25, Exs. I, J.) At no point during this case has the Government provided Mr. Groves with evidence that the penalty was approved in writing by the appropriate immediate supervisor prior to the initial determination made on or before

May 20, 2015, the date of the NOPA. (SAF ¶¶ 25–27.) Mr. Groves has moved for summary judgment, contending that the IRS's failure to comply with § 6751 when determining and assessing the § 6700 penalty warrants invalidating the penalty and granting summary judgment for Mr. Groves. (*Id.* ¶ 28; Groves Br. 16–20.)

## II. IRS Abates The Penalty After Mr. Groves Exercises His CDP Rights.

On March 7, 2016, Mr. Groves received a Final Notice of Intent to Levy for, among other things, the 2006 penalty. (*Id.* ¶ 29, Ex. L.) Shortly thereafter, Mr. Groves exercised his statutory right to request a CDP hearing related to the 2006 penalty at issue. (SAF ¶ 30, Ex. N, Ex. O.) Because Mr. Groves invoked his CDP rights, an IRS Appeals officer was required to "obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met" as to the penalty. 26 U.S.C. § 6330(c)(1).

The IRS finally held its CDP hearing four years later, on April 23, 2020. (SAF ¶ 31.) Another two years later, on April 6, 2022, the IRS issued its determination. The IRS Appeals officer, after consulting with IRS counsel, concluded that "the requirements of any applicable law or administrative procedure" had *not* been met as to the 2006 penalty because "the IRS failed to meet the current legal standard under IRC 6751(b)." (*Id.* ¶ 32, Ex. R.) The IRS fully abated the 2006 penalty. (*Id.*)

## LEGAL STANDARD

To prevail on its partial summary judgment motion, the Government must show that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party"

and "draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (citation omitted). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, …, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.*

## ARGUMENT

### I. Section 6751 Is Fairly Encompassed In Mr. Groves' Refund Claim.

The Government argues that variance applies because Mr. Groves made "very specific allegations of non-compliance" in his amended complaint but did not include "precisely" that language in his refund claim. (Gov. Br. 5.) But specificity is not required in a refund claim. As the Government concedes, Mr. Groves can raise in court "grounds for relief that were fairly contained" in his refund claim. (*Id.* at 3.)

That is not a high bar. There "is substantial authority that" the refund claim need only be "reasonably sufficient" to notify the IRS of the "nature of the claims" and that "the specific legal formulations of [refund] claims need not be made." *Am. Nat'l Bank & Tr. Co. v. United States*, 594 F.2d 1141, 1143 n.1 (7th Cir. 1979). Moreover, for decades courts "have interpreted the substantial variance doctrine to allow plaintiffs to litigate not only those claims specifically raised in the claim for refund, but also those 'comprised within the general language of the claim.'" *Estate of Liftin v. United States*, 111 Fed. Cl. 13, 19 (2013) (relying on *Am. Nat'l Bank* among other

cases); *see also Parma v. United States*, 45 Fed. Cl. 124, 129 (1999) ("A claim for refund must merely put the Commissioner of the Internal Revenue on notice" and "no more particularity than is necessary to do that is required") (citation omitted); *Nat'l Forge & Ordnance Co. v. United States*, 151 F. Supp. 937, 941 (Ct. Cl. 1957) (rejecting Government's request to require "particularity" for refund claims and stating the claim "does not have to be stated with any greater particularity than is necessary to draw the Commissioner's attention to the claim").

Here, Mr. Groves' refund claim satisfied that standard because it "fairly contained" § 6751 in two ways.

First, Mr. Groves stated that the "elements of 26 U.S.C. § 6700(a) are not satisfied." (SAF ¶ 5, Ex. G). "[T]he written-approval requirement of § 6751(b)(1) is appropriately viewed as an element of a penalty claim." *Chai*, 851 F.3d at 222; *see* I.R.C. § 6751 (applying provision to every penalty under Title 26). As a result, without delineating each element of § 6700(a), Mr. Groves' statement was enough to put the Government on notice that Mr. Groves was preserving the right to assert a § 6751 challenge if he discovered facts (then exclusively in the Government's possession) showing the statute had been violated. *See Am. Nat'l Bank*, 594 F.2d at 1143 n.1.

