UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| PHILIP G. GROVES,<br><br>Plaintiff and counter-defendant,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant and counter-claimant. | ) | Case No: 1:16-cv-02485<br>The Hon. John F. Kness |

**REPLY IN SUPPORT OF UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT**

The variance doctrine – the well-settled rule that the grounds for relief set forth in a taxpayer's refund suit cannot vary substantially from those grounds argued before the IRS – ensures that the IRS is fully apprised of the basis for each refund claim. In turn, this allows the IRS to conduct an administrative investigation of those claims, correct any errors, and limit the scope of further refund litigation in the federal district courts. The refund-claim variance rules prevent Groves from raising compliance with 26 U.S.C. § 6751(b)[1] in this case. He never raised the issue in the refund claim he submitted to the IRS, so he cannot belatedly do so now.

Tacitly admitting his refund claim was silent on the issue, Groves now seeks an "exception" to the variance doctrine that would allow taxpayers to avoid § 7422(a) and the refund-claim variance rules where the United States bears the burden of production or proof. That argument fails. The exception he proposes would require the Court to subvert § 7422(a) and the refund-claim variance rules – the primacy of which has been repeatedly emphasized by the Supreme Court and the Seventh Circuit – to the allocation of the burden of production or proof in tax cases. As a practical matter, this "exception" would create entirely new classes of cases that would skirt § 7422(a) and the refund-claim variance rules, and the IRS would be prevented from taking a first pass at taxpayer contentions, merely because the Government carried the burden of production or proof.

Finally, Groves suggests that he should be permitted to raise supervisory approval as a defense to the United States' counterclaim even if he has waived the argument as a basis for a refund. But Groves never bothers to explain how that result would work in practice. It does not, because whether the IRS complied with § 6751(b) is a binary inquiry – it is not possible to

---

[1] All statutory references in the text refer to the Internal Revenue Code (26 U.S.C.) unless otherwise noted.

conclude that only a portion of the penalty assessment was invalid for failure to comply. Therefore, courts have concluded – logically – that where, as here, a taxpayer sues for a refund of a divisible tax, that suit is meant to test the validity of the entire assessment. And the nature of Groves' challenge to the validity of that assessment is cabined by the terms of his administrative claim for refund.

## BACKGROUND

Pursuant to Fed. R. Civ. P. 56(c) & N.D. Ill. Civ. R. 56.1(a), the United States has concurrently filed a reply to each numbered paragraph in the non-moving party's statement of additional material facts.

## ARGUMENT

### I. GROVES DID NOT CITE NONCOMPLIANCE WITH § 6751(b) AS A BASIS FOR A REFUND.

Pursuant to § 7422(a) and 26 C.F.R. § 301.6402-2(b)(1), a taxpayer is barred from presenting claims in a tax refund suit that vary substantially from the factual bases and legal theories that were set forth in the tax refund claim presented to the IRS. *Hefti v. I.R.S.*, 8 F.3d 1169, 1173 (7th Cir. 1993); *see also Nick's Cigarette City, Inc. v. United States*, 531 F.3d 516, 520-21 (7th Cir. 2008). These rules "serve several purposes":

> First, they ensure that the IRS has been given adequate notice of the nature of the claim and the specific facts upon which it is predicated, permitting administrative review and determination. Second, they give the IRS an opportunity to correct any errors that may have been made. Third, they limit the scope of the refund litigation.

*Hefti*, 8 F.3d at 1173.

Here, Groves filed a claim for refund with the IRS, as he was required to do, and that administrative claim set forth in detail six distinct reasons why Groves contends the penalty at issue in this case was assessed without authority. Nowhere, however, did Groves assert that the

IRS failed to comply with the supervisory approval provision of § 6751(b). Consequently, his § 6751(b) claim impermissibly varies from or augments his administrative claim for refund, and the Court is precluded from considering it. *E.g.*, *Charter Co. v. United States*, 971 F.2d 1576, 1579 (11th Cir. 1992); *MOK Partners v. United States*, 673 F. Supp. 918, 921 (N.D. Ill. 1987) (citing *Boyd v. United States*, 762 F.2d 1369, 1371-72 (9th Cir.1985)).

