**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PHILIP G. GROVES, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:16-cv-02485 |
| | ) | |
| v. | ) | The Honorable John F. Kness |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF PHILIP G. GROVES' MOTION FOR SUMMARY JUDGMENT**


Gabriel K. Gillett (IL 6328233)
Katherine Funderburg (IL 6329702)
Jenner & Block LLP
353 North Clark Street
Chicago, Illinois 60654
Tel: 312-840-7220
Fax: 312-527-0484
ggillett@jenner.com

Guinevere M. Moore (IL 6297231)
Ajay Gupta (CA 190101)
Moore Tax Law Group LLC
2205 West Armitage Avenue, Suite 1
Chicago, Illinois 60647
Tel: 312-549-9993
Fax: 312-549-9991
guinevere.moore@mooretaxlawgroup.com

David E. Lieberman (IL 6211538)
Levin Schreder & Carey Ltd.
120 North LaSalle Street, 38th Floor
Chicago, Illinois 60602
Tel: 312-332-6300
Fax: 312-332-6393
david@lsclaw.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. The Government Lacks Authority To Reverse The Abatement. ........ 2

II. Mr. Groves Is Entitled To Summary Judgment Because The Penalty Violates Sections 6751(b) And 6751(a). ........ 6

  A. This Court May Hold The IRS Accountable For Violating § 6751 ........ 6

  B. There Is No Genuine Dispute That The IRS Violated § 6751(b). ........ 7

  C. There Is No Genuine Dispute That The IRS Violated § 6751(a). ........ 9

CONCLUSION ........ 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Nat'l Bank & Tr. Co. v. United States*,
594 F.2d 1141 (7th Cir. 1979) ....1, 6

*Belair Woods, LLC v. Comm'r*,
154 T.C. No. 1, 2020 WL 58313 (2020)....7

*Bittner v. United States*,
143 S. Ct. 713 (2023)....8

*Bowen v. Georgetown Univ. Hosp.*,
488 U.S. 204 (1988)....4

*Bugge v. United States (In re Bugge)*,
99 F.3d 740 (5th Cir. 1996) ....6

*Carlson v. United States*,
126 F.3d 915 (7th Cir. 1997) ....4

*Cencast Servs., L.P. v. United States*,
94 Fed. Cl. 425 (2010) ....3

*Chai v. Comm'r*,
851 F.3d 190 (2d Cir. 2017)....7, 10

*Clay v. Comm'r*,
152 T.C. 223 (2019)....7, 9

*Computervision Corp. v. United States*,
445 F.3d 1355 (Fed. Cir. 2006)....3

*Crompton-Richmond Co. v. United States*,
311 F. Supp. 1184 (S.D.N.Y. 1970)....2, 6

*Dalton v. Comm'r*,
682 F.3d 149 (1st Cir. 2012).... 5-6

*Deyo v. United States*,
296 F. App'x 157 (2d Cir. 2008) ....9

*Farhy v. Comm'r*,
160 T.C. No. 6, 2023 WL 2752459 (2023)....10

*Ginsburg v. United States*,
17 F.4th 78 (11th Cir. 2021) ....................7

*Graev v. Comm'r*,
147 T.C. 460 (2016)....................10

*Isley v. Commissioner*,
141 T.C. 349 (2013)....................5

*Kokesh v. SEC*,
581 U.S. 455 (2017)....................10

*Laidlaw's Harley Davidson Sales, Inc. v. Comm'r*,
29 F.4th 1066 (9th Cir. 2022) ....................7

*Larson v. United States*,
888 F.3d 578 (2d Cir. 2018).................... 7-8

*Leighton v. United States*,
155 Fed. Cl. 543 (2021) ....................4

*Mann Constr., Inc. v. United States*,
27 F.4th 1138 (6th Cir. 2022) ....................10

*Merry Gentleman, LLC v. George & Leona Prods., Inc.*,
76 F. Supp. 3d 756 (N.D. Ill. 2014) ....................2

*Niz-Chavez v. Garland*,
141 S. Ct. 1474 (2021)....................10

*Oropeza v. Comm'r*,
T.C. Memo. 2020-111, 2020 WL 4194613 (July 21, 2020) ....................9

