**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| PHILIP G. GROVES, | |
| Plaintiff, | No. 16 C 2485 |
| v. | Judge John F. Kness |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

This case presents a curious issue that arises out of a bureaucratic quirk. Years ago, Plaintiff Philip G. Groves sued the United States of America over a tax penalty the Internal Revenue Service had levied against him. Once the case was on file, lawyers from the Department of Justice appeared to represent the United States (and its IRS component).

While this case was ongoing, Plaintiff also pursued and received the administrative IRS hearing to which he was entitled by statute. At the conclusion of Plaintiff's administrative proceeding, IRS determined that, because the agency had failed to satisfy a binding procedural requirement, the contested penalty was invalid. IRS thus granted Plaintiff an abatement of the tax penalty.

Before this Court, Defendant now maintains that the tax penalty was "erroneously abated" by IRS and has been "reversed." (Dkt. 195 ¶ 39.) Defendant's main justification for this about-face rests on a statute that authorizes "the Attorney

General or his delegate" to "compromise" any case "arising under the internal revenue laws" after the case has been referred "to the Department of Justice for . . . defense." 26 U.S.C. § 7122(a). In Defendant's view, the abatement is void because IRS lacked the authority to abate Plaintiff's tax liability once the case had been referred to DOJ for defense.

Whether that position is valid presents the main issue now before the Court. Plaintiff has moved for summary judgment on several grounds; part of his argument is that, because the abatement Plaintiff received was not a "compromise," Defendant lacks the authority to reverse or ignore it. (*See* Dkt. 189.) (Defendant also seeks partial summary judgment on separate grounds (Dkt. 188).)

As explained below, Defendant's rescission of Plaintiff's abatement is unlawful. DOJ's authority on tax matters is limited to compromises in pending cases, but the abatement here was not a compromise within the meaning of the statute. Accordingly, the purported rescission of the abatement is invalid. Because Defendant lacked the authority to rescind the abatement, Plaintiff's motion for summary judgment must be granted. In the light of this holding, Plaintiff's alternative motion for summary judgment is dismissed as moot, and Defendant's partial motion for summary judgment is denied.

## I. BACKGROUND

Plaintiff Philip G. Groves buys, sells, and services distressed Chinese debt. (Dkt. 195 ¶ 1.) Defendant is the United States of America. (*Id.* ¶ 2.) In 2015, IRS sent Plaintiff a Notice of Proposed Adjustment (NOPA) for violating 26 U.S.C. § 6700 by

engaging in unlawful tax shelter transactions. (Dkt. 202 ¶ 40.) That NOPA was the culmination of several days of drafts and revisions between an IRS agent and her supervisor. (*Id.* ¶¶ 45–51.) Notably, the supervisor did not sign the NOPA before the agent sent it to Plaintiff. (*Id.*)

Plaintiff next received a Notice of Penalty Charge—a confirmation of a NOPA's tentative posture—that gave him two options: (1) pay the penalty in full and seek a refund; (2) or pay 15% of the penalty of the penalty and file a claim for refund, with the further obligation to file a lawsuit in district court within 30 days after the refund claim was denied. (Dkt. 131 ¶ 14; Dkt. 195 ¶¶ 2, 16–17.) Plaintiff took the latter option. (Dkt. 195 ¶ 18.)

Before IRS, Plaintiff filed a refund claim on the grounds that he did not engage in the alleged conduct and that IRS failed to comply with the statute of limitations. (Dkt. 195 ¶ 19; Dkt. 197 ¶ 4.) IRS rejected this claim, sent Plaintiff a Final Notice of Intent to Levy, and informed Plaintiff that he was statutorily entitled to a Collection Due Process (CDP) or equivalent hearing. (Dkt. 195 ¶¶ 21, 26–27.) At Plaintiff's request, IRS later held a CDP-equivalent hearing. (*Id.* ¶ 29; Dkt. 202 ¶ 56.) An agent at the hearing suggested that the penalty would be abated, but the Parties dispute the legal effect of the agent's comments. (Dkt. 202 ¶ 56; Dkt. 195 ¶ 56.) Years later, that suggestion was realized when IRS sent Plaintiff a determination that his penalty was abated because IRS failed to comply with 26 U.S.C. § 6751(b), which requires agents to receive a supervisor's written confirmation before determining a penalty. (Dkt. 195 ¶ 32.)

Plaintiff separately filed this suit when IRS first denied his refund claim. (*See* Dkt. 1.) Defendant filed an answer and a counterclaim for the 85% balance. (Dkt. 202 ¶¶ 54–55.) After Plaintiff's CDP hearing, Plaintiff amended his complaint to add the additional contention that the penalty was also invalid under Section 6751(b). (*See* Dkt. 130.)