Second, Mr. Groves stated that the penalty was "untimely" under any "applicable statute of limitations or common law doctrine limiting the time that the IRS had to assess the penalty." (SAF ¶ 5, Ex. G.) Section 6751(b) controls the time when the IRS can assess a penalty—it requires written supervisory approval *before* the initial determination of the assessment. Therefore, Mr. Groves' reference to the

timing of when the IRS can assess the penalty was "reasonably sufficient" to notify the IRS of the "nature of the claims" based on § 6751(b) even if it did not expressly identify that specific legal theory. *See Am. Nat'l Bank*, 594 F.2d at 1143 n.1; *cf. Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 668 (7th Cir. 2023) (reminding that notice pleading rules "do not require a plaintiff to plead legal theories").

The facts here reinforce that variance does not apply. There is no dispute that the Government was in exclusive possession of the facts establishing its violation of § 6751, that Mr. Groves had just 30 days to pay 15% of the penalty and file a claim for refund, and that the IRS granted Mr. Groves' request to utilize expedited procedures and proceed directly to court, *see* I.R.C. § 6703(c)(1); Internal Revenue Manual § 21.5.3.4.6 (2014). (SAF ¶¶ 10, 20, 24–27.) In this context, the IRS understood that Mr. Groves was moving forward with limited information and that further facts would be developed in discovery. (*Id.* ¶ 20.) The IRS also knew it was required to follow § 6751 no matter what issues Mr. Groves raised in his refund claim, and that it could not retroactively fix its non-compliance. (*See id.* ¶ 15 (a supervisor's "signature is required . . . to meet the provisions of § 6751).) The Government is thus not prejudiced by responding to Mr. Groves' § 6751 arguments now, and variance does not apply. *See In re Tax Refund Litig.*, 766 F. Supp. 1248, 1253 (E.D.N.Y. 1991) (declining to apply variance when "there is no chance of the sort of factual surprise or surprise at trial which the variance doctrine was intended to avoid"). The only prejudice here was to Mr. Groves, as a result of the Government's violation of § 6751. Therefore, this Court may consider Mr. Groves' § 6751 challenge.

## II. Variance Is Inapplicable Because The Government Bears The Burden Of Proving Compliance With § 6751.

Even if Mr. Groves had not sufficiently raised § 6751 in his refund claim, variance does not bar him from raising the issue now. As Mr. Groves has explained (Groves Br. 17), Congress mandated that the Government—not the taxpayer—bears the burdens of proof and production "for a penalty under [§] 6700." I.R.C. § 6703(a); *see id.* § 7491(c) (imposing "burden of production" as to penalties on the Government, "[n]otwithstanding any other provision of [Title 26]"). Congress did so to require the Government to "come forward initially with evidence regarding the appropriateness of applying a particular penalty to the taxpayer." S. Rep. No. 105-174, at 46 (1998).

Compliance with § 6751 is one element of a § 6700 penalty that the Government must prove. "Read in conjunction with § 7491(c)," the Second Circuit has explained, "the written-approval requirement of § 6751(b)(1) is appropriately viewed as an element of a penalty claim, and therefore part of the Government's *prima facie* penalty case." *Chai*, 851 F.3d at 222; *see also, e.g., Clay v. Comm'r*, 152 T.C. 223, 246 (2019) (obligating IRS to show compliance with the "requirements of [§] 6751(b)(1)").[2] Because the taxpayer is not "obligat[ed] to alert the Commissioner" to the issue, a § 6751 challenge can be raised outside of a refund claim if doing so does not "den[y] the [IRS] the opportunity to properly rebut the argument." *Chai*, 851 F.3d at 222–23.