In opposition, Groves concedes that he did not list compliance with § 6751 in his administrative claim. He argues instead that two of his grounds for refund "encompassed" compliance with § 6751. Groves first argues that by asserting "the elements of 26 U.S.C. § 6700(a) are not satisfied" he was actually notifying the IRS of his specific argument that the agency failed to obtain timely approval of the penalty assessment as required by § 6751(b). (ECF No. 196 at 13.) Groves also suggests that his statute of limitations defense is "'reasonably sufficient' to notify the IRS of the 'nature of the claims' based on § 6751(b) even if it did not expressly identify that specific legal theory." (ECF No. 196 at 13-14.) These efforts to characterize his refund claim are unpersuasive, but Groves' attempts to revive them by suggesting a legal argument: "specificity is not required in a refund claim." (ECF No. 196 at 12.) That is not the law.

No matter how Groves seeks to characterize his refund claim before the IRS, he did not, as required by Treasury Regulation § 301.6402–2(b)(1), "set forth in detail each ground upon which a credit or a refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." "This regulation distinguishes between the ground for the claim – that is, the legal theory upon which the refund is claimed – and facts sufficient to apprise the Commissioner of the exact basis thereof." *Lockheed Martin Corp. v. United States*, 210 F.3d 1366, 1371 (Fed. Cir. 2000) (citation and internal punctuation omitted). Here, Groves provided

neither – ***no facts or legal theory*** regarding his supervisory approval argument were included in his refund claim. The Commissioner's "attention" cannot be drawn to a claim or theory that is entirely absent from an administrative claim for refund. Indeed, the Supreme Court has warned that "it is not enough that somewhere under the Commissioner's roof is the information which might enable him to pass on a claim for refund." *Nick's Cigarette City, Inc.*, 531 F.3d at 522 (quoting *Angelus Milling Co. v. Comm'r*, 325 U.S. 293, 299 (1945)). Thus, Groves' contention that "his challenge is intertwined with and fairly encompassed by his refund claim" (ECF No. 196 at 17) is unavailing.

At bottom, what Groves seeks to do is enlarge or broaden the grounds that he presented in his refund claim to the IRS. But the variance doctrine prevents that. Indeed, the "purpose of the variance rule is to limit, not expand, the issues subject to litigation in a tax refund suit." *Ottawa Silica Co. v. United States*, 699 F.2d 1124, 1140 (Fed. Cir. 1983). Efforts to shoehorn disparate grounds for relief into a catch-all "statute of limitations" argument thus fail. As one court explained, it is "not enough to argue that the statute of limitations claim 'inherently include[s]' the notice of deficiency claim." *Rodgers v. United States*, 843 F.3d 181, 195 (5th Cir. 2016). If accepted, that argument "would defeat the purpose of 'assur[ing] that the Commissioner is apprised of the exact nature of the claim and the facts upon which the claim is advanced so that there is an opportunity to make an administrative determination of the claim.'" *Id.* at 195-96 (quoting *Mallette Bros. Const. Co., Inc. v. United States*, 695 F.2d 145, 155 (5th Cir. 1983)). In short, the IRS is "entitled to take [the claim] at face value and to examine only the points to which [the taxpayer] directed [its] attention." *United States v. Garbutt Oil Co.*, 302 U.S. 528, 533 (1938). Groves never "directed" the IRS to a § 6751 argument, and he is therefore precluded from raising it here.

Groves' argument that the United States "is not prejudiced by responding" to the § 6751 argument, and his suggestion that the IRS was in "exclusive possession" of the relevant facts, thus permitting the Court to ignore the refund claim variance rules (ECF No. 196 at 14), misses the point. As the Supreme Court long ago noted, "the protection of the revenue authorizes the Commissioner to demand information in a particular form, and he is entitled to insist that the form be observed so as to advise him expeditiously and accurately of the true nature of the claim." *Kikalos v. United States*, 479 F.3d 522, 527 (7th Cir. 2007) (quoting *Angelus Milling Co.*, 325 U.S. at 299). The refund-claim variance rules are intended to promote judicial efficiency and agency autonomy. *Hefti*, 8 F.3d at 1173. Fact-intensive, case by case exceptions of the type contemplated by Groves would defeat that purpose and, in the end, swallow the rule itself.