*Our Country Home Enters., Inc. v. Comm'r*,
855 F.3d 773 (7th Cir. 2017) ....................10

*PBBM-Rose Hill, Ltd. v. Comm'r*,
900 F.3d 193 (5th Cir. 2018) ....................9

*Palmolive Bldg. Invs., LLC v. Comm'r*,
152 T.C. 75 (2019)....................9

*Partita Partners LLC v. United States*,
266 F. Supp. 3d 683 (S.D.N.Y. 2017)....................9

*United States v. Jackson*,
511 F. App'x 200 (2013) ....................4

*Waltner v. United States*,
2020 WL 2991611 (D. Ariz. June 4, 2020) ....................................................................4

**Statutes**

26 U.S.C. § 6321....................................................................................................8

26 U.S.C. § 6330(c)(1)......................................................................................3, 4, 5

26 U.S.C. § 6330(c)(2)..............................................................................................4

26 U.S.C. § 6331....................................................................................................8

26 U.S.C. § 6703................................................................................................7, 8

26 U.S.C. § 6751....................................................................................................8

26 U.S.C. § 6751(a) ..............................................................................................10

26 U.S.C. § 7491(c) ................................................................................................8

**Other Authorities**

Distressed Asset Trust (DAT) Transaction, Notice 2008-34, 2008 WL 510122
(Feb. 27, 2008).........................................................................................................2

IRS Field Service Advice, LAFA 20133702F (Sept. 13, 2013).....................................2

*Rules for Supervisory Approval of Penalties*, 88 Fed. Reg. 21,564-01 (Apr. 11,
2023) ......................................................................................................................8

## INTRODUCTION

Plaintiff Philip G. Groves is entitled to summary judgment because the IRS made multiple errors when assessing and litigating the § 6700 penalty at issue. The IRS properly abated the penalty as part of a statutory Collections Due Process ("CDP") proceeding but then improperly reversed the abatement. For this reason alone, the Court should grant summary judgment in Mr. Groves' favor; it need not rule on variance or whether the IRS failed to follow the procedural requirements set forth in 26 U.S.C. § 6751. But if the Court reaches those issues, they only strengthen the grounds to grant judgment for Mr. Groves.

The Government's response[1] does not forestall summary judgment. First, the Government contends the IRS lacked authority to issue the abatement in the first place. That is incorrect. The abatement was not a "compromise" that required DOJ approval under § 7122(a) or Executive Order No. ("EO") 6166. And the non-binding IRS Manual, Chief Counsel Notice, and inapposite cases that rely on § 7122 and EO 6166 are thus inapplicable. Second, the Government contends the variance doctrine bars this Court from holding the IRS accountable for violating § 6751. That is incorrect too: § 6751 is fairly encompassed in Mr. Groves' claim for refund, *see American National Bank & Trust Co. v. United States*, 594 F.2d 1141, 1143 & n.1 (7th Cir. 1979), and equitable exceptions allow this Court to reach § 6751 in any event. Third, the Government contends summary judgment is not proper on § 6751. Not so. As to § 6751(b), the IRS itself concluded during CDP, and the undisputed facts show, that the penalty is invalid because it was not approved in writing by a supervisor until after the initial determination of the assessment. And the IRS has since conceded that Mr. Groves' interpretation of the statute is reasonable by pursuing a rulemaking to clarify the application of § 6751(b) going forward. As to § 6751(a), there is no

---

[1] Citations to the docket are abbreviated herein as follows: ECF No. 192 (Groves Br.); ECF No. 193 (SOF); ECF No. 194 (Gov. Opp.); ECF No. 195 (Gov. SOF); ECF No. 196 (Groves Opp.).

dispute the IRS failed to provide Mr. Groves with the required penalty computation in the October 5, 2015 notice. Each of these errors are independent grounds for summary judgment on Mr. Groves' refund claim and the Government's counterclaim.[2]

**ARGUMENT**

**I. The Government Lacks Authority To Reverse The Abatement.**

Mr. Groves has explained the reversal's abatement is invalid because it was not authorized by statute, non-binding agency guidance, or case law. (Groves Br. 6–16.)