Defendant now represents that the tax penalty was "erroneously abated"; as Plaintiff puts it (in words undisputed by Defendant), the "abatement of the penalty has been "reversed." (Dkt. 195 ¶¶ 34, 39.) The validity of Defendant's position—and consequently whether the penalty has effectively been reinstated—is the central issue in this case.

Several motions remain pending. Plaintiff moves for summary judgment on the grounds that Defendant lacked authority to reverse the abatement. (Dkt. 189 at 1.) In the alternative, Plaintiff moves for summary judgment on the grounds that, even if the reversal was authorized, the penalty was invalid from the start because IRS failed to comply with Section 6751. (*Id.*) For its part, Defendant moves for partial summary judgment on the grounds that, because Plaintiff failed first to raise his Section 6751 argument in his administrative claim, the common law variance doctrine prevents Plaintiff from raising his Section 6751 argument now. (Dkt. 188 at 1.) Put differently, Defendant moves for partial summary judgment to foreclose Plaintiff's alternative motion asserting that the penalty was invalid from the get-go.

## II. LEGAL STANDARD

Summary judgment is warranted only if "the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jewett v. Anders*, 521 F.3d 818, 821 (7th Cir. 2008) (quoting *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005)). *See also* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Under Rule 56(c), summary judgment must be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Summary judgment is the " 'put up or shut up' moment in a lawsuit," such that the nonmoving party must "respond to the moving party's properly supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (quotations omitted).

## III. DISCUSSION

Plaintiff seeks summary judgment on the ground that Defendant lacks the authority to reverse the abatement. In response, Defendant argues that, because the abatement was a "compromise" within the meaning of 26 U.S.C. § 7122(a), it was ineffective. (*See generally* Dkt. 194.) Upon review of the parties' submissions and pertinent authorities, the Court holds that Plaintiff has the better of the argument. In view of this ruling, Defendant's partial motion for summary judgment is denied. Plaintiff's motion for summary judgment on alternative grounds is dismissed as

moot.[1]

This discussion of Plaintiff's primary motion for summary judgment proceeds in two parts. First, the Court finds that the abatement is not a compromise under Section 7122(a), so that provision does not invalidate the abatement. Second, the Court finds that no exception applies that would allow for the abatement to be reversed. As a result, the abatement stands.

### A. The Abatement Was Not a Compromise Under Section 7122(a)

A significant portion of this case centers on the interpretation of "compromise" within Section 7122(a). That provision states that DOJ "may compromise any [case arising under the tax laws] after reference to the Department of Justice." 26 U.S.C.

[1] Plaintiff seeks summary judgment on the alternative grounds that the penalty violated Section 6751(b). In turn, Defendant seeks partial summary judgment on the ground that Plaintiff could not raise his Section 6751(b) argument because it would violate the variance doctrine. (Dkt. 188 at 1.) Under that doctrine, a taxpayer cannot raise an argument in a refund suit unless he first raised it in his administrative claim. *See Lockheed Martin Corp. v. United States*, 210 F.3d 1366, 1371 (Fed. Cir. 2000). In other words, a taxpayer can only litigate those arguments that he first addressed in front of IRS. *Id.* Courts strictly apply the variance doctrine to limit a taxpayer in a refund suit to only those arguments that he first raised in his administrative claim. *See, e.g.*, *Karpowycz v. United States*, 586 F. Supp. 48, 52 n.2 (N.D. Ill. 1984). Although the doctrine is not a straitjacket, an administrative claim must fairly encompass each line of argument that a taxpayer seeks to later raise in a refund suit. *See Lockheed Martin*, 210 F.3d at 1371.

Unlike his successful abatement-based argument, Plaintiff's Section 6751(b) argument rests on shaky ground. That is because Plaintiff's administrative claim did not fairly raise Section 6751(b) (which requires an IRS agent to obtain her supervisor's signature before determining a penalty against a taxpayer). 26 U.S.C. § 6751(b)(1). Plaintiff's administrative claim, however, maintained that (1) Plaintiff did not violate the substance of Section 6700; and (2) IRS failed to satisfy the statute of limitations. (Dkt. 197 ¶ 4.) Neither of these arguments encompasses Section 6751(b), for at least two reasons. First, a challenge to Section 6700 tells IRS only that the taxpayer is challenging the substance of the penalized conduct. If IRS had to address every procedural requirement anytime a penalty is challenged, then the purpose of the variance doctrine would be undermined. *See Lockheed Martin*, 210 F.3d at 1366. Second, a challenge to the statute of limitations is not of the same character as a claim under Section 6751(b) (which addresses a procedural requirement, not a time-limit for claims).