The Government's opening brief does not address §§ 6703 or 7491, or dispute that it bears the burden to show compliance with § 6751. Indeed, the Government

---

[2] The same logic applies to § 6751(a), which was enacted with §§ 6751(b) and 7491. IRS Restructuring & Reform Act of 1998, 105th Cong. §§ 3001, 3306, 112 Stat. 685, 726–27, 744 (1998).

does not cite § 6703 anywhere in its brief—even though it applies to the § 6700 penalty at issue and creates jurisdiction for both Mr. Groves' claim and the Government's counterclaim. *See* I.R.C. § 6703(c)(1). The Government instead focuses on two general tax provisions—a statutory administrative exhaustion requirement (I.R.C. § 7422(a)), and a regulation requiring issue exhaustion (26 C.F.R. § 301.6402-2(b)(1)). "Taken together," the Government contends, these provisions prevent Mr. Groves from raising § 6751 in court unless he explicitly and specifically raised it in his refund claim. (Gov. Br. 3–4.) The Government is incorrect.

First, the Government's statement concerning exhaustion and refund claims does not apply to § 6751 challenges to § 6700 penalties, for which Congress squarely placed the burdens of proof and production on the Government, *see* I.R.C. §§ 6703(a), 7491(c). None of the cases cited by the Government says otherwise. Indeed, the Government cites no case where variance barred a § 6751 challenge to a § 6700 penalty. And the cases it cites outside the § 6700 context are inapposite because there, unlike here, the Government did not affirmatively bear the burden of proof.[3]

*MOK Partners v. United States*, 673 F. Supp. 918 (N.D. Ill. 1987), the only case cited by the Government involving a § 6700 penalty, does not show that variance applies here. That case was decided *before* §§ 6751 and 7491 were enacted. The court did not address whether the Government bore the burdens of proof or production.

[3] The Government cites cases applying § 7422 and the above Treasury regulation (Gov. Br. 3–4), but with one exception (*MOK Partners*, which is distinguishable as discussed below), none involves § 6700 penalties or § 6751. The Government also cites cases that it contends show the Court may not consider § 6751 (Gov. Br. 4), but none involves a § 6700 penalty.

And the facts of *MOK Partners* are nothing like those here. The taxpayer there waived arguments by first raising them at summary judgment, when the Government "could not focus on the merits," and by challenging the penalty "on grounds wholly independent of those asserted in the refund claim." 673 F. Supp. at 921–22.

Here, Mr. Groves raised § 6751 years before summary judgment, the Government has had ample time to address his argument, and his challenge is intertwined with and fairly encompassed by his refund claim. *MOK Partners* thus has no legal or factual relevance to this case.

Similarly inapposite is *Ginsburg v. United States*, 17 F.4th 78 (11th Cir. 2021). That dispute, unlike this one, involved both a tax deficiency and a penalty where the taxpayer bore the burden because § 6703 did not apply. *Ginsburg v. United States*, 2019 WL 1576017, at *3 (M.D. Fla. Mar. 11, 2019); *see Dynamo Holdings LP v. Comm'r*, 150 T.C. 224 (May 7, 2018) (putting burden of production on taxpayer in TEFRA proceeding). But § 6703 applies here and places the burden on the Government.

*Ginsburg* is factually distinguishable too. Ginsburg attempted to raise § 6751 in 2017 in his partner-level challenge to the penalty, after failing to raise § 6751 years earlier in the partnership-level challenge to the *same penalty* that *Ginsburg himself* litigated on behalf of the partnership. *See Ginsburg*, 2019 WL 1576017, at *2–3, *3 n.1; *AHG Invs., LLC v. Comm'r*, 140 T.C. 73 (2013). And Ginsburg "concede[d] that his refund claim did not allege that the IRS failed to comply with [§] 6751(b)." 2019

WL 1576017, at *3. Mr. Groves, by contrast, "fairly contained" § 6751 in his refund claim and raised § 6751 in his first response to the IRS's counterclaim.

Second, the Government's view rests on an untenable reading of a regulation that would impermissibly override duly enacted statutes. "An agency may not confer power upon itself" and "has no power to act . . . unless and until Congress confers power upon it." *La. Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 374 (1986). Where Congress has taken a position on an issue, an agency may not take a contrary view. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984).