Finally, Groves' citation to *American Nat. Bank & Trust Co. v. United States*, 594 F.2d 1141 (7th Cir. 1979) (ECF No. 196 at 12) is inapposite. There, the court concluded that the IRS was sufficiently notified of the taxpayer's claim that he was entitled to a "refund of the penalty on the basis that it was improperly computed." *Id.* at 1143 n.1. Critically, however, the court relied on the taxpayer's assertion in the refund claim that "the assets in which the decedent had an interest were, in fact, of nominal value and, in any event, would have resulted in a no-tax liability had a Federal Estate Tax return been timely filed." *Id.* There is no analogous language regarding compliance with § 6751(b) in Groves' refund claim, and reliance on at *American Nat. Bank & Trust Co.* is therefore misplaced. The same is true with respect to *Est. of Liftin v. United States*, 111 Fed. Cl. 13, 19 (2013) (ECF No. 196 at 12). There, the court observed that "Plaintiff's claim has relied on the same 'reasonable cause' provision of § 6651 at every stage of this dispute." *Est. of Liftin*, 111 Fed. Cl. at 19. Groves first reference to his supervisory approval

argument occurred in his pleadings ***in this court***, and *Est. of Liftin* is thus inapt. For this reason, too, the United States' motion should be granted.

## II. THE BURDENS OF PRODUCTION AND PROOF DO NOT OBVIATE THE RULE THAT A REFUND SUIT IS LIMITED TO ISSUES RAISED IN THE ADMINISTRATIVE CLAIM FOR REFUND.

Although Groves never raised compliance with § 6751(b) in his refund claim, he argues that § 7422(a) "does not apply to § 6751 challenges to § 6700 penalties" because the burden of proof and production is on the IRS. (ECF No. 196 at 16.) Groves points to § 7491(c), which provides that "the Secretary shall have the burden of production in any court proceeding with respect to" penalty liability, and § 6703, which places the burden of proof as to penalty liability – but not penalty amount – "on the Secretary."[2]

While § 7491(c) and § 6703 may place the burden of production and proof on the Government in a "proceeding," the scope of that proceeding, in refund cases, is still determined by reference to § 7422(a) and the claim for refund itself. Groves' refund claim, of course, failed to put the IRS on notice of his § 6751(b) argument. Thus, a subsequent refund suit cannot challenge IRS compliance with that provision. *See Morales v. Commissioner*, 633 F. App'x 884, 886 (9th Cir. 2015) ("[T]he IRS is obligated to meet a burden of production on a penalty *only* if the taxpayer first alleges that the IRS erred in its penalty determination."). Having not challenged compliance with § 6751(b) in his administrative refund claim, Groves cannot obligate the United

---

[2] As set forth in its opposition to Groves' motion for summary judgment (ECF No. 194 at 16-17), the United States has met its burden of production with respect to § 6751(b). The burden of production is not a heavy one – it requires merely that a party come forward with some evidence to support its position. *Greenwich Collieries v. Dir., Office of Workers' Comp. Programs*, 990 F.2d 730, 735 (3d Cir.1993) ("[T]he burden of production requires a party to *produce* evidence regarding a fact."). Here, the United States has submitted, among other things, Form 8278 (Assessment and Abatement of Miscellaneous Civil Penalties) which was executed by the relevant supervisor (ECF No. 193-4 (reflecting the relevant supervisory approval in box 11a)) on August 19, 2015 – or 47 days before the IRS assessed the § 6700 penalty against Groves on October 5, 2015. (ECF No. 181.)

States to prove compliance in a subsequent refund suit. In short, "the question whose burden it was to show compliance with § 6751 is beside the point." *Kaufman v. Comm'r*, 784 F.3d 56, 71 (1st Cir. 2015).