The Government's response is notable for what it does not say. The Government does not walk back its concession that, unless one of three exceptions applies, an abatement "cannot be reversed if the IRS later determines that the abatement was incorrect." (*Id.* at 6 (quoting ECF No. 165 at 7 (citing *Crompton-Richmond Co. v. United States*, 311 F. Supp. 1184 (S.D.N.Y. 1970)))). The Government argues only one of those three is "relevant here" (Gov. Opp. 8), and no longer contends that the abatement qualifies as a ministerial error (*see* Groves Br. 13–16). And the Government does not dispute that there is no legal basis to use reversal of the abatement to improperly alter the outcome of a considered final agency determination. (Groves Br. 16.) These arguments, and others not raised in opposition, are waived and forfeited. *E.g.*, *Merry Gentleman, LLC v. George & Leona Prods., Inc.*, 76 F. Supp. 3d 756, 761 (N.D. Ill. 2014).

Most critically, the Government does not take issue with Mr. Groves' analysis of why the statutory text, structure, and history demonstrate the abatement is not a "compromise" under 26

[2] Although irrelevant here, the Government opens with an incorrect and slanted description of a Distressed Asset Debt ("DAD") tax shelter it alleges Mr. Groves promoted. But the description omits that the IRS has repeatedly acknowledged that DAD transactions are not so-called "Listed Transactions" that are the hallmark of tax shelters or tax avoidance plans. *See, e.g.*, Distressed Asset Trust (DAT) Transaction, Notice 2008-34, 2008 WL 510122 (Feb. 27, 2008) (DAD transactions "are not being identified as 'listed transactions'"); IRS Field Service Advice, LAFA 20133702F (Sept. 13, 2013) ("DAD is not a listed transaction. ... [and] DAD transactions are not substantially similar to any other listed transactions.").

U.S.C. § 7122. (Groves Br. 7–8.) For example, the Government does not dispute that the abatement: (1) reflects the IRS unilaterally confessing error and undoing the penalty; (2) arose from CDP's statutory mandate to obtain "verification … that the requirements of any applicable law or administrative procedure have been met," 26 U.S.C. § 6330(c)(1); and (3) did not arise from a "civil or criminal case," *Id.* § 7122 (Groves Br. 7.) The Government also concedes the abatement lacks hallmarks of a compromise: "Groves did not actually submit an offer in compromise for consideration" so the IRS "could not have accepted such an offer," and the parties did not agree he would pay less than what was owed in exchange for resolving the case. (Gov. Opp. 10.)

Rather than focus on the statute, the Government relies heavily on EO 6166. But the Government ignores that under separation-of-powers principles an Executive Order cannot be read to override statutory CDP rights. (*See* Groves Br. 9.) The Government also ignores that the text, structure, and history of EO 6166 indicate it does not apply for many of the same reasons § 7122 does not. (*See id.*) And the cases the Government cites neither involve § 6700, invoke CDP rights, or suggest that a "compromise" under § 7122(a) includes the IRS's unilateral decision to abate a penalty after concluding as part of a mandatory CDP review that the penalty violated applicable legal requirements. (*See* Gov. Opp. 12–13 (citing *Computervision Corp. v. United States*, 445 F.3d 1355 (Fed. Cir. 2006); *Cencast Servs., L.P. v. United States*, 94 Fed. Cl. 425 (2010)).)[3]

The Government also focuses on the Internal Revenue Manual and Chief Counsel Notice, which purport to authorize reversal of an abatement that occurs after a matter is referred to DOJ.

---

[3] The Government contends § 7122 and EO 6166 do not "constrain CDP rights" because § 6700 "***require*[s]** an automatic stay on collection activity" once a refund suit is filed. (Gov. Opp. 13.) Yet the decision to proceed with enforced collection *after* Mr. Groves brought this suit is what triggered his right to CDP. And that enforced collection is what led the IRS to conclude the penalty was invalid—after six years, a lengthy hearing, referral to IRS counsel, and managerial approval. Having failed to follow its own rules and having only itself to blame for Mr. Groves having the right to CDP, the Government cannot now cite those rules as grounds to further prejudice him.