§ 7122(a). Alongside several administrative materials, courts have interpreted Section 7122(a) to prevent IRS from compromising any such case after reference. *See, e.g.*, *Cencast Servs., L.P. v. United States*, 94 Fed. Cl. 425, 450 n.27 (Fed. Cl. 2010). But Section 7122(a) does not define compromise, nor does any related statute. *See generally* 26 U.S.C. § 7122.

Defendant argues that the abatement of Plaintiff's penalty constitutes a compromise. (Dkt. 194 at 8–11.) If so, then under Section 7122(a) the abatement was unauthorized because the case had already been referred to the DOJ. (*Id.*) Defendant contends it could reverse any unauthorized abatement and reinstate the penalty. (*Id.*)

After careful review of (1) the plain language of the word compromise; (2) Section 7122's other subsections and uses of compromise; (3) the structure of the Internal Revenue Code; and (4) relevant administrative materials, the Court finds that, because it was unilateral and Plaintiff conceded nothing, the abatement was not a compromise within the meaning of the statute.

### ***1. Plain Meaning of Compromise***

The plain meaning of compromise involves two or more parties coming to an agreement after each party makes a concession. According to Merriam-Webster, to compromise is "to come to agreement by mutual concession." *Compromise*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/compromise (last visited September 28, 2026). The Oxford English Dictionary similarly describes a compromise as a "[s]ettlement of a dispute by concession on both sides." *Compromise*, Oxford English Dictionary, https://www.oed.com/dictionary/compromise_n? (last accessed September 28, 2026). Many alternative definitions also entail a bilateral

requirement. *See e.g., id.* (defining a compromise as a "joint promise," "mutual promise," and a "settlement . . . between contending parties"); *compromise*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/compromise (last visited September 28, 2026) (defining a compromise as "a settlement of differences . . . reached by mutual concessions" and "something intermediate"). These definitions suggest that the plain meaning of compromise involves at least two parties that each concede something to reach an agreement.

Compromise has at least one alternative definition without a bilateral constraint that is inapplicable to Section 7122(a). Beyond an agreement or settlement, compromise is frequently defined as a synonym for words like impairment, ruin, endangerment, or jeopardy. *See id.* For example, a person might compromise his health by standing in the rain, compromise her friend's secret by sharing it with someone else, or compromise his nation's security by engaging in espionage.

Defendant does not argue that this alternate definition applies—and for good reason. (*See generally* Dkt. 194.) *First*, the permissive, modal phrase "may compromise" suggests that compromise represents an intentional action. 26 U.S.C. § 7122(a). Courts have long interpreted a modal word with a transitive verb as authorizing an active, discretionary power. *See, e.g.*, *Biden v. Texas*, 142 S. Ct. 2528, 2541–44 (2022) (interpreting a statute stating that "the Attorney General may return the alien" to "plainly confer[ ] a *discretionary* authority to return aliens" to their country of origin). Words like jeopardize and ruin, however, typically denote a

negative or unintended consequence of external influences.[2] It would make little sense for Congress to grant DOJ the power to effect *accidental*, negative results.

*Second*, the structure of Section 7122(a) indicates that a compromise is a constructive conclusion to a case, akin to a settlement. Section 7122(a) grants the power to compromise to IRS "prior to reference" and to the DOJ "after reference." 26 U.S.C. § 7122(a). This suggests that a compromise is not a repeat act: if IRS compromises a case, then the DOJ cannot, and if the DOJ did compromise the case, then IRS must not have done so. Such a structure makes sense only when compromise takes a definition like an agreement or settlement that is conclusive.

*Third*, the emphasis on reference would be illogical if compromise meant something like ruin. Section 7122(a) expressly states that it applies when a case is referred to the DOJ "for prosecution or defense." 26 U.S.C. § 7122(a). If compromise took a definition like ruin, then the statute must be read absurdly to enable DOJ to ruin a case.

*Fourth*, and finally, the Internal Revenue Code reflects that Congress could have used a more straightforward word than compromise if it sought for the term to mean something like ruin or jeopardy. Several sections of the Internal Revenue Code—namely Title 26, Sections 6861 and 7429—discuss jeopardy in detail. 26 U.S.C. §§ 6861, 7429. There, the term jeopardy refers to when a penalty will be undermined by a delay in collection. *See id.* § 6861(a). These sections were also enacted on the

[2] A deluge might compromise a person's roof, but that result would be both unwanted and unintentional.

same day as Section 7122(a). *Id.* §§ 6861, 7122, 7429.