In the context of § 6700 penalties, Congress has made clear its view. It mandated that § 6751 applies to all tax penalties. *See* I.R.C. § 6751(a), (b). It put the burden on the Government to prove compliance with § 6751 in the context of "a penalty under [§§] 6700, 6701, or 6702." I.R.C. § 6703(a). It also adopted an *administrative* exhaustion requirement before a taxpayer may challenge a penalty in court, but did not impose an *issue* exhaustion requirement. I.R.C. § 7422(a); *Sims v. Apfel*, 530 U.S. 103, 107 (2000) (rejecting the view that "an issue-exhaustion requirement is 'an important corollary' of any requirement of exhaustion of remedies"); *accord, e.g.*, 29 U.S.C. § 160(e) (mandating issue exhaustion).

The Government's reading of 26 C.F.R. § 301.6402-2(b)(1) as requiring a taxpayer to raise § 6751 in a refund claim would impermissibly override that statutory regime and conflict with § 6703. *See Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 747 (6th Cir. 2019) (stating that an agency's issue-exhaustion regulation "must comport with the statute under which it arose"). In particular, the

Government's interpretation would treat a general regulation enacted in 1954 as placing the burden on a taxpayer to assert § 6751 and mandating issue exhaustion in that context, when decades later Congress specifically placed that burden on the Government and did not require issue exhaustion.[4] The Government's position would also allow it to use its general authority to issue regulations to effectively nullify statutory protections enacted to prevent IRS abuses. (*See* Gov. Br. 3–4 (citing I.R.C. § 7422(a)).) That cannot be the law. *See La. Pub. Serv. Comm'n*, 476 U.S. at 370 (reading statute "so as not to create a conflict").

Third, the Government's broad view of variance is incompatible with the doctrine's underlying purpose of preventing unfair surprise and offering the Government a chance to correct any claimed issues in the first instance. (*See* Gov. Br. 4.) In the context of § 6751, the Government has all the relevant information about its internal processes and communications, the Government has complete control over compliance, and the Government has an obligation to comply with the statute as to every penalty. In addition, the Government's failure to comply is dispositive; it cannot belatedly correct a violation and reassess the same penalty. (*See* Groves Br. 16–20.) So requiring taxpayers to invoke § 6751 in every refund claim will not actually change the IRS's actions or advance the doctrine's aims.[5]

---

[4] *Compare* 26 C.F.R. § 301.6402-2 (Dec. 31, 1954), *with* Tax Equity & Fiscal Responsibility Act of 1982, 97th Cong. § 322, 96 Stat. 324, 612–13 (1982), *and* IRS Restructuring & Reform Act of 1998, 105th Cong. §§ 3001, 3306, 112 Stat. 685, 726–27, 744 (1998).

[5] Notably, the IRS directs its attorneys to submit evidence of compliance with § 6751 in deficiency cases and partnership-level TEFRA cases regardless of whether the taxpayer raises the issue, and to evaluate compliance with § 6751 "in all CDP cases." *Section 6751(b)*

Moreover, adopting the Government's position may do more harm than good. In the Government's view, taxpayers should include every conceivable argument in a refund claim, regardless of the facts and who bears the burden on the issue. That would force the IRS to expend resources attempting to separate wheat from chaff, and would more likely obscure than illuminate the arguments the taxpayer might advance. *See Chai*, 851 F.3d at 223; *cf. Jennings v. Emry*, 910 F.2d 1434, 1441 (7th Cir. 1990) ("[I]n their attempt to allege everything, the Appellants have alleged nothing. '[T]he needle in the haystack,' if any, 'might as well not be there.'" (citation omitted)). By contrast, limiting variance in the narrow context of a § 6751 challenge to a § 6700 penalty strikes an appropriate balance that serves the interests of taxpayers and the Government. *Cf. Herrera v. Collins*, 506 U.S. 390, 426 (1993) (O'Connor, J., concurring) ("It must prejudice the occasional meritorious application to be buried in a flood of worthless ones. He who must search a haystack for a needle is likely to end up with the attitude that the needle is not worth the search.") (citation omitted).