Groves does not cite a single case to support the proposition that the requirements of § 7422(a) do not apply because the burden of proof and production is on the IRS. On the contrary, the Eleventh Circuit recently addressed this very issue – and rejected the argument Groves makes here. *Ginsburg v. United States*, 17 F.4th 78 (11th Cir. 2021). *Ginsburg* involved a partner-level refund claim for a 40% penalty arising from Ginsburg's participation in an abusive tax shelter. Ginsburg challenged the penalty on the ground that the IRS purportedly failed to obtain the supervisory approval required by § 6751(b). The Eleventh Circuit held that the district court correctly refused to consider Ginsburg's § 6751(b) argument because he did not raise the argument in his refund claim. In so doing, the Eleventh Circuit rejected an argument nearly identical to the one Groves makes here: that the variance doctrine (*i.e.*, that the basis for a refund suit may not vary substantially from the grounds set forth in the taxpayer's administrative claim for refund presented to the IRS) does not apply to § 6751 challenges where the IRS bears the burden of proof and production. Contrary to Groves' argument, the Eleventh Circuit decided that whether the IRS bears the burden of production or proof does not affect the "exhaustion" requirement; rather, the issue of burden "applies to the limited litigation issues that have been exhausted and are now in court." *Ginsburg*, 17 F.4th at 85.[3]

---

[3] Groves' citation to *Chai v. Commissioner*, 851 F.3d 190 (2d Cir. 2017) (ECF No. 196 at 15) is entirely misplaced. *Chai* was not a refund suit – it was appealed directly from the Tax Court. *Chai* therefore does not discuss or even contemplate the importance of § 7422(a) and the refund-claim variance rules. Likewise, though *Chai* concluded that compliance with § 6751(b) is part of the IRS's burden of production under § 7491(c), *Chai* does not establish that § 6751(b) is part of the Government's burden in ***district court*** cases involving an assessable penalty.

Neither § 7491(c) nor § 6703 were intended to eliminate the requirements of § 7422(a) under these circumstances. The Supreme Court has repeatedly upheld the requirement that all taxpayers must comply with § 7422(a) prior to filing a refund suit in district court. *See United States v. Dalm*, 494 U.S. 596, 601-02 (1990); *United States v. Andrews*, 302 U.S. 517, 524 (1938); *United States v. Felt & Tarrant Mfg.*, 283 U.S. 269, 272 (1931). In fact, in *Dalm*, a refund suit where the taxpayer invoked 28 U.S.C. § 1346(a)(1) as a basis for jurisdiction, the Court noted the primacy of § 7422(a) in refund litigation. "Despite its spacious terms," the jurisdictional statute relied on by the taxpayer "must be read in conformity with other statutory provisions which qualify a taxpayer's right to bring a refund suit upon compliance with certain conditions." *Id.* at 601. And the "first is § 7422(a)" which "limits a taxpayer's right to bring a refund suit." *Id.*

Similarly, in *Goldberg v. United States*, 881 F.3d 529, 534-35 (7th Cir. 2018), a refund suit that also included a claim for damages against the IRS under § 7433, the Seventh Circuit resolved the issue by reading § 7433 so as to "preserve[] the requirement in § 7422(a) that taxpayers exhaust the administrative refund process before filing suit in federal court to contest tax liability." As the court observed, if read otherwise, § 7433 "would at best duplicate the refund process and at worst create an unnecessary loophole that might allow taxpayers to skirt the administrative refund process entirely by claiming the IRS negligently violated the tax code."

Likewise, here, § 7491(c) and § 6703 must be "read in conformity" with § 7422(a). In other words, there is a more sensible approach than the one advocated by Groves – one that does not place § 7491(c) and § 6703 in conflict with the exhaustion requirement of § 7422(a) and the refund-claim variance rules. While the burden of production or proof may lie with the Government in any given proceeding, the scope of any such proceeding, in refund cases, is still

determined by reference to § 7422(a) and the claim for refund itself. Indeed, issues of burden – whether of production or proof – necessarily take a back seat to compliance with § 7422(a). After all, there is no refund suit in the first instance absent compliance with § 7422(a).

Groves also suggests that he was not required to raise his § 6751(b) argument in his refund claim because § 7422(a) does not require issue exhaustion; rather, it only requires that he exhaust his administrative remedies by filing a generic claim for refund. (ECF No. 196 at 18.) While § 7422(a) requires the filing of a refund claim before proceeding to court, a valid refund claim also "must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." 26 C.F.R. § 301.6402-2(b)(1). *See also Nick's Cigarette City, Incorporated v. United States*, 531 F.3d 516, 520-21 (7th Cir. 2008) ("any refund claim filed must 'set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof'"). Many courts have affirmed the proposition that, taken together, the exhaustion requirement of § 7422(a) and the attendant Treasury regulation mean that a taxpayer bringing a refund suit is limited to the grounds for relief that were fairly contained within his administrative refund claim. *E.g.*, *Charter Co. v. United States*, 971 F.2d 1576, 1579 (11th Cir. 1992).