(Gov. Opp. 8-11.) The Manual itself "does not have the force of law, is not binding on the IRS, and confers no rights on taxpayers." *Leighton v. United States*, 155 Fed. Cl. 543, 551 n.4 (2021) (citation omitted); *see also Carlson v. United States*, 126 F.3d 915, 922 (7th Cir. 1997). The Government concedes the Notice is similarly not entitled to any deference. (*See* Gov. Opp. 9 n.3; ECF No. 176 at 38:21–39:5.) Nor are the Manual and Notice persuasive because they are inapposite: both cite § 7122 and EO 6166 as the sole legal basis for allowing reversal, but neither of those authorities applies here. (*See* Groves Br. 10.) So the Manual and Notice are likewise inapplicable. *Cf. Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("agency's power … is limited to the authority delegated by Congress").

Cases relying on the Manual or Notice, such as *Waltner v. United States*, 2020 WL 2991611 (D. Ariz. June 4, 2020) and *United States v. Jackson*, 511 F. App'x 200 (2013), are likewise inapplicable. When a taxpayer invokes CDP, the IRS *must* verify that statutory and administrative procedural requirements have been met. 26 U.S.C. § 6330(c)(1). But the taxpayers in *Waltner* and *Jackson* did not invoke CDP rights and did not trigger the IRS's mandatory review of whether "any applicable law or administrative procedure [was] met," 26 U.S.C. § 6330(c)(1). And the IRS agreed to reduce liability rather than determine the penalty was invalid.

The Government does not read these cases differently, contend Mr. Groves and the IRS agreed to reduce his liability, or dispute that the IRS found the penalty was entirely invalid. (*See* Gov. Opp. 10–11.) The Government asserts Mr. Groves' abatement was like a "compromise" because "in practice" it reduced his liability to $0. (*Id.*) But that ends-based interpretation ignores *why* the abatement issued—and it ignores the key fact that the reduction to $0 here did not actually reflect anything that approximates a compromise in the normal sense of the word. There is simply no dispute that the IRS and Mr. Groves did *not* reach a compromise that resulted in reducing his

liability. The IRS abated the penalty on its own accord after undertaking its *mandatory* statutory obligation to verify "that the requirements of any applicable law or administrative procedure have been met." 26 U.S.C. § 6330(c)(1). That context makes this case nothing like *Waltner* or *Jackson*.

*Isley v. Commissioner*, 141 T.C. 349 (2013), similarly does not apply to these facts. There, unlike here, the taxpayer did not assert that the penalty was invalid based on the mandatory review process under § 6330(c)(1). So there was no argument at all—let alone a determination—that the penalty violated "any applicable law or administrative procedure." Instead, the taxpayer invoked his optional right to raise additional *permissive* defenses such as appropriateness of collection and the existence of collection alternatives. *See* 26 U.S.C. § 6330(c)(2)(A)–(B). After the taxpayer did so, the IRS accepted his offer-in-compromise ("OIC") despite having referred the matter to DOJ. 141 T.C. at 360–61, 365–66. The Tax Court found that was error, concluding that although the IRS could "negotiat[e] the terms of a potential OIC with a taxpayer after referral of his or her case to DOJ," the IRS could not accept the OIC without DOJ approval. *Id.* at 363. But that holding has no relevance here: it is undisputed that Mr. Groves did not make an OIC, that he and the IRS did not negotiate an OIC, and that the IRS did not accept an OIC. (*See* SOF ¶ 38.) And that is why the Tax Court's stray dicta that "[§] 7122(a) trumps [§] 6330(c)" in *Isley* has no relevance here and is no basis for the Government to survive summary judgment.