Of course, Congress does not have to select the perfect words for every statute, particularly in a sprawling set of statutes like the Internal Revenue Code. But where one word could take on a less-used, alternative definition and Congress was aware of synonyms that would better convey that rarer definition, then Congress probably intended for the commonplace one. *See Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560, 566–72 (2012) (interpreting a statutory term to take its more common meaning instead of a broader one and finding that Congress "signal[ed]" the narrower definition by not using a clearer synonym of the broader definition).

There is no basis to supply a meaning like impairment, jeopardy, or sabotage. Reading "compromise" as an agreement much more easily comports with the text's plain meaning. An agreement or settlement is something that would logically be permissive, as it takes two or more parties' consent. A settlement is also legally conclusive in most cases, and parties do not repeatedly settle the same dispute. Similarly, an agreement is often a favorable outcome for the Government in a prosecution or defense, such as a criminal plea deal. Accordingly, the plain meaning of compromise suggests an agreement or settlement involving mutual concessions.

***2. Section 7122's Other Subsections***

Referring to the plain meaning of "compromise" is not, however, the only reason to reject the Government's position: the other subsections of Section 7122 provide additional support for this holding. Section 7122 confirms that Section 7122(a)'s use of compromise involves agreement and concessions; it also illustrates that the term refers to a specific process rather than an abstract concept. Section

7122(a) must be read in the light of the entire statute and not as an isolated provision. *See United States v. Kenngott*, 840 F.2d 375, 382 (7th Cir. 1987).

This broader reading shows that the statute uses the word compromise in the context of an "offer in compromise." And this offer in compromise is part of a collaborative effort between IRS and a taxpayer. For example, Section 7122(c) prescribes the rules for submitting an offer in compromise. 26 U.S.C. § 7122(c). Section 7122(d) sets the standards IRS uses to evaluate an offer in compromise. *Id.* § 7122(d). Section 7122(e) provides administrative review when IRS rejects an offer in compromise. *Id.* § 7122(e). And Section 7122(f) states that there will be automatic acceptance after a period of IRS inaction for an offer in compromise. *Id.* § 7122(f). Accordingly, when read alongside the entire statute, compromise in Section 7122(a) refers to a concrete practice where IRS and a taxpayer reach an agreement after the agency accepts a taxpayer's offer in compromise.

Section 7122 also suggests that a compromise requires a taxpayer to pay something. Most notably, Section 7122(c)(1) requires a taxpayer to make a partial payment when she first submits an offer in compromise. *Id.* § 7122(c)(1). It is true that the IRS Commissioner may issue regulations that waive this payment requirement, but those regulations must be "consistent with the practice established in accordance" with Section 7122(d)(3). *Id.* § 7122(c)(2)(C). That provision mandates that IRS cannot reject an indigent taxpayer's offer solely based on the amount; even that concession envisions that the taxpayer offers *some* amount. *Id.* § 7122(d)(3).

Subsections (c)(1) and (d)(3) of Section 7122 are not the end of the inquiry:

Other components of Section 7122 require the Commissioner to (1) issue guidelines for determining whether an offer is "adequate and should be accepted to resolve a dispute"; (2) document "[t]he amount actually paid in accordance with the terms of the compromise"; and (3) "publish schedules" of basic living expense allowances to be used in calculating whether an indigent taxpayer's offer should be accepted. *Id.* § 7122(d)(1), (b)(3), (d)(2)(A). As do subsections (c)(1) and (d)(3), these provisions reflect the negotiation-like nature of the process under Section 7122. In short, the provisions in Section 7122 strongly suggest that a compromise is the result of an accepted offer in compromise, and that a compromise requires the taxpayer to pay something.

### *3. Internal Revenue Code Structure*

It is similarly clear that the structure of the Internal Revenue Code demonstrates that a compromise, however defined, is legally distinct from an abatement. When possible, the Court must interpret statutory language to avoid statutory redundancy. *See United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 143 S. Ct. 1720, 1731 (2023). Accordingly, if statutory text distinguishes two terms, then a court should not read those terms as mere synonyms.