## III. An Equitable Exception To The Variance Doctrine Applies And Allows Mr. Groves To Raise § 6751(b) Now.

The variance doctrine also does not apply because the Government was in exclusive possession of the facts related to § 6751(b) and Mr. Groves timely raised the issue after he became aware of the IRS's non-compliance.

*Compliance Issues for Penalties in Litig.*, 2018 WL 2971640 (June 6, 2018). Only in refund cases, it appears, does the Government assert that variance allows it to avoid compliance with § 6751. *See id.*

The variance doctrine "is not jurisdictional, but rather an affirmative defense that is subject to equitable exceptions and waiver." *Rodgers v. United States*, 2015 WL 5637576, at *11 n.14 (S.D. Tex. Aug. 27, 2015).[6] "Sensibly," for example, "courts have explicitly carved out an exception in cases where the Government's unilateral action itself creates the substantial variance," or where the alleged variance "arises from alleged IRS failures to follow proper procedures of which [the taxpayer] was unaware when those failures occurred." *El Paso CGP Co.*, 748 F.3d at 229; *see also Keefer v. United States*, 2022 WL 2473369, at *6–7 (N.D. Tex. July 6, 2022) (finding variance doctrine did not apply), *reconsideration denied*, 2022 WL 32278753 (N.D. Tex. Aug. 10, 2022).

This equitable exception applies here. The facts surrounding the IRS's violation of § 6751(b) were exclusively in the Government's possession at the time Mr. Groves filed his refund claim. Mr. Groves had just 30 days to gather facts to support that claim—and thus could not rely on the Freedom of Information Act to obtain information about the IRS's non-compliance with § 6751—and the IRS agreed to allow Mr. Groves to proceed immediately to court. Mr. Groves then timely raised § 6751 in his answer to the Government's counterclaim and sought information about the IRS's compliance with § 6751 in discovery. (SAF ¶¶ 10, 20, 23.) After responding to Mr. Groves' discovery requests and completing its production of documents related to § 6751 in February 2020, the Government still has been unable to produce any proof

---

[6] The variance doctrine could not have *any* equitable exceptions if it were jurisdictional. *See Bowles v. Russell*, 551 U.S. 205, 214 (2007) (holding courts lack "authority to create equitable exceptions to jurisdictional requirements"); *Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1846 (2019) (deeming mandatory exhaustion requirement non-jurisdictional).

that the IRS obtained the required written supervisory approval before it issued the NOPA on May 20, 2015. (*Id.* ¶¶ 25–27.) In analogous situations, courts have allowed taxpayers to raise arguments they "had no reason to raise" at the refund stage. *See Parma*, 45 Fed. Cl. at 130 ("Taxpayers are not required to inflate the parameters of their refund claims in anticipation of all possible defenses on the part of the Government.").[7] This Court should reach the same conclusion here.

In addition, barring Mr. Groves from raising § 6751 in this case would ill-serve the purposes of the variance doctrine. Regardless of when Mr. Groves first raised § 6751, the IRS was not surprised to learn it needed to comply with the written approval requirement—which is mandatory and statutory grounds for invalidating a penalty. *See, e.g., Chai*, 851 F.3d at 221; *Clay*, 152 T.C. at 249. The Government does not contend that it would have responded differently to Mr. Groves' refund claim if Mr. Groves had more "precisely" called out § 6751. (Gov. Br. 5–6.) Nor has the Government provided any information in discovery that shows it complied with § 6751 or argued that it could have retroactively corrected its violation of § 6751. If variance applies at all, an equitable exception thus allows Mr. Groves to raise § 6751 now and the Court to invalidate the penalty.

[7] *See also, e.g., Brown v. United States*, 427 F.2d 57, 62 (9th Cir. 1970) (taxpayers "cannot be foreclosed from responding" to issues created by the Government after the initial refund claim is filed); *accord Schulz v. United States*, 2018 WL 3405240, at *4 & n.9 (N.D.N.Y. July 12, 2018) (considering § 6751 argument based on newly disclosed documents).