And the notion that the IRS has used 26 C.F.R. § 301.6402-2(b)(1) to somehow "nullify" the supervisory approval requirement in § 6751(b) is nonsensical. (ECF No. 196 at 19.) Groves could have raised the supervisory approval requirement in his refund claim but chose not to do so. His failure to comply with § 7422(a) and 26 C.F.R. § 301.6402-2(b)(1) does not mean the protection afforded by § 6751(b) ceases to exist, it simply means Groves' own failure to act prevents him from invoking those protections in this case.

In addition, Groves' heavy emphasis on allocation of burden – *i.e.*, that the variance doctrine cannot apply in situations where the United States bears the burden of production or proof – would undermine the purpose of the rule. Groves suggests "limiting variance in the narrow context of a § 6751 challenge to a § 6700 penalty" (ECF No. 196 at 20), but his reasoning would permit an entire class of cases – indeed, any case in which the Government bears the burden of production or proof – to escape § 7422(a) and the refund-claim variance rules. Under § 6703, the Government bears the burden of proof for penalties under §§ 6700, 6701 and 6702. Where fraud is at issue, the Government bears the burden of proof. *See* 26 U.S.C. §6663(b), § 7454(a) (burden of proof in fraud cases). In fact, there are numerous variations in the burden of proof in tax litigation, *see* Henry Ordower, *United States of America: The Burden of Proof in Tax Matters* (2013)[4] and, according to Groves, these statute specific contours would dictate whether a taxpayer need comply with § 7422(a) and the refund-claim variance rules.

But the purpose of the variance doctrine is to permit "the Commissioner to correct claimed errors in the first instance and, if disagreement persists, to limit the litigation to the issues which have been re-examined by the Commissioner and which he is prepared to defend." *Carmack v. Scofield*, 201 F.2d 360, 362 (5th Cir. 1953). *See also Hefti*, 8 F.3d at 1173; *Danly Machine Corp. v. United States*, 356 F. Supp. 1284, 1287 (N.D. Ill. 1972) (the "purpose of this rule is to fully apprise the Commissioner of the grounds for the taxpayer's claim so that he may make a proper decision and to narrow the issues involved"). Groves' formulation of § 7422(a) and the refund-claim variance rules would do the opposite. For any case in which the

---

[4] Available at: https://scholarship.law.slu.edu/cgi/viewcontent.cgi?article=1460&context=faculty

Government carried the burden of production or proof, the IRS would be left to "guess" whether issues would be contested, the IRS would not be able to conduct an administrative level investigation, and the IRS would not be able to make administrative level corrections where appropriate. Refund suits that might never have percolated up to the district courts would arrive anyway, potentially based on entirely novel grounds, merely because the Government carried a burden of production or proof.

In sum, "federal income tax laws are complicated" and an "essential element of the revenue system is the power Congress has given the IRS to resolve these problems internally through reasonable procedures of the agency's design." *Goldberg*, 881 F.3d at 532. One of these "essential elements" is § 7422(a) and the refund-claim variance rules, *id.*, and the Court should reject Groves' invitation to diminish them. The United States' motion should therefore be granted.[5]

## III. THE LIMITED EXCEPTION TO THE VARIANCE DOCTRINE IS INAPPLICABLE HERE.

Contrary to Groves' suggestion (ECF No. 196 at 21), this is not a situation where the exception to the variance doctrine identified in *El Paso CGP Co. v. United States*, 748 F.3d 225 (5th Cir. 2014) has any application.