Finally, the Government does not address or dispute another key difference between this case and those permitting reversal of abatements: reversal will cause real prejudice. If the abatement is reversed, Mr. Groves will be forever deprived of the statutory CDP rights provided to taxpayers prior to enforced collection and left without any pre-collection procedural protection or avenue for administrative or judicial review. *See Dalton v. Comm'r*, 682 F.3d 149, 155 (1st Cir. 2012) (Congress' "goal in establishing the CDP process was to safeguard taxpayers by affording

them a pre-deprivation opportunity to ward off harassment and to avoid groundless attachments.”). Courts have repeatedly noted that an abatement should not be reversed if it would “prejudice the taxpayer.” *Bugge v. United States (In re Bugge)*, 99 F.3d 740, 746 n.7 (5th Cir. 1996); *Crompton-Richmond Co. v. United States*, 311 F. Supp. 1184, 1187 (S.D.N.Y. 1970) (limiting reversal of abatement “so long as this does not prejudice the taxpayer”). That further bolsters the strong grounds for this Court to invalidate the reversal and grant judgment for Mr. Groves.

## II. Mr. Groves Is Entitled To Summary Judgment Because The Penalty Violates Sections 6751(b) And 6751(a).

### A. This Court May Hold The IRS Accountable For Violating § 6751.

Rehashing its motion for partial summary judgment, the Government contends the variance doctrine bars this Court from reaching the merits of § 6751. But the doctrine does not apply here, and the Government’s regurgitated arguments to the contrary do not hold up.

First, variance does not apply as a matter of fact. (Groves Opp. 6–8.) Mr. Groves’ refund claim argues the penalty is invalid because the “elements of 26 U.S.C. § 6700(a) are not satisfied” and the IRS untimely imposed the penalty. (*Id.* at 7–8.) But § 6751 is an element of a § 6700 penalty, so those statements were “reasonably sufficient to make the Commissioner aware of the nature of the claims.” *Am. Nat’l Bank & Tr.*, 594 F.2d at 1143 n.1.

Second, variance does not apply as a matter of law. (*See* Groves Opp. 9–14.) Congress required the Government to show compliance with § 6751 and imposed an *administrative* exhaustion requirement but not an *issue* exhaustion requirement. Plus, an equitable exception to variance applies because the IRS was in sole possession of the key facts when Mr. Groves filed his refund claim, applying variance would not advance the doctrine’s purpose of preventing unfair surprise, and requiring taxpayers to list every possible argument risks doing more harm than good.

As in its partial summary judgment motion, the Government again cites *Ginsburg v. United States*, 17 F.4th 78 (11th Cir. 2021). But the Government ignores that *Ginsburg* is inapposite because it did not involve § 6700 penalties (and thus was not covered by § 6703), the taxpayer conceded his refund claim did not encompass § 6751, and he was attempting to raise § 6751 after failing to do so in a case he fully litigated years earlier. (*See* Groves Opp. 11–12.) And the Government continues to ignore that its interpretation of the Treasury regulations and 26 U.S.C. § 7422(a) conflicts with Congress's express decision to require the IRS to show compliance with § 6751 in § 6700 cases. *See* 26 U.S.C. § 6703; Groves Opp. 9–13.

**B. There Is No Genuine Dispute That The IRS Violated § 6751(b).**

Mr. Groves has explained why § 6751(b) requires written supervisory approval before an "initial determination can be communicated to the taxpayer." (Groves Br. 17–18 (quoting *Laidlaw's Harley Davidson Sales, Inc. v. Comm'r*, 29 F.4th 1066, 1075 (9th Cir. 2022) (Berzon. J., dissenting)); *see also Chai v. Comm'r*, 851 F.3d 190, 220 (2d Cir. 2017); *Belair Woods, LLC v. Comm'r*, 154 T.C. No. 1, at *7–9 (2020); *Clay v. Comm'r*, 152 T.C. 223, 249–50 (2019). The IRS agreed with Mr. Groves on that score and abated the penalty. Now the Government contends written supervisory approval can occur any time until a penalty is assessed. But that position flouts important canons of statutory construction and is incompatible with the history and context that informs the text's meaning. If this Court reaches this issue, it should reject the Government's view.