Neither "abatement" nor "compromise" is treated as interchangeable under the Internal Revenue Code. Section 7122 is part of Chapter 74, Closing Agreements and Compromises. *Id.* § 7122. Much as Section 7122 provides many rules around when and how IRS may compromise, Section 6404 provides many rules governing abatement. 26 U.S.C. § 6404. But unlike Section 7122, Section 6404 is part of Chapter 65, Abatements, Credits, and Refunds. *Id.* There are no cross-references between

these sections, nor are there any references to Section 7122 in Chapter 65 or Section 6404 in Chapter 74. *See generally Id.* §§ 6404, 7122. In other words, there is no overlap between the Internal Revenue Code's provisions on abatement and compromise.

Structure alone is not authoritative, but it suggests that Congress did not intend to conflate the terms abatement and compromise. *See Polansky*, 143 S. Ct. at 1731 (courts should not read statutory language as surplusage). Although Sections 6404 and 7122 are separate statutes, they were enacted together as the Internal Revenue Code of 1954—which suggests that the legislative decision to place the two provisions in different chapters was done knowingly. *See* 26 U.S.C. §§ 6404, 7122. At minimum, therefore, this structural separation suggests that Congress intended for abatement and compromise to refer to different actions related to taxpayer liability.

#### ***4. Relevant Administrative Materials***

Plain meaning, the language of Section 7122, and the Internal Revenue Code's structure demonstrate that a compromise does not encompass a unilateral and complete abatement. This ordinarily should suffice without any consideration of agency practice. *See Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2271–73 (2024) (courts do not owe deference to an agency's interpretation of a statute). Defendant nevertheless contends that certain administrative materials suggest a broader definition of the term. (Dkt. 194 ¶ 8–13.) Defendant cites Executive Order 6166, Section 5, and IRS Chief Counsel Notice CC-2011-020 as support for reversing the abatement. (*Id.*)

Although a court should not defer to an agency's interpretation of an

ambiguous term, a court may consider an agency's historical practice as another factor in its "full interpretive toolkit." *Loper Bright*, 144 S. Ct. at 2271. An agency's interpretation is particularly insightful when it has stood the test of time. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). Still, however, an agency interpretation cannot usurp the court's "independent judgment in deciding whether an agency has acted within its statutory authority." *Loper Bright*, 144 S. Ct. at 2273.

To the extent that "compromise" in Section 7122(a) is an ambiguous term (it is not), IRS's historical interpretation makes clear that a compromise requires agreement and mutual concessions. This assessment includes (1) the rulemaking promulgated with respect to Section 7122; (2) IRS practice in reaching compromises, as illustrated by IRS Forms 656 and 656-L; (3) Executive Order 6166, Section 5; and (4) IRS Chief Counsel Notice CC-2011-020. Rather than suggesting that IRS practice supports a broader definition of compromise, these materials instead reinforce that Section 7122(a) reflects the plain meaning of the term.

**(i) Rulemaking on Section 7122.** IRS rulemaking suggests that a compromise under Section 7122(a) refers to an agreement between IRS and a taxpayer, resulting from the taxpayer's offer in compromise. As IRS stated alongside its final rulemaking on the statute, a compromise "is an agreement between a taxpayer and the Government." Compromise of Tax Liabilities, 67 Fed. Reg. 48025, 48026 (July 23, 2002) (codified at 26 C.F.R. pt. 301). Just as Section 7122 does not suggest that "compromise" refers to different processes between Section 7122(a) and the rest of the statute, this rulemaking portrays a singular, concrete process: the offer

in compromise. *See generally* 26 C.F.R. § 301.7122-1. A taxpayer initiates this process by submitting an offer in compromise through certain forms; IRS then evaluates the offer on prescribed bases. 26 C.F.R. § 301.7122-1(b), (d)(1). Nothing in this rulemaking process suggests either that IRS or a taxpayer can unilaterally compromise.

**(ii) IRS Forms for Compromising.** The required forms to submit an offer in compromise require at least nominal payment toward a taxpayer's liability. Depending on the basis for compromise a taxpayer seeks, she or he will file IRS Form 656 or 656-L. *Id.*; 26 C.F.R. § 601.203(b). *But see Waltner v. United States*, No. 19 C 4679, 2020 WL 2991611, at *13–15 (D. Ariz. June 4, 2020) (finding compromise reached despite taxpayer filing only Form 14402).

A taxpayer who submits Form 656 must offer at least one dollar. Internal Revenue Serv., Form 656, Offer in Compromise, at 3 (rev. Apr. 2026). The taxpayer must also make an initial payment upon submission of the offer, either as 20% of the total liability or the first installment in a proposed payment plan. *Id.* Form 656 instructs a taxpayer that an offer to pay the full liability will be rejected—even IRS must concede something to compromise. IRS Form 656, at 1.