## IV. Variance Does Not Apply To The Counterclaim.

Contrary to the Government's contention, Mr. Groves can raise § 6751 as a defense to the Government's counterclaim regardless of whether variance bars him from raising it in his refund claim.

First, even if variance applied to the refund claim, it would not apply to the counterclaim. Section 6402 and the regulations promulgated pursuant to it, including Treas. Reg. § 301.6402-2, provide the authority for and the procedure under which the IRS may issue a refund to a taxpayer. Regulations promulgated pursuant to § 6402, which permits the IRS to issue refunds, cannot and do not form the basis for limiting a taxpayer's right to defend against an IRS counterclaim for an uncollected penalty. Neither the enabling statutes at issue here nor the Treasury regulations say otherwise. *See, e.g.,* I.R.C. §§ 6402, 7422, 6702; Treas. Reg. § 301.6402-2.

Furthermore, it is well-established that a taxpayer "must be able to respond to a counterclaim by the IRS with any defense it has available." *Shore v. United States*, 26 Cl. Ct. 826, 828 (1992). That includes raising defenses to counterclaims that were not affirmatively asserted through a refund claim. *See Union Pac. R.R. Co. v. United States*, 389 F.2d 437, 447 (Ct. Cl. 1968) (allowing a fatally varied refund claim as an offset to government set-off defenses); *Charter Co. v. United States*, 971 F.2d 1576, 1580–81 (11th Cir. 1992) (finding variance doctrine did not bar taxpayer from using a theory barred as to its refund claim to defend against government offset claim); *see also Brown*, 427 F.2d at 62.

The cases the Government cites do not say otherwise. In fact, not one stands for the proposition that a taxpayer is prevented from raising "any defense" available

in response to a government counterclaim to reduce a § 6700 penalty to judgment. (*See* Gov. Br. 7–8.) Nor would such a rule make sense: it would hamstring a taxpayer's response to claims that the Government asserts in the course of litigation that occurs after the refund claim is filed, effectively requiring the taxpayer to see years into the future to anticipate claims the Government may pursue down the road. The Government simply is not relieved of its statutory burdens of production and proof on the counterclaim because Mr. Groves brought this litigation before the IRS acted on its own to reduce to judgment the remaining portions of the supposed penalty. If Congress had intended such an absurd result, and to allow the Government to circumvent §§ 6703 and 7491, it surely would have said so.

Second, variance does not apply to the counterclaim for the same reason it does not apply to the refund claim: the Government bears the burden to prove compliance with § 6751. *See* I.R.C. § 6703(a). The Government's burden is not shifted merely because it is asserting rather than defending against a claim; to interpret the statute differently based on who was asserting the underlying claim "would be against . . . common sense." *Shore*, 26 Cl. Ct. at 828.[8] It would also flip § 6703 on its head, shifting the burden to the taxpayer to show non-compliance with § 6751, and encouraging the Government to engineer a case's procedural posture to avoid accountability for violating § 6751. This Court should not countenance such games and should instead find Mr. Groves can raise § 6751 as a defense to the counterclaim.

---

[8] *Cencast Servs., L.P. v. United States*, 94 Fed. Cl. 425 (2010)—which did not involve a penalty, where the Government did not bear the burden of proof, and where § 6703 was not at issue—is not to the contrary. (*See* Gov. Br. 7–8.)

Finally, none of the cases the Government cites support its mistaken contention that even if variance applies in this case—which it does not—it would apply to the counterclaim. *University of Chicago v. United States*, 547 F.3d 773, 785 (7th Cir. 2008), simply states that in cases in which the taxpayer has filed a claim for refund from a divisible penalty, such as the § 6700 penalty here, the Government typically files a counterclaim. It does not in any way support the proposition that the Government's burden of proof is somehow reduced when a taxpayer chooses to take advantage of the divisibility that Congress has provided.[9] The same is true for *Diversified Group Inc. v. United States*, 841 F.3d 975, 982–83 (Fed. Cir. 2016), where the court held that the penalty at issue was not divisible, and the counterclaim was purely academic.