---

[5] In a footnote, Groves suggests that "[o]nly in refund cases, it appears, does the Government assert that variance allows it to avoid compliance with § 6751." (ECF No. 196 at 19 n.5 (citing Section 6751(b) Compliance Issues for Penalties in Litig., IRS CCN CC-2018-006, 2018 WL 2971640 (June 6, 2018)).) While the Government places no reliance on this guidance document, Groves' criticism is nevertheless perplexing. The variance doctrine ***only applies*** in refund suit litigation, so it is hardly surprising that the United States would insist on compliance with the refund-claim variance rules only in refund cases. As that same guidance document points out, IRS attorneys, in cases referred to the Department of Justice, should "address whether the section 6751(b)(1) argument was raised in the administrative claim for refund. The variance doctrine may bar raising the issue for the first time in a refund suit." *Id.*

In *El Paso*, the court noted “an exception in cases where the Government’s unilateral action itself creates the substantial variance.” *Id.* at 229. Following that reasoning, the court declined to apply the variance doctrine because the variance was the result of subsequent action by the IRS. *Id.* The IRS allowed El Paso’s claim for refund but offset a portion of the amount owed to El Paso to satisfy deficiencies for other years. *Id.* at 227. The variance doctrine did not bar El Paso from arguing in a subsequent refund action that the IRS incorrectly applied its offset and mitigation procedures because the offset occurred ***after*** El Paso filed its administrative claim. *Id.* at 229.

Attempting to analogize to *El Paso*, Groves seeks “an equitable exception” to the variance rule because the “Government was in exclusive possession of the facts related to § 6751(b).” (ECF No. 196 at 02.) Unlike in *El Paso*, however, the variance between Groves’ refund claim and his position in this lawsuit is not the result of the IRS’s subsequent “unilateral action.” *See Rodgers*, 843 F.3d at 196 (explaining that the exception to the variance doctrine in *El Paso* applies only “in cases where the Government’s unilateral action itself creates the substantial variance”) (citation and quotation omitted). The variance at issue here is simply the result of Groves’ failure to include a § 6751(b) argument in his administrative claim for refund, and nothing more. It would have been simple for Groves to include his § 6751(b) argument in his administrative claim for refund. *Charter Co.*, 941 F.2d at 1579. To be sure, § 6751(b) had been in the Internal Revenue Code for almost twenty years at that point. *See Mellow Partners v. Comm’r*, 890 F.3d 1070, 1081-82 (D.C. Cir. 2018). In short, the IRS took no “unilateral action” that “itself create[d] the substantial variance” and, therefore, *El Paso* does not apply.

The other cases cited by Groves are similarly unhelpful – they all involve affirmative action taken by the IRS that created the substantial variance. *See Parma v. United States*, 45 Fed.

Cl. 124, 130 (1999) (government deployed "new theory" and taxpayers "had no reason to anticipate this shifting ground"); *Brown v. United States*, 427 F.2d 57, 62 (9th Cir. 1970) ("the Government waived its right to rely on" variance "by injecting the modification issue into the case"); *Keefer v. United States*, 2022 WL 2473369, at *7 (N.D. Tex. July 6, 2022) ("evidence shows that here, as in other cases where courts have applied an exception to the variance doctrine, 'the Government raise[d] [a] new defense[ ] ... for the first time after the claim [was] in litigation'").

Groves also suggests that an exception to the variance rule applies here because "the IRS was not surprised to learn it needed to comply with the written approval requirement." (ECF No. 196 at 22.) But Groves is wrong again. "It is the Taxpayers' duty to inform the IRS of grounds for recovery in their refund claim, not the other way around." *Rodgers*, 843 F.3d at 196 (citing 26 C.F.R. § 301.6402–2(b)(1)). For this reason, too, the United States' motion should be granted.

## IV. THE VARIANCE DOCTRINE APPLIES TO THE COUNTERCLAIM.

Contrary to Groves' argument, the variance doctrine applies where – as here – the United States has brought a counterclaim to reduce to judgment the balance of the penalty assessment. That is because Groves' refund suit is meant to "test the validity of the ***entire assessment***." *Lucia v. United States*, 474 F.2d 565, 576 (5th Cir. 1973) (emphasis added). In fact, Groves' opposition ignores the fact that he affirmatively asked this Court in his Amended Complaint for a "judgment against Defendant determining that Mr. Groves is not liable for the I.R.C. § 6700 penalty." (ECF No. 130 at 8; *see also id.* at ¶ 1 ("This is an action" "for a determination that Plaintiff is not liable for the civil penalties assessed against him by the Internal Revenue Service ("IRS") pursuant to I.R.C. § 6700").) Thus, Groves cannot seriously contend that, if he succeeds in his refund suit, he would be satisfied with the United States merely returning his divisible payment of $357,052 and nothing more. On the contrary, if he succeeds in this refund suit, he will not only receive a

refund check, but he will also demand that the IRS ***abate the remainder of the penalty assessment*** that remains on the IRS's books. And this would be true whether the United States filed a counterclaim or not. In short, Groves' refund suit placed the validity of the entire penalty assessment at issue – and the nature of Groves' challenge to the validity of that assessment is cabined by the terms of his administrative claim for refund.[6]