The Government's response cites non-binding out-of-circuit cases and emphasizes the difference between the assessable penalty in this case and in a deficiency case. (Gov. Opp. 19–20.) But § 6751's procedural protections are even more important with assessable penalties because, unlike in deficiency cases, a taxpayer generally is denied review unless he pays the penalty in full (or in part if a statute allows), and the Government need not wait for such review to begin collection (26 U.S.C. §§ 6331, 6321). *See, e.g., Larson v. United States*, 888 F.3d 578, 581, 583 (2d Cir.

2018) (no jurisdiction to review assessable penalty the IRS *admitted* was $93 million too high). The likelihood that improper penalties escape scrutiny, coupled with a supervisor's discretion to reverse an initial determination "any time" (Gov. Opp. 20), heightens the risk the IRS may improperly use penalties as bargaining chips—precisely what Congress enacted § 6751 to prevent.

The IRS's proposed regulations "to clarify the application of [§] 6751(b)" cement that Mr. Groves is entitled to judgment. *Rules for Supervisory Approval of Penalties*, 88 Fed. Reg. 21,564-01, 21,566 (Apr. 11, 2023); *see* Gov. Opp. 19 n.7. In pursuing those rules, the IRS concedes the text of § 6751 is not clear, that courts have disagreed about how to interpret it, and that stakeholders have "difficulty in applying or anticipating how courts will construe these rules." 88 Fed. Reg. at 21,566. In other words, the Government *admits* it penalized Mr. Groves based on a novel and disputed reading of an unclear statute. Whatever the rule might be going forward for other taxpayers, or however it might be applied in other cases that have not yet been brought, the penalty *here* violates the rule of lenity *as to Mr. Groves* and thus must be invalidated. (*See* Groves Br. 18 (citing *Bittner v. United States*, 143 S. Ct. 713, 724 (2023))).

Finally, the Government is wrong to contend that a factual dispute precludes summary judgment. (Gov. Opp. 20–22.) The Government bears the burden of production and proof on every element of its § 6700 claim—including that the IRS timely obtained written supervisory approval of the penalty. *See* 26 U.S.C. §§ 6703, 7491(c). But the Government has not met its burden when there is no dispute that the NOPA issued on May 20, 2015, but written supervisory approval was not given until August 19, 2015. (Gov. SOF ¶¶ 8–10, 22.) The Government now asserts there is a material issue of fact because the supervisor "discussed" the NOPA and was "involved" in the penalty determination by providing "edits and comments" on draft documents in May 2015. (Gov.

Opp. 20–21.) But § 6751(b) requires written *approval*, not involvement on drafts;[4] the Government *admits* approval did not occur until August 2015 (Gov. SOF ¶ 22); and the Government's evidence of "edits" before then is inadmissible because it was not produced in discovery (*id.* ¶¶ 46, 48, 50).

The cases the Government cites (Gov. Opp. 20–22) actually support summary judgment for Mr. Groves. In *Deyo v. United States*, the record included documents "authoriz[ing] the imposition of a penalty" that were "signed" by multiple supervisors. 296 F. App'x 157, 159 (2d Cir. 2008). Likewise, in *Partita Partners LLC v. United States*, the penalty notice was signed by a "Supervisory Appeals Officer" and there were prior signed approvals by supervisors. 266 F. Supp. 3d 683, 690–91 (S.D.N.Y. 2017). And in *PBBM-Rose Hill, Ltd. v. Commissioner*, a manager gave written approval by signing the cover letter to a taxpayer's examination report that reflected the initial determination of the penalty. 900 F.3d 193, 213 (5th Cir. 2018). Yet here, there is no evidence of timely written supervisory approval in any form. The Government has thus failed to establish an essential element of its case and Mr. Groves is entitled to summary judgment.

### C. There Is No Genuine Dispute That The IRS Violated § 6751(a).

The Government does not dispute that § 6751(a) requires the Secretary to provide a "computation of the penalty" with "each notice," and that it did not do so with the October 5, 2015 "Notice of Penalty Charge." (Gov. SOF ¶ 17; Gov. Opp. 22.) That alone invalidates the penalty. Beyond variance, discussed above, the Government raises three defenses. None have merit.