So too for a taxpayer who submits Form 656-L, the prescribed form for a taxpayer who contests that she owes *anything*: in that circumstance, the taxpayer "must offer at least $1," or her "offer will be returned to [her] without any further consideration." IRS Form 656-L, at 9. Internal Revenue Serv., Form 656-L, Offer in Compromise (Doubt as to Liability), at 2–5 (rev. Dec. 2020). Forms 656 and 656-L,

taken together, make clear that IRS understands a compromise to require a taxpayer to pay something, even if it is only a nominal concession of one dollar.

**(iii) Executive Order 6166.** Executive Order 6166, Section 5, reinforces that compromise takes its plain meaning. Section 5 states in relevant part:

> As to any case referred to the Department of Justice for prosecution or defense in the courts, the function of decision whether and in what manner to prosecute, or to defend, or to compromise, or to appeal, or to abandon prosecution or defense, now exercised by any agency or officer, is transferred to the Department of Justice.

Exec. Order No. 6166, § 5 (June 10, 1933), *reprinted in* 5 U.S.C. § 901 (2000). This Order was issued to transfer litigation responsibilities from agencies to the DOJ. *See Sullivan v. United States*, 348 U.S. 170, 173 (1954).

If anything, the Order supports that Section 7122(a) has a narrower definition. A range of litigation conduct—including compromise—is encompassed by the Order, but Section 7122(a) includes only compromise. Exec. Order No. 6166, § 5; 26 U.S.C. § 7122(a). This suggests that, at most, a compromise is litigation conduct distinct from conduct that resembles prosecution, defense, or its appeal or abandonment. And although the Order was signed before Section 7122(a) was enacted, the statute does not purport to ratify the Order or even reference it. *See generally* 26 U.S.C. § 7122.

It does not appear that any court has interpreted the Order to require a broad definition of compromise. At least two courts have discussed the Order and separately limited IRS's power, but neither court relied on the Order or interpreted Section 7122(a). *See generally Cencast*, 94 Fed. Cl. 425; *Computervision Corp. v. United States*, 445 F.3d 1355, 1369–73 (Fed. Cir. 2006). Instead, those courts held merely that the Order *might* prevent a taxpayer from getting around the common law

variance doctrine. *See Cencast*, 94 Fed. Cl. at 450 n.27; *Computervision*, 445 F.3d at 1372. The Order does not expand compromise's plain meaning; nor, for that matter, can it override a statutory right.

**(iv) Chief Counsel Notice CC-2011-020.** The Chief Counsel Notice similarly does not support a broader definition of compromise. IRS issued Chief Counsel Notice CC-2011-020 after a court held in *United States v. Pound* that an abatement could not be reversed. 07 C 427, 2010 WL 2803918, at *2–4 (E.D. Okla. Feb. 2, 2010). In the notice, the Chief Counsel declared that a post-referral abatement "is void" and "should be reversed" if made without DOJ approval. Internal Revenue Serv., Chief Counsel Notice CC-2011-020, 2011 WL 4402105 (Sept. 15, 2011). But although the Notice makes a passing reference to Section 7122(a), it does not define compromise or discuss the statute further. *See generally* Chief Counsel Notice CC-2011-020, 2011 WL 4402105. At most, the Notice suggests that IRS considered the *Pound* abatement similar to a Section 7122(a) compromise.

Even if this is an IRS interpretation of compromise, the agency seems to mistakenly conflate the term compromise with an abatement. The factual record in *Pound* is sparse, but it appears that the taxpayer paid *something* because he filed his delinquent tax returns. *Pound*, 2010 WL 2803918, at *1. Put differently, *Pound* involved a true compromise. And every court to cite the Notice or *Pound* also involved a true compromise where the taxpayers were to pay part of their liability. *See e.g., United States v. Jackson*, No. 09 C 1745, 2012 WL 1108558, at *1 (E.D. Pa. Apr. 2, 2012); *Isley v. Comm'r*, 141 T.C. 349, 355 (Tax Ct. 2013); *Waltner*, 2020 WL 2991611,

at *14. In any event, these cases—and the Notice—are not binding, so the Court must still exercise its independent judgment to interpret Section7122(a). *See Loper Bright*, 144 S. Ct. at 2273.

*  *  *

Under the foregoing analysis, the abatement of Plaintiff's penalty was not a compromise under Section 7122(a). The plain meaning of compromise, the statute, the Internal Revenue Code, and IRS practice each point to a compromise requiring "an agreement between a taxpayer and the Government . . . for a payment of less than the total amount," but still a payment of *some* amount. Compromise of Tax Liabilities, 67 Fed. Reg. at 48026. A compromise is not a catchall term under Section 7122(a). Instead, a compromise occurs when a taxpayer submits an offer through Form 656 or 656-L of at least one dollar, IRS evaluates the offer under prescribed bases, and IRS accepts the offer and effects a compromise.