The only case that has any relevance to whether a taxpayer may raise a defense to a counterclaim in a divisible penalty suit if that defense was not reasonably included in an administrative refund claim is *Cencast Services, L.P. v. United States*, 94 Fed. Cl. 425 (2010), *aff'd*, 792 F.3d 1352 (Fed. Cir. 2013). But in *Cencast*, the taxpayer raised a new theory as a defense after the litigation had already been

---

[9] *DAC Management, LLC v. United States*, 275 F. Supp. 3d 928, 931–32 (N.D. Ill. 2017) merely held that when an assessable penalty is assessed against multiple taxpayers who are jointly and severally liable, each taxpayer must pay the portion of the penalty necessary to obtain judicial review individually, notwithstanding the duplicative assessments on the joint and several liability. There was no discussion of counterclaims. And *Peppers v. United States*, 485 F. App'x 85 (6th Cir. 2012) merely affirmed the dismissal of a refund suit that was filed after the limitations period expired. There was no issue of whether the taxpayer could raise a defense to a counterclaim. *Boynton v. United States*, 566 F.2d 50, 52–54 (9th Cir. 1977), is not relevant to the question of whether taxpayers can raise defenses to counterclaims even if those defenses were not made in a refund claim. Instead, it settles the question of whether taxpayers are required to pay the tax (or penalty) in full in order to establish jurisdiction over a refund case.

underway for *six years*, a year and a half after the deadline to amend pleadings. 94 Fed. Cl. at 448. And the taxpayer argued that the IRS notices should not enjoy the so-called "presumption of correctness" applicable to IRS notices of assessment for employment taxes. *Id.* at 453. Section 6700 penalties, unlike employment taxes, do not carry a presumption of correctness for the Commissioner of the IRS. Instead, they require the Commissioner to prove every element of the penalty. I.R.C. § 6703.

## CONCLUSION

This Court can and should rule in Mr. Groves' favor on his motion for summary judgment, based on the invalid reversal of the penalty abatement, without ruling on the Government's motion here. However, if this Court does rule on this motion, it should be denied. Mr. Groves was improperly assessed more than $2 million in penalties under § 6700. He followed the strict procedural requirements and filed a claim for refund after paying over $350,000. That refund claim fairly encompassed a challenge under § 6751. And even if it did not, the Government cannot rely on the variance doctrine to skirt its obligations under § 6751 because the Government bears the burden of complying with that mandatory statute and had exclusive possession of all the facts related to § 6751 when Mr. Groves filed his refund claim.

For the reasons stated herein, this Court should deny the Government's motion for partial summary judgment.

April 26, 2023

*<u>/s/ Guinevere M. Moore</u>*

Gabriel K. Gillett (IL 6328233)
Katherine Funderburg (IL 6329702)
Jenner & Block LLP
353 North Clark Street
Chicago, Illinois 60654

Guinevere M. Moore (IL 6297231)
Ajay Gupta (CA 190101)
Moore Tax Law Group LLC
2205 West Armitage Avenue, Suite 1
Chicago, Illinois 60647

Tel: 312-840-7220
Fax: 312-527-0484
ggillett@jenner.com

Tel: 312-549-9993
Fax: 312-549-9991
guinevere.moore@mooretaxlawgroup.com

David E. Lieberman (IL 6211538)
Levin Schreder & Carey Ltd.
120 North LaSalle Street, 38th Floor
Chicago, Illinois 60602
Tel: 312-332-6300
Fax: 312-332-6393
david@lsclaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2023, a copy of the foregoing was served upon all counsel of record via ECF.

*/s/ Guinevere M. Moore*
Guinevere M. Moore (IL 6297231)
Moore Tax Law Group LLC
2205 West Armitage Avenue, Suite 1
Chicago, Illinois 60647
Tel: 312-549-9993
Fax: 312-549-9991
guinevere.moore@mooretaxlawgroup.com