Groves cites to *Shore v. United States*, 26 Cl. Ct. 826, 829 (1992) (ECF No. 196 at 23, 24), but it does not provide the support he needs. In *Shore*, "it was the counterclaim of the defendant which created the need for an investigation" and thus, "[i]n essence, the defendant created whatever 'substantial variance' from the initial claims that it seeks to prevent." *Id.* at 829. That is not the case here. As noted above, in his Amended Complaint, Groves placed the entire penalty assessment at issue. Notably, nearly 20 years later, in *Cencast Services, L.P. v. United States*, 94 Fed. Cl. 425, 443 (2010), the Court of Federal Claims stated that where, as here, the counterclaim is "based on the same theory the IRS asserted throughout the administrative process," the entire amount of the assessment is at issue and a counterclaim does not "raise 'new issues' permitting plaintiffs to assert claims not raised in their administrative refund claims." In its analysis, *Cencast Services, L.P.* cited *Shore* for the proposition that "the right to raise such a counter-setoff exists only when the Government raises a new issue that the plaintiff could not have anticipated and, therefore, could not have been asserted as grounds for its refund." *Id.* at 441. Likewise, the United States has not found any other courts that cite *Shore* for the

[6] The filing of the counterclaim, on the other hand, merely facilitates collection of the assessed penalty balance by generating a money judgment in favor of the United States should it prevail.

proposition that Groves ascribes to it. *See Consolidated Edison Co. of New York, Inc. v. United States*, 1999 WL 688456, at *1 n.1 (S.D.N.Y. 1999); *El Paso*, 748 F.3d at 229.

Finally, as a practical matter, Groves' suggestion that variance could apply to his refund suit but not the United States' counterclaim makes no sense. The question whether the IRS complied with § 6751(b) is binary – it either did or did not obtain the necessary approval – and the answer to that question determines whether the assessment is valid. It would thus be anomalous to conclude that a portion of the assessment – the unpaid balance subject to the counterclaim – should be invalidated due to a lack of compliance, while the portion at issue in the refund suit – the 15% of the assessment that Groves has paid – nevertheless survives due to application of the variance doctrine. Yet this odd result is precisely what Groves' argument contemplates. To avoid it, courts have logically concluded that where a taxpayer sues for a refund of divisible tax, the entire assessment is at issue.

Indeed, as the Seventh Circuit has explained, where a tax is "divisible," "the taxpayer may pay the full amount on one transaction, sue for a refund for that transaction, and have the outcome of this suit determine his liability for ***all the other, similar transactions***." *University of Chicago*, 547 F.3d at 785 (emphasis added) (citation omitted). *See also Diversified Group Incorporated v. United States*, 841 F.3d 975, 982 (Fed. Cir. 2016) ("the government will generally counterclaim for the remainder of the tax due and both the paid assessment and the unpaid assessments will be litigated in one action"). Put simply, Groves cannot avoid the variance doctrine because he elected to pay $357,052 to file a suit for refund, leaving the United States to counterclaim for the remaining $2,023,294.

## CONCLUSION

For all the foregoing reasons, and for the reasons set forth in the United States opening brief, the United States motion for partial summary judgment should be granted.

Dated: May 16, 2023

Respectfully submitted,


DAVID A. HUBBERT
Deputy Assistant Attorney General

/s/ Richard G. Rose
KARI M. LARSON
Senior Litigation Counsel
RICHARD G. ROSE
Trial Attorney
U.S. Department of Justice
Tax Division
P.O. Box 7238
Ben Franklin Station
Washington, D.C. 20044
(202) 514-2901

*Attorneys for the United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2023, a copy of the foregoing was served upon all Counsel of Record via ECF.

/s/ Richard G. Rose
RICHARD G. ROSE
Trial Attorney
U.S. Department of Justice