First, the Government contends Groves cannot claim he was not provided with the required computation because he asserted the penalty was improperly calculated. (Gov. Opp. 22–23.) But

[4] *See, e.g.*, *Clay*, 152 T.C. at 249–50 (noting IRS did not argue that memo prepared by supervisor showed approval); *Oropeza v. Comm'r*, T.C. Memo. 2020-111, 2020 WL 4194613, at *4 (July 21, 2020) (rejecting argument that evidence of substantive review or deliberation is required to comply with § 6751(b)); *Palmolive Bldg. Invs., LLC v. Comm'r*, 152 T.C. 75, 86 (2019) ("What must be 'in writing' to satisfy [§] 6751(b)(1) is the supervisor's approval.").

Groves challenged the computation the Government provided with a different notice in May 2015, based on defenses he was aware of at that time. That challenge does not alter the undisputed fact that Groves did not receive *any* computation with the October 5 notice. (Gov. SOF ¶ 17.)

Second, the Government suggests it is sufficient for *some* computation to be provided at *some* time. (Gov. Opp. 22–23.) But the statute mandates that a computation "*shall*" be provided with "*each notice* of penalty." 26 U.S.C. § 6751(a) (emphasis added). "When a statute is unambiguous," as § 6751(a) is, the Court "must enforce the plain meaning of the language enacted by Congress." *Our Country Home Enters., Inc. v. Comm'r*, 855 F.3d 773, 791 (7th Cir. 2017).

Third, the Government asserts "there is no remedy" for failing to follow § 6751(a). (Gov. Opp. 23–24.) The sole case it cites has been overruled. *Chai*, 851 F.3d at 220 (overruling *Graev v. Comm'r*, 147 T.C. 460 (2016)). IRS penalties imposed without authority should be invalidated. *See, e.g.*, *Farhy v. Comm'r*, 160 T.C. No. 6, 2023 WL 2752459 (2023); *Cf. Kokesh v. SEC*, 581 U.S. 455, 465–67 (2017) (abrogating penalties imposed in violation of a statute). And invalidating the penalties here is particularly warranted because, as the Government does not dispute, the failure to follow § 6751(a) prejudiced Mr. Groves. (*Compare* Groves Br. 19–20, *with* Gov. Opp. 22–24.)

## CONCLUSION

"If individuals must turn square corners when they deal with the government … it cannot be too much to expect the government to turn square corners when it deals with them." *Mann Constr., Inc. v. United States*, 27 F.4th 1138, 1141 (6th Cir. 2022) (invalidating IRS rule, quoting *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1486 (2021)). Here, the Government has not. The IRS issued the penalty in violation of 26 U.S.C. § 6751(a)-(b). Then, after admitting in an adversarial hearing process that the penalty was improper, the abatement was reversed with no valid legal basis. This seven-year case should end now and judgment should be granted for Mr. Groves.

May 16, 2023

*s/ Guinevere M. Moore*
Guinevere M. Moore (IL 6297231)
Ajay Gupta (CA 190101)
Moore Tax Law Group LLC
2205 W. Armitage Ave., Suite 1
Chicago, Illinois 60647
Tel: 312-549-9993
Fax: 312-549-9991
guinevere.moore@mooretaxlawgroup.com

David E. Lieberman (IL 6211538)
Levin Schreder & Carey, Ltd.
120 North LaSalle Street, 38th Floor
Chicago, Illinois 60602
Tel: 312-332-6300
Fax: 312-332-6393
david@lsclaw.com

Gabriel K. Gillett (IL 6328233)
Katherine Funderburg (IL 6329702)
Jenner & Block LLP
353 North Clark Street
Chicago, Illinois 60654
Tel: 312-840-7220
Fax: 312-527-0484
ggillett@jenner.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2023, a copy of the foregoing was served upon all Counsel of Record via ECF.

*s/ Guinevere M. Moore*


Guinevere M. Moore (IL 6297231)
Ajay Gupta (CA 190101)
Moore Tax Law Group LLC
2205 W. Armitage Ave., Suite 1
Chicago, Illinois 60647
Tel: 312-549-9993
Fax: 312-549-9991
guinevere.moore@mooretaxlawgroup.com