Plaintiff offers several reasons why his abatement was not a compromise; at least three of those are independently valid. (*See* Dkt. 192 at 6–13 (arguing various distinctions from a compromise); *see also* Dkt. 201 at 2–6 (same).) First, IRS did not accept Form 656, 656-L, or a related form submitted by Plaintiff. Second, even if a compromise can exist without one of those forms being submitted, there was only a unilateral action instead of an agreement between Plaintiff and IRS. Finally, Plaintiff did not make a concession because he paid nothing. Each of the grounds is addressed in turn.

**(i) The Required Forms Were Not Submitted.** Plaintiff did not submit

Form 656 or 656-L before IRS abated his penalty. (Dkt. 195 ¶ 38.) Defendant contends that Form 656 and 656-L are "beside the point" (Dkt. 194 at 11), but IRS regulations and guidance suggest that those forms *are* the point *See* 26 C.F.R. § 601.203(b); IRS Form 656; IRS Form 656-L. Ostensibly, IRS portrays Forms 656 and 656-L as preconditions to compromise.

At least one court has found that a compromise existed without Form 656 or 656-L being filed, but the taxpayer in that case still filed Form 14402. *See Waltner*, 2020 WL 2991611, at *14. That form, much like Forms 656 and 656-L, involves a taxpayer paying something toward the penalty and agreeing to certain conditions before IRS reduces the remaining penalty. *See* IRS Form 14402.

Plaintiff did not file Form 14402, nor did he submit another form resembling a compromise in the same way. (*See generally* Dkt. 195; Dkt. 197; Dkt. 200; Dkt. 202.) Instead, IRS abated the penalty after the CDP hearing. (Dkt. 195 ¶ 32; Dkt. 202 ¶ 56.) Accordingly, to the extent *Waltner* suggests a compromise can be reached without Forms 656 or 656-L, the case is inapposite.

**(ii) Plaintiff and IRS Did Not Reach an Agreement.** Even if Forms 656 and 656-L are unnecessary, the undisputed facts do not reflect Plaintiff and IRS reached an agreement. Without an agreement, there is no compromise under the plain meaning of the term. *See Compromise*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/compromise (last visited September 28, 2026). Section 7122 likewise discusses offers and acceptances, hallmarks of an agreement. 26 U.S.C. § 7122. IRS rulemaking also describes compromises as

agreements. *See* Compromise of Tax Liabilities, 67 Fed. Reg. at 48026.

As the record reflects, the abatement here did not result from Plaintiff and IRS reaching an agreement. Plaintiff met with IRS through counsel, but he did not tender an offer that IRS accepted; instead, IRS determined that its agents failed to comply with Section 6751(b). (Dkt. 202 ¶ 56.) That determination came without Plaintiff making any concessions on his part.

Defendant argues that, even if this is not a compromise in the traditional sense, Executive Order 6166 prevents such a "cramped" reading of the term. (Dkt. 194 at 12–13.) But the Order does not read the requirement that there be an agreement out of a Section 7122(a) compromise. If anything, the Order suggests that Section 7122(a)'s definition of compromise is cramped enough to exclude the acts of prosecution, defense, appeal, and abandonment: for Section 7122(a) includes only compromise, but the Order includes each of those terms. *See Polansky*, 143 S. Ct. at 1731 ("[E]very clause and word of a statute should have meaning.") (quotations omitted).

Despite Defendant's contentions, *Computervision* and *Cencast* do not bear on the definition of compromise in Section 7122(a), as those cases neither elaborate on the definition of compromise nor rely on Section 7122(a). *See Computervision*, 445 F.3d at 1369–73, 1372 n.18; *Cencast*, 94 Fed. Cl. at 450 n.27. Instead, each opinion makes a passing remark that Executive Order 6166, Section 5 provides alternative grounds for rejecting a taxpayer's attempt to avoid the common law variance doctrine. *See Computervision*, 445 F.3d at 1372 n.18; *Cencast*, 94 Fed. Cl. at 450 n.27. Put

another way, neither case suggests that a Section 7122(a) compromise is different from an ordinary compromise.

Taken together, the plain meaning of compromise, the statutory structure, and IRS practice demonstrate that a compromise requires an agreement, and because there was no agreement between Plaintiff and IRS, there was no compromise between them.

**(iii) Plaintiff Made No Concessions.** Finally, Plaintiff paid nothing toward his tax liability, so he made no concession in the purported compromise. Unlike the requirements detailed in Section 7122 and its related forms and rulemaking, Plaintiff did not pay a lump sum or enter an installment plan. (*See generally* Dkt. 195; Dkt. 197; Dkt. 200; Dkt. 202.) Plaintiff did not even pay a nominal fee of one dollar. (*See generally* Dkt. 195; Dkt. 197; Dkt. 200; Dkt. 202.) In other words, Plaintiff had his penalty abated without making even a symbolic concession—he compromised on nothing.

The Chief Counsel Notice and its related resources reinforce that there is no compromise without a payment. The taxpayer in *Pound* filed his past due tax returns. *Pound*, 2010 WL 2803918, at *1. *Jackson*'s taxpayer paid 10% of his liability. *Jackson*, 511 F. App'x at 201–02. In *Isley*, the taxpayer offered to pay one million dollars. *Isley*, 141 T.C. at 357. And the *Waltner* taxpayers paid $500. *Waltner*, 2020 WL 2991611, at *13. None of these cases supports the idea that a taxpayer can compromise with IRS without paying anything.

To be sure, Defendant refers to those circumstances as an abatement. (*See e.g.*,

Dkt. 194 at 6, 9, 14.) But although the monetary difference between an abatement and compromise could be minimal, the legal differences are substantial. Congress established two distinct processes when it adopted Section 7122 and Section 6404, and they should not be conflated. Because Plaintiff's penalty was abated, not compromised, Section 7122(a) does not invalidate the abatement or empower Defendant to reinstate the penalty.

**B. No Exceptions Apply to Reverse the Abatement**

As Defendant notes, decisions from several circuits have noted that an abatement made by error can be reversed under a common law ministerial error exception.[3] (*See* Dkt. 182 at 4–5.) But even so, the exception does not apply to the circumstances present in this case.

Under the ministerial error exception, IRS can reassert a penalty that it abated by accident without having to start anew and substantively reassess it. *See In re Bugge*, 99 F.3d 740, 745–46 n.7 (5th Cir. 1996). Other federal courts have found that IRS can reassert the penalty if it is not prejudicial to the taxpayer. *See, e.g.*, *Crompton-Richmond Co. v. United States*, 311 F. Supp. 1184, 1187 (S.D.N.Y. 1970). Prejudice, moreover, typically involves the penalty amount increasing on reassessment—a taxpayer is not prejudiced solely because she now owes a penalty again after thinking that it was abated. *See id.* (distinguishing ministerial errors from additional assessments and re-evaluations of taxpayers' liabilities). A second group of courts has found that IRS can act in more absolute terms and treat the abatement

[3] The Seventh Circuit appears not to have expressly ratified the exception.

as if it never occurred. *See, e.g.*, *Bugge*, 99 F.3d at 745–46. The Seventh Circuit has not specifically endorsed either approach.

Regardless of the approach, courts have applied the exception only for trivial, one-off mistakes. For example, the exception might apply when an IRS agent accidentally removes a penalty from a database. *See id.* at 742–43. It might also apply when an agent intended to reduce a penalty amount based on a taxpayer's partial payment but instead reduced the penalty to zero dollars. *See in re Becker*, 407 F.3d 89, 92 (2d Cir. 2005). In other words, the exception applies where there is a brief, discrete mistake.

Plaintiff's abatement was not a ministerial error akin to a one-off mistake. The abatement culminated from years of back and forth between Plaintiff and IRS. (*See* Dkt. 195 ¶ 19, 21, 29; Dkt. 197 ¶ 4; Dkt. 202 ¶ 56.) It resulted from a CDP hearing where IRS discussed that an abatement was the likely result. (Dkt. 202 ¶ 56.) IRS then confirmed that discussion by sending Plaintiff a letter that the penalty was in fact abated. (Dkt. 195 ¶ 32.) Unlike the one-time data-entry errors that courts have applied the exception to, Plaintiff's abatement was too deliberate to constitute a ministerial error. *See Bugge*, 99 F.3d at 742–43; *Becker*, 407 F.3d at 92. Accordingly, the Court holds that reversal would be improper under either approach to the ministerial error exception.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted as to Plaintiff's primary argument. Plaintiff's alternative argument for summary

judgment is dismissed as moot, and Defendant's motion for partial summary judgment is denied.

SO ORDERED in No. 16 C 2485.

Date: September 30, 2026

JOHN F. KNESS
United States District Judge